**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

Case No. 25-2796

---

ROGER SOLANO,

Appellant,

vs.

SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA and HOLLY McCOY,

Appellees.

---

Appeal from the Order and Judgment of the U.S. District Court for the Western District of Pennsylvania entered on August 19, 2025 Granting Defendants'/Appellees' Motion to Dismiss

---

**APPELLANT'S BRIEF AND VOL. I OF JOINT APPENDIX (pages 1-26)**

---

LIEBER HAMMER HUBER PAUL & HOFFMAN, P.C.

James B. Lieber
Thomas M. Huber
Jacob M. Simon
1722 Murray Avenue, Second Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)
jlieber@lhhb-law.com
thuber@lhhb-law.com
jsimon@lhhb-law.com
Counsel for Appellant

## TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. Subject Matter and Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Statement of Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. Related Cases and Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. Concise Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C. Rulings Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A. Scope and Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B. The District Court erred when it dismissed Dr. Solano's National Origin Discrimination/Racial Discrimination Claims . . . . 10

1. The facts pled in Dr. Solano's Amended Complaint set forth that he was targeted because of his language ability and that he was treated less favorably than his non-Hispanic colleagues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2. Dr. Solano was singled out for adverse treatment. . . . . . . . . . . 11

3. The Amended Complaint avers that Dr. Solano experienced hostility directed towards his sex/sexual orientation. . . . . . . . 14

4. The District Court erroneously found that Dr. Solano failed to plead that he experienced an adverse employment action . 15

5. The treatment experienced by Dr. Solano would have dissuaded anyone from engaging in protected activity and qualifies as an adverse employment action for purposes of his retaliation claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

C. The District Court erred when it required Dr. Solano to identify specific comparators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

D. By pleading that Dr. Nicholls exercised influence over the SRU administration, the Amended Complaint set forth that the administration acted as her "cat's paw". . . . . . . . . . . . . . . . . . . . . . . . 31

E. The lack of temporal proximity between Dr. Solano's protected conduct and the cancellation of the department chair election does not mean that there is no causal link . . . . . . . . . . . . . . . . . . . . . . . . . 33

F. SRU administrators were aware of Dr. Solano's mental health problems and his need for accommodation and, therefore, were obligated to engage in an interactive process for the purposes of determining a reasonable accommodation. . . . . . . . . . . . . . . . . . . . . 35

G. As Director of Human Resources, Ms. McCoy had oversight over any grievance that Dr. Solano may have brought and, as a result, is liable personally for the ongoing harassment . . . . . . . . . . . 38

H. Because there are unresolved factual issues, this Court should reverse the District Court's dismissal and remand this case for further discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

VI. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Combined Certifications

# TABLE OF CITATIONS

## Cases

*Abramson v. William Patterson Coll. of N.J.,* 260 F.3d 265 (3d Cir. 2001) . . . . . 22

*Beck v. UFCW, Local 99*, 506 F.3d 874 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 31

*Beidleman v. Stroh Brewery Co.*, 182 F.3d 225 (3d Cir.1999) . . . . . . . . . . . . . . . . 9

*Boone v. Goldin*, 178 F.3d 253 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Borough of Longport v. Netflix, Inc.*, 94 F.4th 303 (3d Cir. 2024) . . . . . . . . . . . . . 9

*Brewer v. New Era, Inc.*, 564 Fed.Appx. 834 (6th Cir. 2014). . . . . . . . . . . . . . . . . . 13

*Bryson v. Chicago State Univ.*, 96 F.3d 912 (7th Cir. 1996). . . . . . . . . . . . . . . . . . . 16

*Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53 (2006) . . . . . . . . . . 27, 28

*Cardenas v. Massey*, 269 F.3d 251 (3d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014). . . . . . . . . . . . . . . 29, 30

*Chaib v. Indiana*, 744 F.3d 974 (7th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . 36

*Conneen v. MBNA Am. Bank, N.A.,* 334 F.3d 318 (3d Cir. 2003) . . . . . . . . . . . . . 36

*Connelly v. County of Rockland,* 61 F.4th 322 (2d Cir. 2023). . . . . . . . . . . . . . . . 13

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016). . . . . . . 26, 42, 43, 44

*Delval v. Town of McCandless*, 2:20cv1839, 2024 WL 1346670 (W.D. Pa. Mar. 29, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542 (3d Cir. 1996) . . . . . . . 41, 42

*Dilenno v. Goodwill Indus. of Mid-Eastern Pa.*, 162 F.3d 235

(3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

*Dixon v. Gonzales*, 481 F.3d 324 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Doe v. Schuykill County Courthouse*, Civ. No. 3:21-CV-477,
2024 WL 993174 (M.D. Pa. Mar. 7, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Durham Life Ins. Co. v. Evans*, 166 F.3d 139 (3d Cir. 1999) . . . . . . . . . . . . . 23, 25

*EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773 (7th Cir.2007) . . . . . . . . 30

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000). . . . . . . . . . . . . . . 34

*Fenico v. City of Phila.*, 70 F.4th 151 (3d Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 12

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . 43

*George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*George v. Youngstown State Univ.*, 966 F.3d 446 (6th Cir. 2020) . . . . . . . . . . . . . 34

*Goodwin v. Circuit Court of St. Louis County, Mo.*, 729 F.2d 541
(8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . 30

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hewitt v. BS Transp. of Ill., LLC*, 355 F. Supp. 3d 227 (E.D. Pa. 2019) . . . . . . . . 40

*Huri v. Office of the Chief Judge of Cook County*, 804 F.3d 826
(7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Huston v. Procter & Gamble Paper Prod. Co.*, 568 F.3d 100
(3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Jensen v. Potter*, 435 F.3d 444 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Kalu v. Spaulding*, 113 F.4th 311 (3d Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kellogg v. Ball State Univ.*, 984 F.3d 525 (7th Cir. 2021) . . . . . . . . . . . . . . . . . . . . 31

*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999) . . . . . . . . . . . . . . . . . . . . . . . . 42

*Komis v. Sec'y U.S. Dep't of Labor*, 918 F.3d 289 (3d Cir. 2019) . . . . . . . . . . . . . 12

*Krause v. Am. Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . 33

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259 (3d Cir. 2007) . . . . . . . . 34

*McKenna v. City of Phila.*, 649 F.3d 171 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . 32

*McLoughlin v. Cantor Fitzgerald, L.P.*, 162 F.4th 378 (3d Cir. 2025) . . . . . . . . . . 9

*Menaker v. Hofstra Univ.*, 935 F.3d 20 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . 33

*Merle v. U.S.*, 351 F.3d 92 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Moore v. City of Philadelphia,* 461 F.3d 331 (3d Cir. 2006) . . . . . . . . . . . . . . 27, 29

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) . . . . . . . . . . . . 17, 18, 19, 20, 25

*Murphy v. Hotwire Comm., LLC*, No. 19-5901, 2020 WL 2128472,
(E.D. Pa. May 5, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nichols v. Azteca Restaurant Enters., Inc.*, 256 F.3d 864
(9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

*Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75 (1998) . . . . . . . . . . . . . . . 22

*Peifer v. Bd. of Probation & Parole*, 106 F.4th 270 (3d Cir. 2024) . . . . . . . . 18, 25

*Perry v. Schwarzenegger*, 704 F.Supp.2d 921 (N.D.Cal.2010) . . . . . . . . . . . . . . . 15

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) . . . . . . . . . . . . . . 9, 26

*Phillips v. Heydt*, 197 F.Supp.2d 207 (E.D. Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . 40

*Ray v. Int'l Paper Co.*, 909 F.3d 661 (4th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Robinson v. S.E. Pa. Transp. Auth.*, 982 F.2d 892 (3d Cir.1993) . . . . . . . . . . . . . . 35

*Schrob v. Catterson*, 948 F.2d 1402 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 43, 44

*SmithKline Beecham, Inc. v. Abbott Labs*., 740 F.3d 471 (9th Cir. 2014) . . . . . . . 15

*Spain v. Gallegos*, 26 F.3d 439 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Starnes v. Butler County Court of Common Pleas, 50th Jud. Dist*.,
971 F.3d 416 (3d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Staub v. Proctor Hosp.*, 562 U.S. 411 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760 (3d Cir. 2004) . . . . . . . . . . . . . . . . . 17

*Stringer v. County of Bucks*, 141 F.4th 76 (3d Cir. 2025) . . . . . . . . . . . . . . . . . 43, 44

*Strothers v. City of Laurel, Md.*, 895 F.3d 317 (4th Cir. 2018) . . . . . . . . . . . . . . . . 13

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 30

*Taylor v. Phoenixville School Dist.*, 184 F.3d 296 (3d Cir. 1999) . . . . . . . . . . 36, 38

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . 13

*Thompson v. N. Am. Stainless, L.P.*, 562 U.S. 170 (2011) . . . . . . . . . . . . . . . . . . . . 5

*Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567
(3d Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Webb v. Merck & Co., Inc.*, 450 F.Supp.2d 582 (E.D. Pa. 2006) . . . . . . . . . . . . . . 22

*Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . 10, 11

*Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109 (D.C. Cir. 2016) . . . . . . . . . 30

*Zelinski v. Pa. State Police*, 108 Fed.Appx. 700 (3d Cir. 2004) . . . . . . . . . . . . . . 34

**Other Authorities**

28 U.S.C. § 1291 . . . . . . . . . . 1

28 U.S.C. § 1294(1) . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . 1

42 U.S.C. § 2000e-2(a)(1) (1991) . . . . . . . . . . 17

43 P.S. § 955(e) (1997) . . . . . . . . . . 40

EEOC Regulations, 29 C.F.R. § 1606.6(b)(1) (1980) . . . . . . . . . . 11

## I. SUBJECT MATTER AND JURISDICTION

This is an appeal from the final order and judgment that dismissed all of the claims brought by Appellant Roger Solano ("Dr. Solano"). The order granted the Motion to Dismiss filed by Appellees Slippery Rock University of Pennsylvania ("SRU") and Holly McCoy ("Ms. McCoy"). Appx.3-4. Dr. Solano appeals from this final decision. Appx.1-2.

Jurisdiction is founded upon 28 U.S.C. § 1331. Jurisdiction over final orders rests on 28 U.S.C. § 1291. Jurisdiction from district court decisions is under 28 U.S.C. § 1294(1).

## II. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred when it ruled that the SRU administration could not be liable for the hostile work environment experienced by Dr. Solano, notwithstanding his complaints about this treatment.

Suggested answer: Yes. This issue was raised at Appx.94-8 and at Appx.119-21 and was ruled on at Appx.13-17.

2. Whether the District Court improperly found that there was no evidence of a hostile and discriminatory work environment and, in so doing, failed to construe the Amended Complaint in a light most favorable to Dr. Solano.

Suggested answer: Yes. This issue was raised at Appx.97-8 and was ruled on

at Appx.11 and at Appx.13-4.

3. Whether the District Court erred when it found that the arbitrarily canceled department chair election that favored Dr. Solano and the subsequent reorganization of the SRU College of Business did not constitute adverse employment actions.

Suggested answer: Yes. This issue was raised at Appx.100-1 and at Appx.121-3 and was ruled on at Appx.13-4.

4. Whether the District Court erred when it dismissed Dr. Solano's sex discrimination claims on the basis that he failed to identify any comparators.

Suggested answer: Yes. This issue was raised at Appx.93-4 and was ruled on at Appx.14-5.

5. Whether the District Court improperly found that there was no causal link between Dr. Solano's complaints of Jeannine Nicholls's homophobic actions and any subsequent adverse employment action.

Suggested answer: Yes. This issue was raised at Appx.95-6 and at Appx.103-4 and was ruled on at Appx.13-4.

6. Whether the District Court erred when it found that there were no facts to support a finding that Ms. McCoy would be liable for any discriminatory conduct towards Dr. Solano.

Suggested answer: Yes. This issue was raised at Appx.92 and was ruled on at Appx.26.

## III. RELATED CASES AND PROCEEDINGS

This case has not been before this Court. It is related to a case now pending before the U.S. District Court for the Western District of Pennsylvania, *Solano v. Slippery Rock University of Pennsylvania*, 25-01412 (W.D. Pa.).

## IV. CONCISE STATEMENT OF THE CASE

### A. Statement of Facts.

Dr. Solano is a professor at Defendant Slippery Rock University ("SRU") who, during the time period relevant to the lawsuit now on appeal, served as chair of the Department of Management and Marketing. Appx.33, ¶15. As chair, he had administrative duties regarding scheduling and department governance, and he had been expected to work over the summer. Appx.33-4, ¶¶23-4. Department chairs are also eligible for bonus pay that depends upon the size of the department. Appx.34, ¶25. Dr. Solano was hired at SRU in 2009, and he became department chair in 2019. Appx.33, ¶22. He holds a Ph.D. in industrial engineering from the New Jersey Institute of Technology. Appx.33, ¶17. He is a native of Venezuela, and his first language is Spanish. Appx.33, ¶19. He is also a homosexual man. Appx.33, ¶20.

At SRU, Dr. Solano has been the focus of a campaign of harassment and

intimidation that involves, but is not solely precipitated by, Jeannine Nicholls ("Dr. Nicholls"). Appx.34, ¶¶26-7. Dr. Nicholls has taught in the Department of Management and Marketing since 2011. Appx.34, ¶ 28. She is also a member of the University Promotion Committee and a member of the executive committee of the Association of Pennsylvania State College and University Faculties. Appx.35, ¶¶34-5. Due to both her status as a voting member of the Department faculty and to her close association with key SRU administrators Dr. Nicholls has considerable pull over administrators at SRU. Appx.34, ¶¶ 31-2.

The relationship between Dr. Solano and Dr. Nicholls has been tense. For instance, Dr. Nicholls has criticized nearly every decision–no matter how minor–made by Dr. Solano. *Id.* To illustrate, in the first 15 weeks after he became department chair, Dr. Nicholls filed no fewer than 14 complaints against him. Appx.35, ¶39. Due to his secondary proficiency in English, Dr. Solano takes time to respond to email communications and his responses are usually limited to brief comments. In spite of this, Dr. Nicholls would send long, rambling emails to Dr. Solano and would demand similarly worded responses. Appx. 36, ¶¶50-1.

Dr. Nicholls's personal vendetta against Dr. Solano reached a crescendo when she filed a complaint against him with the U.S. Equal Employment Opportunity Commission ("EEOC"). Appx.37, ¶60. In this malign complaint Dr. Nicholls

accused Dr. Solano of favoring younger, male faculty with respect to scheduling.[1] Appx.37, ¶61. Dr. Nicholls's complaint was baseless and was ultimately dismissed by the EEOC. Appx.38, ¶67. Nevertheless, her complaint against Dr. Solano germinated into a full-blown campaign involving multiple actors. Appx.38, ¶¶ 70-5. For instance, the Department of Management and Marketing was reorganized as the Department of Management. Appx.41, ¶99. Dr. Solano was a candidate to serve as chair of the merged department. Appx.41, ¶100. Four hours before the department chair election was scheduled to close, though, SRU administrators cancelled the election, denying him the position as department chair and profoundly upsetting him. Appx.41, ¶¶101, 107. He was a leading candidate for the position. Appx.41, ¶100. The nullification of the election of a department chair is a rare occurrence. Appx.41, ¶ 102. Subsequently, the SRU administration moved the Sports Management program out of the Department of Management. Appx.42, ¶112. This decreased the size of Dr. Solano's department, thereby leading to a decrease in compensation. Appx.42, ¶¶114-7.

Even though they knew that Dr. Nicholls's complaints are baseless, SRU has

[1] In addition to being highly homophobic, Dr. Nicholls lacked standing to complain of the scheduling of others. *See e.g. Thompson v. N. Am. Stainless, L.P.*, 562 U.S. 170, 177-8 (2011) (Title VII suits may be brought only by individuals directly "affected or aggrieved" by a discriminatory act).

allowed the animus against Dr. Solano to swell. In particular, Ms. McCoy–who as Human Resources Director could have put a halt to the ongoing adverse treatment–did nothing and allowed the harassment of Dr. Solano to persist. Appx.43, ¶¶127-8. This failure has had a negative impact on his health. Dr. Solano now suffers from anxiety and panic attacks and has been placed on powerful psychiatric medication. Appx.39, ¶¶80-3. Rather than chastize Dr. Nicholls for her harassment of Dr. Solano, the SRU administration appears to be fostering it, including marginalizing him in his current position. Critically, faculty who are non-Hispanic and/or heterosexual, including Dr. Nicholls, have not been treated as poorly. Appx.47, ¶170.

## B. Procedural History

Dr. Solano commenced this action on November 11, 2024 by filing a Complaint naming SRU and Ms. McCoy as defendants. Appx.27. SRU and Ms. McCoy moved to dismiss this Complaint on March 6, 2025. Appx.28. Defendants/Appellees filed a renewed Motion to Dismiss on April 17, 2025. *Id.* The District Court granted this motion on August 19, 2025. Appx.3-4. Dr. Solano appeals from this Order. Appx.1-2.

## C. Rulings Presented for Review

Dr. Solano appeals from the Order of Court granting the Motion to Dismiss filed on behalf of Defendants. Appx.1. In his Amended Complaint, Dr. Solano raised

claims for national origin discrimination in violation of Title VII, sex/sexual orientation discrimination in violation of Title VII and Title IX, retaliation in violation of Title VII and Title IX, and disability discrimination in violation of the Rehabilitation Act and the Americans with Disabilities Act. Appx.45-56. Dr. Solano also brought claims under the Pennsylvania Human Relations Act against Ms. McCoy in her individual capacity. Appx.56-61. The District Court dismissed all of the claims raised in Dr. Solano's Amended Complaint in their entirety. Appx.3-4. Specifically, the District Court concluded that Dr. Solano failed to plead that he had experienced an adverse employment action. Appx.11, 13-4. The lower Court further found that Dr. Solano failed to identify any comparators. Appx.14. The District Court also found that Dr. Solano failed to plead that the SRU administration acted as a "cat's paw" for Dr. Nicholls's animus against him. Appx.17-8. The District Court concluded that there was no causal link between his protected activity and the adverse employment action. Appx.20. The District Court also found that Dr. Solano failed to request accommodations for his disabilities (Appx.23) and that the Amended Complaint fails to aver any action that Ms. McCoy may have taken against Dr. Solano. Appx.25-6. Dr. Solano now appeals from these rulings.

## IV. SUMMARY OF ARGUMENT

The District Court erred when it dismissed Dr. Solano's National Origin

Discrimination/Racial Discrimination Claims. The facts pled in Dr. Solano's Amended Complaint set forth that he was targeted because of his language ability and that he was treated less favorably than his non-Hispanic colleagues. The Amended Complaint further pleads that Dr. Solano experienced hostility directed towards his sex/sexual orientation.

The District Court erroneously found that Dr. Solano failed to plead that he experienced an adverse employment action. The continued harassment, scrutiny, and departmental reorganization left him considerably worse off. Because these actions left Dr. Solano in a worse position, they qualify as adverse employment actions. The treatment experienced by Dr. Solano would have dissuaded anyone from engaging in protected activity and qualifies as an adverse employment action for purposes of his retaliation claim. The District Court further erred when it required Dr. Solano to identify specific comparators. Additionally, by pleading that Dr. Nicholls exercised influence over the SRU administration, the Amended Complaint set forth that the administration acted as her cat's paw.

The District Court further made erroneous findings regarding causation. The lack of temporal proximity between Dr. Solano's protected conduct and the cancellation of the department chair election does not mean that there is no causal link. With respect to Dr. Solano's request for accommodation of his disabilities, SRU

administrators were aware of Dr. Solano's mental health problems and his need for accommodation and, therefore, were obligated to engage in an interactive process for the purposes of determining a reasonable accommodation. Finally, with respect to the personal liability of HR Director McCoy, the Amended Complaint pled that she had oversight over any grievance that Dr. Solano may have brought and, as a result, is liable personally for the ongoing harassment.

## V. ARGUMENT

### A. Scope and Standard of Review

With respect to motions to dismiss brought under Rule 12(b)(6), this Court exercises de novo review. *McLoughlin v. Cantor Fitzgerald, L.P.*, 162 F.4th 378, 387 (3d Cir. 2025) (citing *Kalu v. Spaulding*, 113 F.4th 311, 324 (3d Cir. 2024)); *Merle v. U.S.*, 351 F.3d 92, 94 (3d Cir. 2003) (citing *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 229 (3d Cir.1999)). At this stage, this Court should "accept[ ] all well-pleaded allegations in the complaint as true and view[ ] them in the light most favorable to the plaintiff." *Borough of Longport v. Netflix, Inc.*, 94 F.4th 303, 307 (3d Cir. 2024) (quoting *Fenico v. City of Phila.*, 70 F.4th 151, 161 (3d Cir. 2023)). To survive a motion to dismiss, "...a plaintiff must detail 'enough facts to raise a reasonable expectation that discovery will reveal evidence of each necessary element of the claims alleged in the complaint.'" *Fenico*, 70 F.4th at 161 (quoting *Phillips v.*

*County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

### B. The District Court erred when it dismissed Dr. Solano's National Origin Discrimination/Racial Discrimination Claims.

#### 1. The facts pled in Dr. Solano's Amended Complaint set forth that he was targeted because of his language ability and that he was treated less favorably than his non-Hispanic colleagues.

The District Court found that Dr. Solano had failed to plead that he was the victim of racial/national origin discrimination because he pled only one specific instance in which his national origin was referenced. Appx.11. This instance was an incident in which Dr. Nicholls complained about the wording of an email, specifically alluding to the fact that Dr. Solano's first language is not English. Appx.35, ¶41. Dr. Nicholls's complaints about Dr. Solano's linguistic capabilities were not confined to one instance. *See* Appx.40, ¶92 ("Dr. Nicholls made negative comments about Dr. Solano and the fact that he is not a native speaker of English."). Moreover, the Amended Complaint also sets forth that neither Dr. Nicholls nor the SRU administration took similar adverse actions towards non-Hispanic faculty.[2] Appx.40,

---

[2] In its Opinion, the District Court found that Dr. Solano failed to adequately plead respondeat superior liability. Appx.11-2. This Court has held that, "employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." *Huston v. Procter & Gamble Paper Prod. Co.*, 568 F.3d 100, 104 (3d Cir. 2009) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 427 (3d Cir. 2001)). For the reasons set forth below, SRU administrators–in particular Ms.

¶¶88-90.

Dr. Solano was singled out because of his accent and proficiency with English. English is his second language and it is more difficult for him to communicate in that language than in his native Spanish. *See* Appx.33, ¶19. The Amended Complaint avers that his colleagues have criticized his communication style. Appx.35, ¶41 ("...during the end of a November 2019 meeting, Dr. Nicholls complained about the wording of an email sent by Dr. Solano–thereby alluding to his capacity with the English language–and complaining about the lack of honesty or transparency within the Department"). He has also been criticized for the relative and understandable brevity of his communications. Appx.36, ¶51. Criticism of an employee's ability to communicate in English constitutes evidence of discriminatory animus. *See* EEOC Regulations, 29 C.F.R. § 1606.6(b)(1) (1980). Dr. Nicholls's criticism of Dr. Solano's accent and linguistic ability reflects upon his race/national origin, and is an inference that should have weighted by the facts.

**2. Dr. Solano was singled out for adverse treatment.**

The facts pled in the Amended Complaint give rise to an inference that Dr.

---

McCoy–were aware of the harassing conduct but failed to take remedial action. *See e.g.* Appx.43, ¶¶127-8. In light of this inaction, SRU is liable for the discriminatory actions of Dr. Nicholls and her allies, as a reasonable jury could have found. *Huston*, 568 F.3d at 104 (citing *Weston*, 251 F.3d at 427).

Solano was being singled out for his national origin. The District Court found that Dr. Nicholls subjected Dr. Solano to unnecessary and unwarranted criticism. Appx.11. This is sufficient to allow for an inference that he was subjected to a hostile work environment. This Court has held that "[l]ess severe isolated incidents which would not themselves rise to the level of [discrimination] may, when taken together as part of 'the overall scenario,' evidence [discriminatory] animus, and one severe incident may be enough to create a hostile work environment.'" *Starnes v. Butler County Court of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (quoting *Komis v. Sec'y U.S. Dep't of Labor*, 918 F.3d 289, 293-4 (3d Cir. 2019)).

In an illustrative case, *Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001), plaintiff's supervisor at the Postal Service engaged in a campaign of relenting criticism of her after she rebuffed his sexual advances. *Id.* at 350. The harassment made plaintiff distraught, forced her to take sick leave, and made her unable to resume her job duties. *Id.* at 351. After filing an administrative complaint against the Postal Service, plaintiff filed a sex discrimination claim under Title VII. *Id.* at 352. Plaintiff had alleged that she sought treatment for agoraphobia, sleeplessness, depression, and the loss of nearly 25 percent of her body weight. *Id.* at 352. The district court dismissed the complaint, entering summary judgement in favor of the employer. *Id.* at 355. On appeal, the Second Circuit Court of Appeals reversed, holding that in light

of the fact that plaintiff had been subjected to harassment from her supervisor for nearly 2 ½ years, a jury could conclude "...that it became increasingly difficult for [plaintiff] to perform her job." *Id.* at 366.

Here, the highly persistent harassment by Dr. Nicholls, the arguable condonation by the SRU administration, and the apparent averse health effects on Dr. Solano should have been the province of the fact-finder. *See e.g. Connelly v. County of Rockland*, 61 F.4th 322, 326 (2d Cir. 2023) ("[t]he question of whether a particular criticism or reprimand qualifies as an adverse employment action will often be a fact-intensive inquiry for the jury."); *Brewer v. New Era, Inc.*, 564 Fed.Appx. 834, 841 (6th Cir. 2014) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)) ("[t]he key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that he or she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination.").

Unwelcome conduct can be in the form of unfair or unwarranted scrutiny. *See e.g. Strothers v. City of Laurel, Md.*, 895 F.3d 317, 329 (4th Cir. 2018) ("[supervisor] tracked [plaintiff's] every movement in the office, requiring [plaintiff] to obtain permission even to relieve herself in the restroom."). The Amended Complaint pled that Dr. Solano was subjected to constant surveillance. Appx.42, ¶¶109-10 ("[a]s

chair, Dr. Solano was expected to be on campus for at least three weeks over the summer, even though students were not on campus since classes were not in session. Dr. Solano fulfilled his contractual obligations and expectations, but some of his colleagues would continue to check his office periodically to see if he was physically present."). Non-Hispanic faculty were not subject to similar treatment. Appx.47, ¶170. The Amended Complaint therefore indicates that Dr. Solano, a Hispanic male, was singled out for adverse treatment. *Id.*

### 3. The Amended Complaint avers that Dr. Solano experienced hostility directed towards his sex/sexual orientation.

In a similar vein the averments in the Amended Complaint set forth that Dr. Solano was singled out for his sexual orientation. For instance, he was accused of demonstrating favoritism towards men, especially younger men. *See* Appx.37, ¶61 (Dr. Solano was accused of favoring "...younger, male faculty with respect to scheduling...."). *See also* Appx.43, ¶119; Appx.46, ¶161; Appx.48, ¶176; Appx.50, ¶194; Appx.51, ¶212; Appx.58, ¶289; Appx.60, ¶306. The allegation that Dr. Solano favored younger men implies that he was sexually attracted to younger male employees and/or stigmatized for his status. Appx.37, ¶¶60-1. This Court has held that the suggestion of sexual impropriety could support a discrimination claim. *See e.g. Spain v. Gallegos*, 26 F.3d 439, 449 (3d Cir. 1994) (false rumors that female subordinate was having an affair with a male superior was sufficient to support a sex

discrimination claim). Moreover, the insinuation that homosexual men are promiscuous could support a finding that a plaintiff was subjected to a discriminatory or a hostile work environment. *See e.g. SmithKline Beecham, Inc. v. Abbott Labs.*, 740 F.3d 471, 486 (9th Cir. 2014) (citing *Perry v. Schwarzenegger*, 704 F.Supp.2d 921, 982–83 (N.D.Cal.2010)) ("[s]tereotypes of gays and lesbians depict them as wealthy and promiscuous, and as 'disease vectors' or child molesters."). At this early stage, all factual inferences should have been drawn in favor of Dr. Solano. *See e.g. Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567, 574 (3d Cir. 2024) (in reviewing a motion to dismiss a court must "...draw all reasonable inferences in that party's favor"). Since Dr. Solano's accent and speech pattern and language acuity were criticized, and since there was an implicit insinuation that he was favoring male employees because he was sexually attracted to them, his claims of race/national origin and sexual orientation cross the line to plausible and, therefore, the lower Court should have denied the Motion to Dismiss. *See e.g. Murphy v. Hotwire Comm., LLC*, No. 19-5901, 2020 WL 2128472, at *3-*4 (E.D. Pa. May 5, 2020) (court drew all factual inferences in favor of plaintiff and denied motion to dismiss).

**4. The District Court erroneously found that Dr. Solano failed to plead that he experienced an adverse employment action.**

In dismissing the national origin discrimination claim, the District Court found that Dr. Solano failed to plead that he had experienced an adverse employment action.

Appx.11. The lower Court agreed with the Appellees that, because he had ultimately been promoted to the position of chair, Dr. Solano did not suffer an adverse employment action. *Id.* However, this overlooks the fact that the treatment that he experienced left him considerably worse off. For instance, he had been the target of a frivolous investigation spurred by Dr. Nicholls's complaints. Appx.38, ¶71. Apparently feeling invulnerable to administrative controls or sanctions, Dr. Nicholls has indicated that she does not trust Dr. Solano and has spread rumors about his conduct. Appx.39, ¶¶75-6. These attacks have lowered his standing and reputation within the University community. Appx.39, ¶77. This negative treatment has led Dr. Solano to suffer multiple panic attacks. Appx.39, ¶¶80-3.

The harassment persisted even after the nullified election for department chair that a jury could find unusual and indicative of discrimination and retaliatory.[3] Dr. Solano has been pressured to remain on campus, even if students were not in class.

---

[3] The blocking of a leadership position could seem to be an assault on stature and prestige in juror's minds. *See e.g. Goodwin v. Circuit Court of St. Louis County, Mo.*, 729 F.2d 541, 547 (8th Cir. 1984) (jury could conclude that transfer to a less favorable position was an adverse employment action). *See also Bryson v. Chicago State Univ.*, 96 F.3d 912, 916 (7th Cir. 1996) ("[a] sudden loss of all committee responsibilities and the stripping of a title one formerly held (when similar titles continued to be used throughout the university), if proven at trial, would be a loss of tangible employment benefits just as serious as moving an office to an undesirable location, relocating someone's personal files, or isolating the employee from others—all actions courts have held to qualify under Title VII in other cases.").

Appx.42, ¶¶109-10. The Sports Management program would be transferred out of his department, reducing the size of his department. Appx.42, ¶¶112-4. Since the compensation of department chairs is tied to the size of a particular department, this action has had a negative economic impact upon Dr. Solano. Appx.42, ¶¶115-7. Reduced pay is a litmus of discrimination. *See e.g. Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir.2001)) ("[w]e have defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"). *See also* 42 U.S.C. § 2000e-2(a)(1) (1991).

The Supreme Court recently clarified that any action that leads a plaintiff to be worse off qualifies as an adverse employment action. In *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), plaintiff, a municipal police officer, was transferred to a new position but retained her former rank and pay. *Id.* at 351. Plaintiff testified that her new position was less visible and prestigious. *Id.* at 351-2. The trial court granted summary judgment in favor of the defendant municipality, finding that the she had not demonstrated a significant change in her working conditions. *Id.* at 352. The Eighth Circuit Court of Appeals affirmed. *Id.* at 353. The Supreme Court granted certiorari in order to determine what level of harm a plaintiff must prove in order to plead an

adverse employment action. *Id.* The Court ultimately held that a plaintiff need not demonstrate "significant" harm to plead an a adverse employment action. *Id.* at 354-5. A plaintiff need prove only that the action made him/her worse off in order to plead an adverse employment action. *Id.* at 359 ("[plaintiff] need show only some injury respecting her employment terms or conditions. The transfer must have left her worse off, but need not have left her significantly so.").

This Court has recognized that *Muldrow* redefined "adverse employment action." In *Peifer v. Bd. of Probation & Parole*, 106 F.4th 270 (3d Cir. 2024), a pregnant parole officer requested that she be provided modified duty. *Id.* at 273-4. This request was rejected, prompting plaintiff to take FMLA leave. *Id.* at 274. The employer subsequently reversed course and granted plaintiff's request for modified duty. *Id.* After returning, plaintiff requested accommodation in the form of permission to work remotely, citing her pregnancy, susceptibility to COVID infection, and multiple sclerosis diagnosis. *Id.* at 274-5. This request was denied, but the employer provided personal protective equipment. *Id.* at 275. This denial prompted plaintiff to resign. *Id.* At the summary judgment stage the district court found that the denials of plaintiff's requests for accommodation did not constitute adverse employment actions. *Id.* at 277. This Court remanded, ruling that "[b]ecause *Muldrow* made clear that adverse employment action need not be serious, we will

remand so that the District Court can consider in the first instance whether [plaintiff] has asserted harms sufficient to establish 'some' employment-related harm for her prima facie case." *Id.* at 277.

In the First Amended Complaint, Dr. Solano avers that the continued harassment was forcing him to consider leaving his position. Appx.44, ¶130 ("[t]he harassment and hostile work environment has become so acute that Dr. Solano is considering stepping down as department chair to preserve his health as management apparently wants"). Even before the decision in *Muldrow*, this Court held that, even in the absence of a diminution in pay and benefits, a reasonable jury could conclude that a plaintiff has suffered an adverse employment action if the conditions of his employment had substantially worsened. *See e.g. Dilenno v. Goodwill Indus. of Mid-Eastern Pa.*, 162 F.3d 235, 236 (3d Cir. 1998) (even though transfer of plaintiff did not result in a decrease in her pay or benefits, fact that plaintiff's working conditions significantly worsened constitute an adverse employment action). Clearly, Dr. Solano's work environment has been degrading progressively. Therefore, a fact-finder could conclude that he experienced an adverse employment action, and the District Court erred in granting the Motion to Dismiss.

The Amended Complaint averred that the treatment Dr. Solano had experienced has left him worse off. The persistent harassment is ruining his mental and physical

health. Appx.39, ¶¶80-4. Moreover, the department reorganization has caused him to suffer negative economic impact. Appx.42, ¶¶ 115-7. Regardless of whether he ultimately served as chair, SRU cannot credibly dispute that Dr. Solano has been left worse off as a result of the adverse treatment, which is a question for the jury. Therefore, contrary to the holding of the District Court, he has experienced an adverse employment action. *Muldrow*, 601 U.S. at 359.

Dr. Solano has been diagnosed with, *inter alia*, anhedonia, insomnia, poor appetite, anxiety, fatigue, and lack of energy. Appx.43, ¶120. He had developed vision problems. Appx.43, ¶123. Dr. Solano was also placed on powerful psychiatric medication. Appx.43, ¶124. Worsening medical and psychological conditions can be evidence of a pervasive hostile work environment in discrimination cases. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) ("[A] discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality"). Dr. Solano's worsening condition is

evidence of this hostile environment.

The facts set forth in the Amended Complaint suggest that Dr. Solano's working conditions were–and are–becoming increasingly intolerable. He perceived this treatment as hostile, and made multiple complaints about Dr. Nicholls's behavior to the SRU administration, who did nothing. Appx.40, ¶¶87-9 ("Dr. Solano had complained about Dr. Nicholls's behavior to SRU administrators, but the University administration took no steps to end the barrage of hostility. To the contrary, SRU administrators condoned Dr. Nicholls's campaign of harassment against Dr. Solano. Even though Dr. Nicholls's complaints were baseless, SRU administrators gave them credence as part of a larger campaign against Dr. Solano."). In *Nichols v. Azteca Restaurant Enters., Inc.*, 256 F.3d 864 (9th Cir. 2001), plaintiff had been subjected to harassment by his male coworkers. *Id.* at 869. Plaintiff complained about this harassment to management. *Id.* at 870. A couple of months later, plaintiff walked off the job after an argument with a coworker and was terminated. *Id.* at 871. Plaintiff filed suit for, *inter alia*, a hostile work environment under Title VII. *Id.* at 869. After a bench trial, the district court granted judgment in favor of the employer, finding that the plaintiff failed to prove that his work environment was objectively hostile. *Id.* at 872. On appeal, the Ninth Circuit Court of Appeals reversed, ruling that the "objective severity of harassment should be judged from the perspective of a

reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id.* 872 (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81-2 (1998)). The Court went onto "...hold that a reasonable man would have found the sustained campaign of taunts, directed at [plaintiff] and designed to humiliate and anger him, sufficiently severe and pervasive to alter the terms and conditions of his employment." *Nicholls*, 256 F.3d at 873. In short, this is a jury question.

A hostile work environment must be both objectively and subjectively hostile. *Id.* at 871-2. The Amended Complaint sets forth that Dr. Solano viewed the treatment he was experiencing as hostile and acted accordingly. He sought out psychiatric help, and was prescribed powerful medication to treat his condition. Appx.43, ¶¶121-4 ("Dr. Solano has been experiencing symptoms of severe depression and those symptoms are worsening. The worsening of Dr. Solano's condition is directly attributable to the increasing stress that he is experiencing at work. The mounting stress had created vision problems that Dr. Solano was ultimately able to obtain treatment for. To mitigate his depressive symptoms Dr. Solano has been prescribed powerful antidepressant medications by his physician."). Lower courts in this Circuit have found that seeking out mental health treatment is evidence that a plaintiff considered his work environment to be hostile. *See e.g. Webb v. Merck & Co., Inc.*, 450 F.Supp.2d 582, 598 (E.D. Pa. 2006) (quoting *Abramson v. William Patterson*

*Coll. of N.J.*, 260 F.3d 265, 280 (3d Cir. 2001)) (jury could conclude from the fact that plaintiff sought mental health counseling that he subjectively held his work environment to be hostile). Because of the fact that he sought treatment, a fact-finder could conclude that Dr. Solano subjectively found his work environment to be hostile. Because a reasonable person could also conclude that the barrage of baseless condoned harassment he experienced was hostile, Dr. Solano's Amended Complaint has adequately pled that he experienced a hostile work environment. *Nichols*, 256 F.3d at 873.

This Court has held that a hostile work environment is itself an adverse employment action. In *Durham Life Ins. Co. v. Evans*, 166 F.3d 139 (3d Cir. 1999), plaintiff, a female insurance agent, was subjected to humiliation, sexist remarks, being removed from her private office, and having her files taken away from her. *Id.* at 143-4. In addition to being subject to public humiliation, harassment, and the denial of needed support, management engaged in a reassignment of job duties that led to a downward adjustment of her compensation calculation. *Id.* at 146. Plaintiff ultimately resigned and was hired at another insurance company. *Id.* Prior to her resignation–while she was still employed by defendant–plaintiff had suffered from "...chest pains, severe headaches, nausea, and shortness of breath...," conditions which improved after her resignation. *Id.* at 147. After a bench trial, the district court

granted judgment in favor of plaintiff on her Title VII sex discrimination claim. *Id.* at 143. On appeal, the employer argued that plaintiff did not suffer any tangible adverse employment action. *Id.* at 152-3. Specifically, the employer claimed that since plaintiff resigned from her job prior to being forced to fully vacate her private office the deprivation of her office and files did not constitute an adverse employment action. *Id.* at 153. Affirming the trial court on appeal, this Court found that being forced out of her office constituted an adverse employment action for plaintiff, holding that "[a]lthough direct economic harm is an important indicator of a tangible adverse employment action, it is not the *sine qua non*. If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Id.* at 153.

The District Court's finding that Dr. Solano did not suffer an adverse employment action is in error. The mistreatment that he has been experiencing has had a severe impact on his mental and physical health. Appx.39, ¶¶80-4. The department reorganization has led to a likely decrease in his income. Appx.42, ¶¶ 115-7. An act that leads to a decrease in income constitutes an adverse employment action. *See e.g. Ray v. Int'l Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018) (citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)) ("[plaintiff] has adduced sufficient

evidence at this stage of the proceedings that she earned substantially less income after complaining about [supervisor's] conduct. On its face, this decrease in income constituted an adverse employment."). The facts as pled in the Amended Complaint plainly point to him suffering some actionable harm as a result of the treatment that he experienced. Therefore, he endured an adverse employment action, and the District Court erred in concluding otherwise. *Muldrow*, 601 U.S. at 359; *Peifer*, 106 F.4th at 277; *Dilenno*, 162 F.3d at 236; *Evans*, 166 F.3d at 153.

**5. The treatment experienced by Dr. Solano would have dissuaded anyone from engaging in protected activity and qualifies as an adverse employment action for purposes of his retaliation claim.**

Dr. Solano also experienced an adverse employment action in that he was subjected to adverse treatment that would have dissuaded a reasonable person from engaging in protected activity. Consequently, he brought retaliation claims in addition to his discrimination claims. Appx.48-9, ¶¶173-87; Appx.51-2, ¶¶207-254; Appx.60-1, ¶¶302-17. The Amended Complaint pled that he had experienced an adverse employment action for purposes of his retaliation claims. It avers that Dr. Solano was forced to endure an environment of persistent and constant hostility. He was compelled to sift through Dr. Nicholls's massive harassing output of baseless

complaints.[4] Appx.35, ¶39 ("[i]n the first 15 weeks after Dr. Solano was elected as department chair, Dr. Nicholls filed no fewer than 14 complaints against him."). These complaints were frivolous and unsupported by evidence. Appx.37, ¶¶54-7 ("Dr. Nicholls's accusations against Dr. Solano veered into the bizarre: on one occasion she accused him of discriminating against a faculty member in another department. Dr. Nicholls's accusations have not been supported by evidence. SRU knew or should have known that these complaints were frivolous, harassing, and/or discriminatory yet were complicit in allowing them to persist. To the contrary, SRU administrators actually appeared to be facilitating Dr. Nicholls's obnoxious, hostile, and harassing behavior."). In addition, Dr. Solano was subjected to surveillance on the part of his colleagues. Appx.42, ¶110 ("Dr. Solano fulfilled his contractual obligations and expectations, but some of his colleagues would continue to check his office periodically to see if he was physically present."). The SRU administration also engineered a department reorganization that led to a decrease in Dr. Solano's

[4] Appellant submits that discovery is likely to show that the volume and content were pernicious and meant to cause harm. *See e.g. Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 793 (3d Cir. 2016) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)) ("...even if one believed it 'unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits,' it must still be said that [plaintiff]—under a favorable standard of review—has raised a reasonable inference that discovery will reveal evidence of the elements necessary to establish her claims.").

compensation. Appx.47, ¶115.

The facts pled in the Amended Complaint set forth that Dr. Solano has experienced an intensely hostile work environment. For purposes of a retaliation claim, an adverse employment action is any managerial behavior that would dissuade a reasonable employee from engaging in an adverse employment action. *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 67-8 (2006) ("...a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'") (internal citations omitted). *See also Huri v. Office of the Chief Judge of Cook County*, 804 F.3d 826, 833 (7th Cir. 2015) (citing *Chaib v. Indiana*, 744 F.3d 974, 986-7 (7th Cir. 2014) ("'adverse employment action' simply means an employer's action that would dissuade a reasonable worker from participating in protected activity.").

Dr. Solano submits that the harassment that he has experienced would have dissuaded a reasonable person for complaining about prior discrimination which is a jury question. In *Moore v. City of Philadelphia*, 461 F.3d 331 (3d Cir. 2006), plaintiffs, who were police officers, complained that they had experienced harassment in the form of being denied material support, having their radio communications intercepted, and being shunned by their colleagues. *Id.* at 334-5. Plaintiffs had

complained about "racial problems" within their squad. *Id.* at 335-6. They indicated that they opposed their supervisor's use of racial epithets in describing their African American colleagues, and they complained about racist graffiti in the station bathroom. *Id.* at 337. In the aftermath of their complaints the treatment of plaintiffs worsened. *Id.* at 338. A supervisor threatened one plaintiff by indicating that he could make his life a "living nightmare." *Id.* One plaintiff was given a less favorable assignment, while another was assaulted and ultimately forced to resign. *Id.* at 338-9. Ultimately, plaintiffs brought retaliation claims under Title VII against the municipal employer. *Id.* at 340. After discovery (which should be permitted here), the district court granted summary judgment in favor of defendant. *Id.* Reversing on appeal (*id.* at 342), this Court found that

> ...a jury might well believe that their supervisors made their lives the 'living nightmare' one supervisor promised as payment for opposing unlawful discrimination. It is true enough that only a portion of that nightmare can be attributed to a desire to retaliate against them and that only a portion of their experience is redressable by Title VII. These officers have claimed many wrongs by many foes for many reasons. But this cannot obscure the fact that a jury might properly conclude that some of those wrongs by some of those foes were intended to silence the plaintiffs from identifying and opposing unlawful discrimination.

*Id.* at 352.

A retaliation plaintiff need plead only that the employer took action that would have deterred a reasonable plaintiff from engaging in protected activity. *White*, 548

U.S. at 67-8. Ongoing harassment would dissuade a reasonable individual from engaging in protected activity. *Moore*, 461 F.3d at 348. The Amended Complaint shows that, after he complained of his treatment, the harassment of Dr. Solano intensified and his condition worsened. Appx.39-40, ¶¶ 79-85. Post-discovery, a jury could conclude that this intensification would have dissuaded a reasonable individual from complaining about the harassment. Therefore, the dismissal should be reversed and this case and this case should be remanded back to the District Court.

### C. The District Court erred when it required Dr. Solano to identify specific comparators.

One of the reasons given by the District Court for dismissing Dr. Solano's sex/sexual orientation discrimination claims is that he failed to identify anyone outside of his protected classification who was treated more favorably. Appx.14. In his Amended Complaint Dr. Solano avers that "[s]imilarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action[s]." Appx.47 at ¶170. The Complaint also pleads that the administration-backed smear campaign orchestrated by Dr. Nicholls did not target her current heterosexual, non-Hispanic, department chair. Appx.36, ¶48.

At the motion to dismiss stage, a plaintiff need not identify specific comparators. In *Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014), plaintiff was a female railroad employee who was forced out of a training program because she

was subjected to harassment and given extra work and unjustifiably poor performance evaluations. *Id.* at 823. Plaintiff then applied unsuccessfully for promotion to two vacant managerial positions, being passed over in favor of less qualified individuals. *Id.* at 824. Ultimately, plaintiff filed a sex discrimination suit under Title VII against her employer. *Id.* The district court wrongly granted the employer's motion to dismiss her sex discrimination claims on the basis that she failed to plead that any open position was filled by a male applicant. *Id.* Reversing the trial court, the Seventh Circuit Court of Appeals found that a complaint alleging sex discrimination under Title VII "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Id.* at 827 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)); *see also EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 781–82 (7th Cir.2007) (stressing the simplicity of pleading a Title VII discrimination claim). The plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the "indirect" method of proof. *Carlson*, 758 F.3d at 827 (internal citations omitted).

Federal appellate courts held that the identification of a comparator is a question of fact to be reserved for the jury. *See e.g. Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). *See also Wheeler v. Georgetown Univ. Hosp.,* 812 F.3d 1109, 1116

(D.C. Cir. 2016) (citing *George v. Leavitt*, 407 F.3d 405, 414 (D.C. Cir. 2005)); *Beck v. UFCW, Local 99*, 506 F.3d 874, 885 n.5 (9th Cir. 2007). In his Amended Complaint Dr. Solano pled that the harassment campaign engineered by Dr. Nicholls[5] and the SRU administration did not impact upon heterosexual and/or non-Hispanic faculty. Appx.40, ¶¶86, 90. The Amended Complaint further avers that "[s]imilarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action." Appx.47, ¶170. At this preliminary stage, a plaintiff need not identify all possible comparators and a complaint that makes only generalized references to comparators or employees outside of the plaintiff's protected class satisfies the initial pleading requirements. *See e.g. Kellogg v. Ball State Univ.*, 984 F.3d 525, 531 (7th Cir. 2021). The District Court's finding that the Amended Complaint was deficient in that it failed to expressly identify specific comparators was in error, and this Court should reverse the District Court's dismissal of this case.

### D. By pleading that Dr. Nicholls exercised influence over the SRU administration, the Amended Complaint set forth that the administration acted as her "cat's paw."

In a lengthy footnote, the District Court found that the Amended Complaint did

---

[5] Following discovery, Dr. Nicholls, a white female also is likely to be seen as a comparator, whose poor performance was indulged by management, led to no consequences while Dr. Solano's satisfactory performance was targeted. Appx.35, ¶33; Appx.44, ¶131; Appx.46, ¶152; Appx.47, ¶168; Appx.50, ¶201; Appx.54, ¶240; Appx.56, ¶260; Appx.57, ¶278; Appx.59, ¶296; Appx.60-1, ¶312.

not plead sufficient facts to support a "cat's paw" theory of liability. Appx.17. Even if Dr. Solano's claims arise from Dr. Nicholls's ongoing campaign of harassment, those claims are still viable against SRU. The Amended Complaint sets forth that "[a]s a voting member of the Department Dr. Nicholls has input over hiring decisions within the Management and Marketing Department, and as such holds significant influence over departmental personnel and staffing decisions." Appx.34, ¶31. She also cultivated close relationships with SRU administrators. Appx.34, ¶32. Moreover, "[a]s a voting member of the Department Dr. Nicholls has input over hiring decisions within the Management and Marketing Department, and as such holds significant influence over departmental personnel and staffing decisions." Appx.34, ¶ 31. Dr. Nicholls has also held leadership roles at SRU and within the faculty union, the Association of Pennsylvania State College and University Faculties. Appx.35, ¶¶ 34-5. A jury could conclude that SRU ratified her attack on Dr. Solano.

This Court has held that "[t]he employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." *McKenna v. City of Phila.*, 649 F.3d 171, 178 (3d Cir. 2011) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011)). Here, Dr. Nicholls enjoyed a close relationship with SRU administrators. Appx.34, ¶32. The averments in the Amended Complaint suggest that Dr. Nicholls

influenced the SRU administration in order to effectuate the continuing adverse treatment of Dr. Solano. This should be sufficient to defeat the motion to dismiss, and to move the case forward to discovery. *See e.g. Menaker v. Hofstra Univ.*, 935 F.3d 20, 37-8 (2d Cir. 2019) (reversing motion to dismiss where facts pled that student athlete who had accused terminated coach of sexual misconduct could be an agent of the university).

### E. The lack of temporal proximity between Dr. Solano's protected conduct and the cancellation of the department chair election does not mean that there is no causal link.

The District Court found that there is was causal link between Dr. Solano's protected activity and the cancellation of the election for department chair. Specifically, it concluded that too much time had elapsed between Dr. Solano's protected activity and the cancellation of the department chair election for there to be any causal link. Appx.20. This conclusion is flawed.

The fact that the treatment of Dr. Solano worsened in the wake of his complaints about Dr. Nicholls supports a finding of causation. *See e.g. Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (quoting *Krause v. Am. Sterilizer Co.*, 126 F.3d 494, 503-4 (3d Cir. 1997)) ("[t]iming alone raises the requisite inference when it is 'unusually suggestive of retaliatory motive,' but even if 'temporal proximity ... is missing, courts may look to the intervening period for other evidence of retaliatory

animus'"). Other than the continually hostile work environment, though, a fact-finder could determine the first discrete opportunity to retaliate against Dr. Solano was the election for the department chair. If the election was the first opportunity to take retaliatory action against Dr. Solano, then he can present a causal link between his protected activity and the adverse employment action to the fact-finder. *See e.g. George v. Youngstown State Univ.*, 966 F.3d 446, 567 (6th Cir. 2020) (citing *Dixon v. Gonzales*, 481 F.3d 324, 335 (6th Cir. 2007)) (causation may still be pled in the absence of temporal proximity if the adverse employment action was the first opportunity to take retaliatory action). To the extent the cancellation of the election was the first opportunity to take retaliatory action, Dr. Solano has pled a causal link between his protected activity and the adverse employment action.

Temporal proximity is not the sole determinant of causation, and in the absence of it "the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *See e.g. Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). A pattern of ongoing antagonism may support a finding of a causal link. For instance, in *Zelinski v. Pa. State Police*, 108 Fed.Appx. 700 (3d Cir. 2004), a female state trooper complained of being subjected to a pattern of sexual harassment. *Id.* at 702. Plaintiff had reported the

harassment to her supervisor. *Id.* at 705. Ten months after she made her report plaintiff was transferred to a less desirable position within the department. *Id.* at 706. Vacating the trial court's grant of summary judgment in favor of the department, this Court found that, because the factual record demonstrated that there were at least four incidents of intervening harassment between her complaint and her transfer, a fact-finder could discern a causal link between the protected activity and the adverse action. *Id.* at 706 (citing *Robinson v. S.E. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir.1993)). Here, Dr. Solano complained of the ongoing harassment by Dr. Nicholls. Rather than being ameliorated, though, the hostility towards Dr. Solano intensified, leading to the cancellation of the election for department chair. Under these circumstances causation can be inferred. *Id.* Therefore, the Motion to Dismiss Plaintiff's retaliation claims should have been denied, and this Court should reverse the prior ruling of the District Court.

**F. SRU administrators were aware of Dr. Solano's mental health problems and his need for accommodation and, therefore, were obligated to engage in an interactive process for the purposes of determining a reasonable accommodation.**

With respect to Dr. Solano's failure to accommodate claim, the District Court concluded that he had adequately pled that he was disabled for the purposes of the Rehabilitation Act and the ADA. Appx.23. However, the lower Court did not find that the Complaint pled that he had requested accommodation for his disability.

Appx.23-4. This determination is in error. The Amended Complaint pleads that SRU administrators were aware of Dr. Solano's medical diagnosis. Appx.43, ¶126 ("SRU administrators are aware of Dr. Solano's mental health problems and ADHD diagnosis."). The Amended Complaint also pleads that, this knowledge notwithstanding, SRU administrators took no steps to end the harassment of Dr. Solano nor did they take any other steps to accommodate his condition. Appx.43-4, ¶¶127-9.

The fact that SRU officials were aware of Dr. Solano's condition should have been sufficient to trigger the obligation to engage in an interactive process. This Court has held that "[t]he law does not require any formal mechanism or 'magic words' to notify an employer that an employee needs an accommodation and circumstances will sometimes require the employer to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506-7 (3d Cir. 2010) (citing *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 322 (3d Cir. 2003)). The mere fact that SRU was put on notice as to the fact that Dr. Solano was disabled and that he might need accommodation was sufficient to trigger the obligation to engage in the interactive process. In *Taylor v. Phoenixville School Dist.*, 184 F.3d 296 (3d Cir. 1999), plaintiff suffered from bipolar

disorder and had experienced psychotic delusions. *Id.* at 302-3. Plaintiff's son contacted her employer, explained the nature of her medical condition, and provided documentation regarding her condition and potential need for accommodation. *Id.* at 303. While plaintiff ultimately returned to work, she would later be terminated. *Id.* at 305.

Plaintiff subsequently filed suit under the ADA, and the trial court granted summary judgment in favor of the employer. *Id.* at 301. On appeal, this Court considered the question of whether the employer had provided reasonable accommodation for plaintiff's mental health disability. *Id.* at 311. Reversing the trial court's grant of summary judgment (*id.* at 320), this Court found that, because plaintiff suffered a psychotic break at work, management was aware of her disability and of her possible need for accommodation. *Id.* at 314. The opinion concluded that

> [i]n light of the undisputed background information putting the school district on notice that [plaintiff] had recently developed a serious disability, we think it would be especially inappropriate to insist that [plaintiff's] son must have specifically invoked the ADA or used the words 'reasonable accommodation' when he requested accommodations. Under the circumstances, it hardly should have come as a surprise that [plaintiff] would want some accommodations, particularly as the successive disciplinary meetings began to mount for an employee who had previously performed very well.

*Id.*

Appellant submits that SRU was both aware of his disabilities and his need for

accommodation. The ongoing harassment–coupled with Dr. Solano's disabilities–seriously impacted his mental health. He raised concerns to management regarding the negative impact of this adverse treatment. *See* Appx.35, ¶42 ("Dr. Solano raised complaints with the SRU Human Resources Department that Dr. Nicholls's behavior was adversely affecting both him and the Department as a whole."). The Amended Complaint pleads that Dr. Solano has suffered panic attacks arising from the adverse treatment. Appx.39, ¶81. A fact finder could have concluded that, per these attacks, that SRU administrators were aware of–or should have been aware of–Dr. Solano's disability and his need for accommodation. As pled, the Amended Complaint sets forth that SRU had notice of Dr. Solano's disability and should have initiated an interactive process for purposes of determining a reasonable accommodation. *Taylor*, 184 F.3d at 314. The District Court erred in dismissing the complaint.

### G. As Director of Human Resources, Ms. McCoy had oversight over any grievance that Dr. Solano may have brought and, as a result, is liable personally for the ongoing harassment.

Dr. Solano brought a claim under the Pennsylvania Human Relations Act against Ms. McCoy in her personal capacity. Appx.56, ¶269; Appx.58, ¶285; Appx.60, ¶60. The District Court dismissed these claims against Ms. McCoy, finding that the Amended Complaint did not specify what role Ms. McCoy had with respect

to facilitating the discrimination and harassment of Dr. Solano. Appx.26. However, as will be explained in greater depth below, Ms. McCoy had an integral oversight role over the grievance process, and should be held liable for any breakdown in this process.

The Amended Complaint pleads that, as Director of Human Resources, Ms. McCoy have oversight over the internal grievance process. Appx.33, ¶16 ("Ms. McCoy is currently the Director of Human Resources at SRU and, as such, has oversight over the internal grievance process."). When he complained of the harassment Dr. Solano went to the SRU Human Resources Department. Appx.35, ¶42 ("Dr. Solano raised complaints with the SRU Human Resources Department that Dr. Nicholls's behavior was adversely affecting both him and the Department as a whole."). Conversely, Dr. Nicholls's multiple complaints against Dr. Solano led to him being subjected to a baseless investigation. Appx.38, ¶¶68-71. As Human Resources Director, Ms. McCoy had an oversight role with respect to the conduct of these investigations. Appx.39, ¶79. Even though she should have been aware of the fact that Dr. Nicholls's complaints against Dr. Solano were frivolous, Ms. McCoy continued to foster and expand her campaign against him. Appx.40, ¶96 ("SRU administrators–including Ms. McCoy–were aware or should have been aware of the fact that Dr. Nicholls's complaints were baseless yet still used them as a basis to

conduct frivolous investigations into Dr. Solano's conduct.").

As Human Resources Director, Ms. McCoy was aware of the harassment of Dr. Solano. Appx.35, ¶42. However, the SRU Administration did nothing to end the ongoing torment. Appx.39, ¶78. The Amended Complaint specifically pleads that Ms. McCoy was personally unresponsive to remedying the situation. Appx.43, ¶¶127-8 ("Even though she was aware of the continual harassment of Dr. Solano, Ms. McCoy failed to protect him from further harassment. To the contrary, Ms. McCoy served to facilitate the continued harassment of Dr. Solano."). Ms. McCoy had knowledge of Dr. Solano's harassment, yet she did nothing to help him, thereby perpetuating the situation.

The PHRA prohibits managerial employees from aiding and abetting discriminatory or retaliatory acts.[6] 43 P.S. § 955(e) (1997). This Court has held that a managers's failure to take action to end persistent harassment can incur "aiding and

[6] In federal court, such a PHRA claim of aiding and abetting would be a jury question. *See e.g. Doe v. Schuylkill County Courthouse*, Civ. No. 3:21-CV-477, 2024 WL 993174, at 8 (M.D. Pa. Mar. 7, 2024) (quoting *Hewitt v. BS Transp. of Ill.*, LLC, 355 F. Supp. 3d 227, 238 (E.D. Pa. 2019)) ("'...it has been established that "[w]hen a supervisory employee has knowledge of conduct which creates a hostile work environment, inaction by such an employee or failing to take prompt remedial action to prevent harassment rises to the level of individual aiding and abetting' under the PHRA. In this case, we conclude that a reasonable jury could find for the plaintiffs on this PHRA aiding and abetting claim."). *See also Delval v. Town of McCandless*, 2:20cv1839, 2024 WL 1346670, at *8 (W.D. Pa. Mar. 29, 2024); *Phillips v. Heydt*, 197 F.Supp.2d 207, 224 n.13 (E.D. Pa. 2002).

abetting" liability. In *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542 (3d Cir. 1996), a liquor control officer was subjected to sexual harassment from her colleagues. *Id.* at 545. Plaintiff claimed that she became physically ill and disabled as a result of this harassment. *Id.* She also claimed that, after she had complained to a supervisor of the fact that a lewd drawing of her was on the wall of a restroom, the supervisor did nothing but claim that the drawing was "flattering." *Id.* This same supervisor would later block training and professional advancement opportunities for plaintiff. *Id.* at 546.

Plaintiff ultimately brought claims under Title VII and the PHRA against the department and her supervisor. *Id.* at 546-7. The district court granted summary judgement in favor of defendants. *Id.* at 545. On appeal, this Court held that, because the supervisor was aware of the harassment but failed to take action, he could be held liable under the PHRA:

> ...[supervisor] is a proper defendant under § 955(e) and might be liable for aiding and abetting discriminatory practices, as [plaintiff] has pleaded facts which, if true, could impose liability for violations of the PHRA. For example, in paragraph 14 of the complaint, [plaintiff] states, '[a]lthough [supervisor] knew or should have known that the Plaintiff was being subject to ... harassment ..., he repeatedly refused to take prompt action to end the harassment directed at Plaintiff....' Such conduct, if proven, would constitute aiding and abetting.

*Id.* at 553. The supervisor in *Dici* is analogous to Ms. McCoy in this case. Like the *Dici* supervisor, Ms. McCoy was aware, or should have been aware, of the underlying

harassment. Appx.40, ¶96. This Court has held that this basic of awareness of a harassing or discriminatory action on the part of a manager–coupled with a passive non-reaction to this information–is sufficient to give rise to aiding and abetting liability under the PHRA. *Dici*, 91 F.3d at 553. The District Court erred when it held that the Amended Complaint failed to pled facts that would support a finding that Ms. McCoy was personally liable for the actions against Dr. Solano.[7]

## H. Because there are unresolved factual issues, this Court should reverse the District Court's dismissal and remand this case for further discovery.

At the time of the District Court's early dismissal of this case, there remained multiple open factual issues. Whenever there are open questions of fact, this Court has remanded the case back to the trial court for further discovery. For example, in *Connelly v. Lane Constr. Corp.*, plaintiff, a commercial truck driver, was not rehired after she complained about harassment from her coworkers. *Connelly*, 809 F.3d at 784. She filed claims for, *inter alia*, sexual harassment and sex discrimination under Title VII. *Id.* at 785. The trial court granted defendant's Rule 12(b)(6) motion to dismiss, finding that plaintiff's amended complaint failed to allege sufficient facts that

[7] The fact that Ms. McCoy was the Human Resources Director at SRU during the time relevant to this complaint (Appx.33, ¶16) and a lawyer, and hence likely to have a higher awareness of anti-discrimination laws, may be weighed by the fact-finder. *See e.g. Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) ("[t]he terms "malice" or "reckless indifference" pertain to the employer's knowledge that it may be acting in violation of federal law....").

she was not rehired due to her gender. *Id.* at 785-6. On appeal, this Court held that a complaint need not establish a prima facie case in order to survive a motion to dismiss since "[a] determination whether a prima facie case has been made ... is an evidentiary inquiry—it defines the quantum of proof [a] plaintiff must present to create a rebuttable presumption of discrimination." *Id.* at 789 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). This Court then held that, to survive a Rule 12(b)(6) motion to dismiss, it would be "...enough for [plaintiff] to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly*, 809 F.3d at 789. This Court also found that additional discovery could reveal elements supportive of her disparate treatment and retaliation claims. *Id.* at 791-2. Ultimately, this Court remanded the case back to the trial court to allow for fact discovery. *Id.* at 793.

If a complaint sets forth sufficient facts to render a claim plausible, then the case should be allowed to proceed to discovery. *See e.g. Stringer v. County of Bucks*, 141 F.4th 76, 89 (3d Cir. 2025) (citing *Schrob v. Catterson*, 948 F.2d 1402, 1421 (3d Cir. 1991) ("[s]o when the clearly established inquiry 'is not possible' at the pleading stage without a more developed factual record, a district court must reject qualified immunity as 'premature,' deny the motion to dismiss, and proceed with at least limited discovery."). Dr. Solano submits that the Amended Complaint pushes his claim that

the SRU administration fostered and perpetuated a hostile work environment that caused him deep mental and physical harm across the line to plausible. At this early stage, the District Court should have allowed the matter to proceed to discovery. *Connelly*, 809 F.3d at 789; *Stringer*, 141 F.4th at 89 (citing *Schrob*, 948 F.2d at 1421). The motion to dismiss should have been denied. This Court should remand this case back to the lower Court for further proceedings.

## VI. CONCLUSION

The Amended Complaint sets forth plausible claims against SRU and Ms. McCoy. However, using an unduly narrow definition of "adverse employment action," the District Court improperly dismissed the action. Moreover, the District Court erred when it concluded that there was no causal link between Dr. Solano's protected activity and the adverse employment action he experienced, namely the increased harassment and the impact from the department reorganization. Finally, the District Court incorrectly found that Ms. McCoy, her failure to act notwithstanding, was not liable for the injuries suffered by Dr. Solano. These determinations were in error. It is respectfully submitted that this Court should reverse the District Court and remand this case for conventional discovery and allow the claims to proceed rather than dismissing them at this early juncture.

LIEBER HAMMER HUBER PAUL &
HOFFMAN, P.C.

s/James B. Lieber
James B. Lieber
PA I.D. No. 21748
Jacob M. Simon
PA I.D. No. 202610
Thomas M. Huber
PA I.D. No. 83053
1722 Murray Ave., 2nd Fl.
Pittsburgh, PA 15217
(412) 687-2231 (tel.)
jlieber@lhhb-law.com
jsimon@lhhb-law.com
thuber@lhhb-law.com

Counsel for Appellant

## COMBINED CERTIFICATIONS

## CERTIFICATE OF ADMISSION-BAR MEMBERSHIP

The undersigned hereby certifies pursuant to Third Circuit Local Appellate Rule 46.1 that the attorneys, whose names appear on the foregoing Appellant's Brief, Jacob M. Simon, Thomas M. Huber, and I (James B. Lieber), are members in good standing of the bar of this Court.

## PRINTING SPECIFICATIONS AND WORD COUNT CERTIFICATION IN COMPLIANCE WITH F.R.A.P. 32(A)

The foregoing Brief submitted by Appellant Roger Solano was prepared on a computer using a Corel WordPerfect X9 word processing program and complies with the typeface-style-volume limitation because a proportionally spaced typeface was used, as follows:

| | |
|---|---|
| Name of typeface: | Times New Roman |
| Point size: | 14 |
| Line spacing: | Double |

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, certification of bar membership, certification of service, certificate of compliance and virus check, or any authorized addendum containing statutes, rules, regulations, etc., is 10,741 words.

**CERTIFICATION OF SERVICE UPON THE COURT AND COUNSEL**

I, James B. Lieber, Esq., an attorney duly admitted to the bar of this Court, hereby certify that on April 16, 2026 I have caused the Principal Brief of Appellant Roger Solano and Appendix Volumes I-II to be electronically filed. I also certify that on April 17, 2026 I have caused to be served with the following number of copies of the Brief of Appellant (with Appendix Volume I) and Appendix Volume II and to be sent via overnight mail (Federal Express) as indicated, in a properly addressed wrapper, to the following persons at their last known addresses noted below:

Patricia S. Dodszuweit, Clerk
Office of the Clerk
United States Court of Appeals For The Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

(Seven (7) hard copies of Appellant's Principal Brief and Volume I and four (4) hard copies of Joint Appendix Volume II)

Opposing Counsel

Jorden P. Colalella, Esq.
Anthony Thomas Kovalchick, Esq.
Office of the Pennsylvania Attorney General
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222

(One (1) hard copy of Appellant's Principal Brief and Volume I and one (1) hard copy of Joint Appendix Volume II)

## CERTIFICATION OF IDENTICAL COMPLIANCE PURSUANT TO L.A.R. 31.1

I, James B. Lieber, Esq., an attorney duly admitted to the bar of this Court, hereby certify that the text of the E-Brief filed on April 16, 2026, and the text of the hard copies of the principal brief and appendix filed by overnight mail via Federal Express on April 17, 2026, are identical.

## CERTIFICATION OF VIRUS CHECK PURSUANT TO L.A.R. 31.1

A virus check using Sentinel One was performed on the E-Brief and no viruses have been detected.

s/James B. Lieber
James B. Lieber, Esq.

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

Case No. 25-2796

---

ROGER SOLANO,

Appellant,

vs.

SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA and HOLLY MCCOY,

Appellees.

---

Appeal from the Order and Judgment of the U.S. District Court for the Western District of Pennsylvania entered on August 19, 2025 Granting Defendants'/Appellees' Motion to Dismiss

---

**VOLUME I OF JOINT APPENDIX (pages 1-26)**

---

LIEBER HAMMER HUBER PAUL & HOFFMAN, P.C.

James B. Lieber
Thomas M. Huber
Jacob M. Simon
1722 Murray Avenue, Second Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)
jlieber@lhhb-law.com
thuber@lhhb-law.com
jsimon@lhhb-law.com
Counsel for Appellant

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

VOLUME I

Notice of Appeal (ECF Doc. 31) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Order of Court Granting Defendants' Motion to Dismiss (ECF Doc. 29) . . . . . . . 3

Judgment Order (ECF Doc. 30) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Memorandum Opinion (ECF Doc. 28). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VOLUME II

District Court Docket . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

First Amended Complaint in Civil Action (ECF Doc. 11) . . . . . . . . . . . . . . . . . . 31

University Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF Doc. 15). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

Proposed Order (ECF Doc. 15-1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

University Defendants' Brief in Support of Motion to Dismiss (ECF Doc. 16). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF Doc. 22). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

Plaintiff's Response to University Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF Doc. 23) . . . . . . . . . . . . . . . . . . . . 111

University Defendants' Reply Brief in Support of Motion to Dismiss (ECF Doc. 24). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114

Plaintiff's Sur-Reply in Opposition to Defendants' Motion to Dismiss

(ECF Doc. 27). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROGER SOLANO, PH.D., | ) | Civil Action No. 24-1542 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA and HOLLY MCCOY, | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF APPEAL**

Notice is hereby given that Plaintiff Roger Solano in the above named case hereby appeals to the United States Court of Appeals for the Third Circuit from the Memorandum Opinion, Order, and Judgment entered on August 19, 2025 granting the Motion to Dismiss filed by Slippery Rock University of Pennsylvania and Holly McCoy.

Respectfully Submitted,

LIEBER HAMMER HUBER PAUL &
HOFFMAN, P.C.

s/James B. Lieber
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
jlieber@lhhb-law.com
thuber@lhhb-law.com
jsimon@lhhb-law.com

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall serve notice upon the following:

Jorden P. Colalella
Office of the Attorney General
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222

Counsel for Defendants

s/James B. Lieber
James B. Lieber

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER SOLANO, PhD,<br><br>*Plaintiff*,<br><br>v.<br><br>SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA *and* HOLLY MCCOY,<br><br>*Defendants*. | Civil Action No. 2:24-cv-1542<br><br>Hon. William S. Stickman IV |

**ORDER OF COURT**

AND NOW, this 19 day of August 2025, for the reasons set forth in the Memorandum Opinion filed this day, IT IS HEREBY ORDERED that Defendants Slippery Rock University of Pennsylvania and Holly McCoy's Motion to Dismiss Plaintiffs' Complaint (ECF No. 15) Pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED. Counts I through X of Plaintiff's complaint are dismissed with prejudice.

BY THE COURT:

William S. Stickman IV

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER SOLANO, PhD,<br>*Plaintiff*,<br>v.<br>SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA *and* HOLLY MCCOY,<br>*Defendants*. | Civil Action No. 2:24-cv-1542<br>Hon. William S. Stickman IV |

**JUDGMENT ORDER**

AND NOW, this 19 day of August 2025, pursuant to Federal Rule of Civil Procedure 58, IT IS HEREBY ORDERED that final judgment is entered in favor of Defendants Slippery Rock University of Pennsylvania and Holly McCoy and against Plaintiff Roger Solano, Ph.D.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER SOLANO, PhD,<br>*Plaintiff,*<br>v.<br>SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA *and* HOLLY MCCOY,<br>*Defendants.* | Civil Action No. 2:24-cv-1542<br>Hon. William S. Stickman IV |

**<u>MEMORANDUM OPINION</u>**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Roger Solano, Ph.D. ("Dr. Solano") brought an action against Defendants Slippery Rock University ("SRU") and Holly McCoy ("McCoy") (collectively "the University Defendants") seeking damages and alleging discrimination on the basis of national origin, sex, and sexual orientation under Title VII (42 U.S.C. § 2000e *et seq.*), Title IX (20 U.S.C. § 1681 *et seq.*), and the Pennsylvania Human Relations Act ("PHRA") (43 P.S. § 962 *et seq.*), retaliation under Title VII, Title IX, and the PHRA, and discrimination on the basis of disability under the Rehabilitation Act ("RA") (29 U.S.C. § 794 *et seq.*) and the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 *et seq.*). (ECF No. 11). The University Defendants filed a motion to dismiss Dr. Solano's first amended complaint. (ECF No. 15). For the following reasons, the motion will be granted.

## I. FACTUAL BACKGROUND

SRU is a state-owned higher education institution. (ECF No. 11, ¶ 2). McCoy is employed by SRU as the director of human resources. (*Id.* ¶¶ 3, 16). Dr. Solano is employed by

SRU as chair of the Department of Management and Marketing ("Management and Marketing Department.") (*Id.* ¶ 1); (ECF No. 15, ¶ 1). Dr. Solano was born in Venezuela, is Hispanic, and is fluent in both Spanish and English. (ECF No. 11, ¶¶ 18-19). He holds a Ph.D. in industrial engineering from the New Jersey Institute of Technology. (*Id.* ¶ 17). Dr. Solano is openly homosexual. (*Id.* ¶ 20). He asserts that he has been treated for generalized anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), and insomnia since 2020. (*Id.* ¶ 21).

Dr. Solano has worked at SRU since 2009, and he has served as the Management and Marketing Department chair since May 2019. (ECF No.11, ¶ 22). He alleges that Dr. Nicholls, a fellow professor in the Management and Marketing Department and former chair of the University Promotion Committee and Departmental Promotion Committee, was a key instigator in the campaign of hostility and harassment directed towards him that was further enabled by SRU's administration. (*Id.* ¶¶ 26, 27, 34). Dr. Solano avers that since he became chair of his department in 2019, Dr. Nicholls criticized nearly every decision he made, including decisions related to trivial matters. (*Id.* ¶ 36). He states that although this criticism gave rise to a "hostile work environment," SRU administrators failed to take any steps to ease these mounting tensions within the Management and Marketing Department. (*Id.* ¶ 38). Further, it is alleged that Dr. Nicholls' complaints against Dr. Solano alluded to his race/national origin, accused him of giving preferential treatment to younger, male faculty with respect to scheduling, accused him of fostering a lack of honesty and transparency in their department and blocking a curriculum change, amongst other things. (*Id.* ¶¶ 40, 41, 44, 61). SRU conducted an investigation and concluded that Dr. Solano's actions, specified in Dr. Nicholls' complaints, did not violate their Harassment and Discrimination Policy. (*Id.* ¶ 79).

Dr. Solano also recounts that he was one of two candidates in the 2024 election for chair of the Management and Marketing Department, and that SRU cancelled the election based on claims that the ballots were not secret and based, in part, by Dr. Nicholls' influence. (ECF No. 11, ¶¶ 100-103). Ultimately, Dr. Solano was elected chair of the Management and Marketing Department. (*Id.* ¶ 109). Dr. Solano believes that Dr. Nicholls' complaints and harassment towards him, along with SRU administration's entertainment of her accusations, constituted sexist and homophobic animus toward him. (*Id.* ¶ 93). As a result of such treatment, Dr. Solano states that he suffers from severe depression, insomnia, anxiety, fatigue, and lack of energy, and that he is considering stepping down as department chair to preserve his health. (*Id.* ¶¶ 120, 121, 130). Lastly, Dr. Solano alleges that his disabilities, including ADHD and other mental health issues, were not accommodated by SRU, creating a hostile work environment, and that McCoy knew this yet did nothing to remedy the situation. (*Id.* ¶¶ 129, 137, 139).

Dr. Solano filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") in February 2024, docketed at 533-2024-01080, raising claims for retaliation and discrimination on the basis of sex, sexual orientation, national origin, and disability. (ECF No. 11, ¶¶ 6-7). On August 20, 2024, the EEOC issued a "Right to Sue" notice. (*Id.* ¶ 9). Then on October 18, 2024, Dr. Solano filed a second EEOC complaint, docketed at 533-2025-00283, alleging sex, sexual orientation, national origin, disability discrimination, retaliation, and hostile work environment. (*Id.* ¶¶ 11-12). Both EEOC complaints were cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* ¶¶ 8, 13). The PHRC indicated, per a letter dated October 21, 2024, that it would be closing its investigation into Dr. Solano's complaint, making his claims ripe for adjudication under Pennsylvania law. (*Id.* ¶ 10). Dr. Nicholls also filed an administrative complaint with the EEOC against Dr. Solano and SRU

in October 2022, specifically alleging that "Dr. Solano gave preferential treatment to younger, male faculty with respect to scheduling." (*Id.* ¶ 60). Dr. Solano contends that this was "a thinly veiled anti-gay attack." (*Id.* ¶ 61). Dr. Nicholls' complaint was ultimately dismissed by the EEOC when they issued a "Right to Sue" notice. (*Id.* ¶ 67).

Dr. Solano filed his initial complaint on November 11, 2024. (ECF No. 1). The University Defendants filed a motion to dismiss this initial complaint. (ECF No. 8). In response, Dr. Solano filed an amended complaint on March 26, 2025, which is the operative complaint at issue. (ECF No. 11). The University Defendants then filed a renewed motion to dismiss the amended complaint. (ECF No. 15).

## II. STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## III. ANALYSIS

### A. Dr. Solano's Claims Arising Under Title VII and Title IX

#### 1. Count I - Discrimination on the basis of national origin under Title VII

Dr. Solano brings a discrimination claim on the basis of national origin in violation of Title VII at Count I. (ECF No. 11, p. 15). He alleges that "he was subjected to a hostile work environment in the form of increased criticism and scrutiny," and that "similarly situated SRU faculty members who were not Hispanic or of Venezuelan national origin were not subjected to similar adverse employment action on account of his race/national origin." (*Id.* ¶¶ 144, 154). In response, the University Defendants argue that the facts alleged do not bear an inference of intentional discrimination, and that none of Dr. Nicholls' conduct or comments referenced Dr. Solano's national origin. (ECF No. 16, pp. 5, 8).

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII prohibits discrimination with respect to employment decisions that have direct economic consequences, such as termination, demotion, and pay cuts. *Vance v.*

*Ball State Univ.*, 570 U.S. 421, 426 (2013). Additionally, Title VII prohibits the creation of a hostile work environment. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986). The United States Supreme Court held that for a plaintiff to establish a hostile work environment claim, he or she must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered. *See, e.g.*, *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (stating that "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.") (internal citations omitted). Specifically, the United States Court of Appeals for the Third Circuit has held that to succeed on a hostile work environment claim, a plaintiff must establish that "1) the employee suffered intentional discrimination because of his/her sex/membership in a protected class, 2) the discrimination was pervasive and regular, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability. The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (internal citations omitted); *Woodard v. PHB Die Casting*, 255 F. App'x 608, 609 (3d Cir. 2007). A plaintiff must be able to show that the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Perry v. Harvey*, 332 F. App'x 728, 730-31 (3d Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

As to the first element of a hostile work environment claim, Dr. Solano's averments in his amended complaint do not establish that he endured true, intentional discrimination due to his Hispanic heritage. To support this claim, he refers to an isolated incident in 2019 when Dr. Nicholls complained about the wording of an email he sent, thereby "alluding to" his efficiency with the English language. (ECF No. 11, ¶ 41). This is the only national origin-specific incident Dr. Solano alleges to support his discrimination claim. The Court finds that while this may have been an intentional criticism by Dr. Nicholls, there is not enough substance within the amended complaint to plausibly infer that this constituted intentional discrimination based on Dr. Solano's national origin.

Further, even if the Court found this to be intentional discrimination, it does not find the alleged conduct to be pervasive or regular because Dr. Solano alleges no incidents beyond the one discussed above that relate to his national origin. One complaint, containing comments that do not specifically mention Dr. Solano's race or ethnicity, but that he subjectively believes "alluded" to such, is not enough to satisfy the second element.

The University Defendants also point out that although Dr. Solano claims he has been detrimentally affected by the above, he is unable to point to a negative impact upon his employment because he, ultimately, was promoted to chair of the Management and Marketing Department. (ECF No. 16, pp. 10, 14); (ECF No. 11, ¶¶ 109-115). Thus, Dr. Solano also fails to meet the third and fourth elements.

As Dr. Solano has failed to plead the existence of a hostile work environment based on his national origin[1], Count I of the amended complaint will be dismissed.

---

[1] *Respondeat superior* liability was also not adequately pled. As the University Defendants point out, liability under this theory exists depending on whether the perpetrator/harasser is the victim's supervisor or a co-worker. Here, the amended complaint merely alleges that Dr.

2. <u>Count II – Discrimination on the basis of sex/sexual orientation under Title VII</u>

Dr. Solano brings a discrimination claim on the basis of sex/sexual orientation in violation of Title VII at Count II. (ECF No. 11, p. 16). He alleges that he is an openly homosexual man and that "attacks on [him] were specifically homophobic in that he was accused of favoring young, male faculty for favorable assignments." (*Id.* ¶ 161). He further alleges that similarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action. (*Id.* ¶ 170). In response, the University Defendants argue that the facts alleged do not bear an inference of intentional discrimination, and that none of Dr. Nicholls' conduct or comments infer animus based on his sexual orientation. (ECF No. 16, p. 7).

Title VII sex discrimination claims are controlled by the *McDonnell-Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Tourtellotte v. Eli Lilly & Co.*, 636 F.App'x 831 (3d Cir. 2016). To establish a prima facie case for discrimination under Title VII and the *McDonnell Douglas* burden-shifting framework, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position he sought to attain or retain, (3) he suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Once a plaintiff makes out a prima facie case of sex discrimination, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the employer does so, the

---

Nicholls "taught in the Management and Marketing department." (ECF No. 11, ¶ 28). There is no allegation that Dr. Nicholls was Dr. Solano's supervisor. Where the harassing employee is a co-worker, the employer is only liable if it was negligent in controlling working conditions. *Vance v. Ball State Univ.*, 570 U.S. 421, 423 (2013). Dr. Solano raises only threadbare allegations of administrative involvement, and the Court finds that he does not plead enough facts to imply that SRU handled Dr. Nicholls' complaints with negligence.

inference of discrimination drops and the burden shifts back to the plaintiff to show that the employer's proffered reason is merely pretext for intentional discrimination. *See id.* at 507–08. To survive a motion to dismiss on a Title VII difference in treatment claim, a plaintiff "need only set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that [the plaintiff] was a member of a protected class and that she suffered an adverse employment action." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016)). "[D]etailed pleading is not generally required" but the plausibility standard requires that a pleading show "'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (quoting *Iqbal*, 556 U.S. at 678).

Here, Dr. Solano satisfies the first element of his prima facie case because he is homosexual, and sexual orientation falls within the umbrella of "sex" for purposes of Title VII. Thus, he is a member of a protected class. He also satisfies the second element because he alleges that he holds a Ph.D. in industrial engineering, is fluent in English, has worked at SRU since 2009, and was thus qualified both for employment at SRU and promotion to chair of his department. (ECF No. 11, ¶¶ 17, 19, 22). He further states that he was eventually elected chair, in part because the faculty favored his "strategic vision" for the department. (*Id.* ¶ 29).

However, Dr. Solano fails to plead sufficient facts that meet the third and fourth elements of a prima facie case. The University Defendants highlight that he merely points to "his general frustration with her [Dr. Nicholls] complaints and a cancelled department chair vote" to demonstrate that he was subjected to an adverse employment action. (ECF No. 16, p. 9). But, as already mentioned herein, Dr. Solano became the department chair, and he fails to plead facts showing that he was subjected to an adverse employment action. He attempts to remedy this defect by accusing SRU of reorganizing his department by transferring the sports management

program to another department, causing a decrease in responsibilities, department faculty, and, ultimately, his pay. (*Id.* at 9); (ECF No. 11, ¶¶ 112, 165-66). However, the Court sees this as nothing more than an administrative/department transitional decision made in SRU's regular course of business. Further, the fourth element requires the adverse employment action to have occurred under the circumstances that could give rise to an inference of intentional discrimination. Dr. Solano failed to plead facts that draw a direct connection between the alleged adverse employment action and Dr. Nicholls' alleged harassment or comments and, thus, the Court cannot plausibly infer intentional discrimination.

A plaintiff can make out a prima facie case of sex discrimination by pointing to a similarly-situated individual who is outside the plaintiff's protected class, who engaged in the same conduct as the plaintiff, but whom the defendant treated more favorably. *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998). Where a plaintiff claims to have suffered disparate treatment but does not refer to any similarly-situated individuals and their similar protected conduct, the plaintiff's allegations are insufficient to state a claim under Rule 12(b)(6). *See e.g.*, *Hobson v. St. Luke's Hosp. and Health Network*, 735 F.Supp.2d 206, 213 (E.D. Pa. 2010). Here, the amended complaint does not identify any other similarly situated employees, nor does it reference facts to support Dr. Solano's averment that SRU treated him differently from similarly situated female and/or heterosexual faculty members. Dr. Solano alleges that he was subjected to "adverse employment action on the basis of his sex and sexual orientation" and that "similarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action." (ECF No. 11, ¶¶ 170-71). Nevertheless, *Twombly* is clear that such a formulaic recitation of the elements of a cause of action is insufficient to state a plausible claim. *Twombly*, 550 U.S. at 555; *see also Fisher v.*

*Catholic Soc. Servs.*, 2019 WL 3731688, (E.D. Pa. Aug. 8, 2019) (dismissing plaintiff's discrimination claims where plaintiff failed to plead direct evidence of different treatment based on protected class and where plaintiff failed to identify a similarly-situated comparator.). Dr. Solano's conclusory allegation does not offer any additional support as to the working conditions or complaints against other female or heterosexual faculty members. An allegation of this nature, that tenders threadbare assertions devoid of further factual enhancement, does not have sufficient facial plausibility to allow for a reasonable inference that the University Defendants are liable for the alleged discrimination. Thus, the Court cannot draw a reasonable inference that the University Defendants are liable for the alleged difference in treatment based on sex/sexual orientation. The Court will dismiss Count II of the amended complaint.

3. <u>Count IV – Discrimination on the basis of sex/sexual orientation under Title IX</u>

Dr. Solano brings a discrimination claim on the basis of sex/sexual orientation in violation of Title IX at Count IV. (ECF No. 11, p. 19). He states that SRU receives funding from the federal government as a state-owned institution of post-secondary education, and that Title IX prohibits educational institutions that receive federal funding from engaging in discrimination on the basis of sex. (*Id.* ¶¶ 189-190). He alleges that he is an openly homosexual man and that "attacks on [him] were specifically homophobic in that he was accused of favoring young, male faculty for favorable assignments." (*Id.* ¶¶ 191, 194). He further alleges that similarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action. (*Id.* ¶ 203). In response, the University Defendants argue that the facts alleged do not bear an inference of intentional discrimination and that none of Dr. Nicholls' conduct or comments infer animus based on his sexual orientation. (ECF No. 16, pp. 5-11 ).

To establish a Title IX claim for sex discrimination, the plaintiff must plead that (1) he or she was subjected to discrimination in an educational program, (2) that the program receives federal assistance, and (3) that the discrimination was on the basis of sex. *A.H. v. Minersville Area Sch. Dist.*, 290 F. Supp. 3d 321, 326 (M.D. Pa. 2017) (quoting *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 295 (W.D. Pa. 2017)).

The University Defendants concede the second element relating to federal funding and focus only on the remaining elements. (ECF No. 16, p. 5, fn. 1). The Court's analysis, following this concession, is the same as that of a Title VII claim. (*Id.*) Dr. Solano's failure to plead facts directly connecting the alleged adverse employment action and harassment or a case involving a similarly-situated individual does not infer intentional discrimination. Thus, the Court incorporates the prior analysis and holding as to the Title VII discrimination case.

It additionally notes that Dr. Solano cites cases in his argument that, ultimately, support the University Defendants' dismissal argument. He references two cases in which motions to dismiss were denied where "false rumors that a female subordinate was having an affair with a male superior was sufficient to support a sex discrimination claim" and "the insinuation that homosexual men are promiscuous could support a finding that a plaintiff was subjected to a discriminatory or a hostile work environment." (ECF No. 22, p. 6). The allegation against Dr. Solano, that he favored ". . . younger, male faculty with respect to scheduling . . ." is vastly different than the allegations contained within the cases he cites. (*Id.*). An allegation of "favoritism" with nothing more is not the same thing as spreading rumors of a workplace affair or the specific insinuation that male homosexuals are promiscuous. More specifically, in the *Erdmann* case which Dr. Solano cites, the supervisor characterized the plaintiff employee's homosexuality as sinful and urged the employee to adopt her [the supervisor's] religion, and the

court denied summary judgment in the plaintiff's favor. *Erdmann v. Tranquility, Inc.*, 155 F. Supp. 2d 1152, 1156 (N.D. Cal. 2001). This type of characterization is far from what occurred in Dr. Solano's case. There are not enough facts alleged to push these alleged accusations against Dr. Solano into the same category of cases upon which he relies. Thus, the Court will dismiss Count IV of the amended complaint for failure to state a claim.[2]

---

[2] Dr. Solano raises a "cat's paw" theory in conjunction with his national origin and sexual orientation discrimination claims but does not allege satisfactory facts. "Today the term 'cat's-paw' refers to 'one used by another to accomplish his purposes.' ... In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decision-making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *E.E.O.C. v. Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006). Under the theory, an "employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011). As to Eubanks' cat's paw theory of liability, an employer may "be liable for employment discrimination if the source of illegal animus was not the final employment decision-maker but rather another employee whose animus proximately caused the adverse employment action at issue in the case." *Mason v. Se. Pa. Transp. Auth.*, 134 F. Supp. 3d 868, 874 (E.D. Pa. 2015) (citing *McKenna v. City of Phila.*, 649 F.3d 171, 178 (3d Cir. 2011)); see also *Carter v. Midway Slots & Simulcast*, 894 F. Supp. 2d 529, 543 (D. Del. 2012), aff'd, 511 F. App'x 125 (3d Cir. 2013). Eubanks had to establish (1) a genuine issue of material fact concerning the bias of the subordinate and (2) a genuine issue of material fact "as to whether the proffered reason for the employment action is pretextual, which in a [cat's paw] claim requires [Eubanks] to demonstrate a causal relationship between the subordinate's actions and the employment decision." *Mason*, 134 F. Supp. 3d at 874 (quoting *E.E.O.C*, 450 F.3d at 488.). To establish a causal relationship between the actions of a subordinate and the employment decision, a plaintiff must show proximate cause—" 'some direct relation between the injury asserted and the injurious conduct alleged' and excludes links that are 'remote, purely contingent, or indirect.' " *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 330 (3d Cir. 2015) (quoting *Staub*, 562 U.S. at 419). Dr. Solano argues that, as a voting member of the Management and Marketing Department, she has input and influence over hiring and personnel decisions, and that she has close relationships with SRU administrators. (ECF No. 22, p. 9); (ECF No. 11, ¶¶ 31, 32). He states that due to these relationships and status, SRU itself can be held liable for Dr. Nicholls' alleged discriminatory behavior. It has been established herein that Dr. Nicholls is not Dr. Solano's supervisor. However, the University Defendants argue that, per the above, Dr. Solano must be able to establish a causal link between the actions of a subordinate/non-supervisor and the employment decision. (ECF No. 24, p. 4). The Court incorporates its prior reasoning herein that no adverse employment action occurred, but even if it were to find the opposite, Dr. Solano's factual averments fall short of establishing any causal link between Dr. Nicholls' behavior and the opinions/decisions of SRU's administration. Dr. Solano alleges no facts

4. Count III: Retaliation under Title VII

Dr. Solano brings a retaliation claim in violation of Title VII at Count III. (ECF No. 11, p. 18). He alleges that he was subjected to homophobic harassment and that following his complaints, the election for department chair was nullified, the number of faculty members within the department was reduced, his income decreased, and that SRU administrators worked in furtherance of Dr. Nicholls' ongoing harassment campaign aimed at harming his career. (*Id.* ¶¶ 174, 179, 180, 181, 183). In response, the University Defendants argue that Dr. Solano's claim fails because he is unable to plead facts establishing the second and third elements of a prima facie retaliation claim. (ECF No. 16, p. 15).

To establish a prima facie case for retaliation under Title VII, a plaintiff must prove that (1) he is engaged in activity protected by Title VII, (2) the employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citing *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). The Supreme Court of the United States has found that the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, and accordingly, "that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63-64 (2006). Specifically, judicial standards for sexual harassment must filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* at 68

---

showing that Dr. Nicholls' "close relationships" with members of the administration equate to the administration sharing in or encouraging her alleged animus.

(citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). The Supreme Court reasons that this standard is in place due to the importance of separating significant harms from trivial harms. *Id.* Further, to establish a causal connection, a plaintiff must show a connection between his or her opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Moore*, 461 F.3d at 342.

It is established, and the University Defendants concede, that Dr. Solano engaged in protected activity when he complained of Dr. Nicholls' allegedly homophobic harassment to the SRU administration, satisfying the first element. As to the second element, the Court has already held that Dr. Solano fails to plead that SRU took an adverse employment action. Dr. Solano argues that "the hostile work environment [he] has been experiencing is itself an adverse employment action." (ECF No. 22, p. 11). Not only is this statement conclusory, but the Court has found that he failed to establish the existence of a hostile work environment.

As to the third element, even if the Court were to hold that an adverse employment action existed, Dr. Solano is unable to sufficiently plead causation. He attempts to argue that shortly after his complaints about Dr. Nicholls' disconcerting behavior, the hostility towards him worsened, establishing causation, and that from the evidence gleaned from the record as a whole, causation can be inferred. (*Id.* at 14-15). Dr. Solano tries to support this with the claim that he attempted to raise concerns regarding the ongoing harassment that he has been experiencing with SRU Provost Michael Zeig, but was cautioned against doing so by SRU administrators. (ECF No. 11, ¶ 97).

The University Defendants counter with the following timeline of events: Dr. Nicholls filed her EEOC complaints against Dr. Solano and SRU in October 2022, then Dr. Solano found

out in October 2023 that the internal investigation had been terminated with a finding that he did not violate SRU's Harassment and Discrimination policy, and that four months later, SRU cancelled the department chair election in February 2024. (ECF No. 11, ¶¶ 60, 79, 101). And Dr. Solano alleges that he complained to the SRU HR department about Dr. Nicholls' comments as early as 2019, right after he mentions one of her complaints occurred. (Id. ¶¶ 41-42). While there is no bright-line rule for what amount of time demonstrates unusually suggestive behavior, "a span of days, and not months, satisfies the requirement because of the 'unusually suggestive' timing." *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 669–70 (E.D. Pa. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000)). For an unusually suggestive temporal proximity to have occurred between Dr. Solano's protected activity and the alleged retaliatory action, the election cancellation should have occurred much closer in time to Dr. Nicholls' alleged behavior and Dr. Solano's subsequent complaints. However, the election cancellation did not occur until 2024, well over two years after Dr. Solano first complained to the university. The Court finds that no such causal connection exists, nor can one be inferred from the amended complaint's allegations.

Count III will be dismissed.

5. Count V: Retaliation under Title IX

Dr. Solano also brings a retaliation claim in violation of Title IX at Count V, alleging the same theory of relief as that contained within Count III. (ECF No. 11, p. 21). The Title VII retaliation framework is used to analyze claims under Title IX. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992) (relying on *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986), a Title VII case, in determining discrimination under Title IX). To state a claim for retaliation under Title IX, the plaintiff must plausibly allege that he "engaged in activity

protected by Title IX," that he "suffered an adverse action," and that "there was a causal connection between the two." *See, e.g., Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) (cleaned up); *Moore v. City of Phila.*, 461 F.3d 331, 340–42 (3d Cir. 2006). The analysis must include a federally funded educational institution that engaged in an adverse employment action.

As discussed above, Dr. Solano failed to meet the requisite elements under the Title VII retaliation framework for a prima facie case. The Court incorporates that analysis and finds that he also fails to plead a prima facie case under the Title IX retaliation framework. The Court will dismiss Count V of the amended complaint.

**B. Dr. Solano's Claims Arising Under the RA and the ADA**

Dr. Solano brings two disability discrimination claims in violation of the RA and the ADA at Counts VI and VII, respectively. (ECF No. 11, pp. 23-26). He alleges that he suffers from and has been treated for severe anxiety and depression, and that his mental condition has led to the impairment of basic bodily functions – "namely thinking." (*Id.* ¶¶ 228, 231). He further alleges that SRU administrators were fully aware of the ongoing harassment directed toward him, that this adverse treatment exacerbated his mental health problems, and that similarly situated non-disabled faculty members were not subjected to similar treatment. (*Id.* ¶¶ 235, 242, 244). In response, the University Defendants argue that Dr. Solano's claims fail because he is unable to plead facts establishing a true disability or that he suffered adverse employment action. (ECF No. 16, p. 16).

A plaintiff's claims under both the RA and the ADA may be analyzed together because the substantive standards for determining liability are the same. *McDonald v. Com. Of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995). For either claim, a plaintiff must

plausibly allege that (1) he is a disabled person, (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, and (3) he suffered an otherwise adverse employment decision as a result of discrimination. *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (*see also Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). The RA and ADA provide that an individual is disabled if he (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment. *Laguna*, 616 F. Supp. 3d at 468 (citing 42 U.S.C § 12102(1)). "A request for a reasonable accommodation is a protected activity under the ADA." *Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 448 (W.D. Pa. 2009).

The administrative regulations concerning the ADA define mental impairment as "any mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities," and depressive disorders presumably fall within the emotional illness category. 29 C.F.R § 1630.2(h)(2) (*see also Gaul*, 134 F.3d at 579-80 (3d Cir. 1998). The ADA requires a plaintiff-specific analysis as to whether an individual's specific disorder impairs his life in a manner which renders him handicapped or disabled under the acts. *Gaul v. AT & T, Inc.*, 955 F. Supp. 346, 350 (D.N.J. 1997), aff'd sub nom. *Gaul v. Lucent Techs., Inc.,* 134 F.3d 576 (3d Cir. 1998). "The inquiry is, of necessity, an individualized one – whether the particular impairment constitutes for the particular person a significant barrier to employment." *Id.* (citing *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir. 1986)).

Turning first to the analysis of whether Dr. Solano is a disabled person, he clearly meets this definition. "Thinking" is considered a major life activity within the meaning of the ADA.

*Wilkie v. Luzerne County*, 207 F. Supp. 3d 433, 438 (M.D. Pa. 2016); *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir. 1999). He highlights that in *Wilkie* specifically, the court held that a reasonable jury could find that the plaintiff's anxiety substantially limited the major life activity of thinking, placing the claim within the ADA's authority. *Wilkie*, 207 F. Supp. at 437. Federal regulations provide that major life activities include, but are not limited to, caring for oneself . . . "concentrating, thinking, communicating, and working." *Id.* (citing 42 U.S.C. § 12102(2)(A)). Dr. Solano pleads that he has been treated for severe depression and anxiety, that he has been diagnosed with ADHD, and that his physicians have prescribed him powerful anti-depressant medications, clearly indicating that he suffers from these conditions based upon their professional opinions. (ECF No. 11, ¶¶ 125, 228-230, 248-250). Dr. Solano alleges that his anxiety and depression cause him insomnia, poor appetite, and fatigue, and that his condition has led to the impairment of basic bodily functions, specifically, "thinking." (ECF No. 11, ¶¶ 229, 231). He also pleads that he is considering stepping down as department chair to preserve his health. (*Id.* ¶ 130). Dr. Solano need only meet one of the three prongs to qualify as "disabled," and with the facts averred he meets the second and third prongs. The Court finds that Dr. Solano has sufficiently pled that he is disabled and, thus, satisfies the first element.

As to the second element, the amended complaint does not provide sufficient facts to support Dr. Solano's conclusory allegation that SRU failed to accommodate his disability. Dr. Solano does not allege that he specifically requested a reasonable accommodation. The amended complaint contains no facts regarding the manner in which he reported his disability or requested accommodations, what Dr. Solano allegedly reported and requested, to whom he made his alleged reports and requests, or when he made them. All that is alleged is that "SRU

administrators are aware of Dr. Solano's mental health problems and ADHD diagnosis," and that "SRU has not taken any steps to accommodate Dr. Solano's disability." (ECF No. 11, ¶¶ 126, 129). Regardless of this, Dr. Solano has adequately pled that he was qualified to perform the essential functions of his job. The Court held earlier herein, "Dr. Solano was qualified for his position at SRU" made clear via his education, credentials, and experience. (ECF No. 11, ¶ 252).

As to the third element, the Court is unable to hold, as already discussed herein, that Dr. Solano was subjected to an adverse employment action.

Counts VI and VII will be dismissed.

### C. <u>Dr. Solano's Claims Arising Under the PHRA</u>

Dr. Solano brings two discrimination claims, at Count VIII and Count IX, and one retaliation claim at Count X in violation of the PHRA against McCoy. (ECF No. 11, pp. 23-26). He alleges the same facts for these claims that he did for Counts I, II, and III, and more specifically, he alleges that as a supervisory employee, McCoy aided and abetted the discriminatory actions against Dr. Solano. (*Id.* at ¶¶ 282, 300, 316). In response, the University Defendants argue that Dr. Solano's claims against McCoy fail because they are barred by sovereign immunity. (ECF No. 16, p. 18).

To timely file a suit under the PHRA, a plaintiff must file a claim with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the alleged act. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir.1997). To prove disparate treatment or discrimination under the PHRA, a plaintiff must show that (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subject to an adverse employment action despite being qualified, and (4) the action occurred under circumstances raising an inference of unlawful discrimination. *Wilson v. Columbia Gas of Pennsylvania*, 676 F. Supp. 3d 424, 435 (W.D. Pa.

2023) (see also *Rosencrans v. Quixote Enters*., 755 F. App'x 139, 141 (3d Cir. 2018)). Additionally, to prove retaliation under the PHRA, the plaintiff must meet the same three elements required for retaliation under Title VII. *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 543 (W.D. Pa. 2010) (citing *Slagle v. County of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006)).

The University Defendants argue that sovereign immunity precludes each of Dr. Solano's PHRA claims, filed against McCoy, personally. The PHRA imposes liability upon supervisory employees who engage in discriminatory actions. 43 P.S. § 955(e) (2025). Per Pennsylvania's sovereign immunity statute, a Commonwealth employee acting within the scope of his or her employment or duties is protected by sovereign immunity from the imposition of liability for intentional tort claims. *Holt v. Nw. Pennsylvania Training P'ship Consortium, Inc*., 694 A.2d 1134, 1140 (Pa. Commw. Ct. 1997). A "Commonwealth party," which Pennsylvania's Sovereign Immunity Act shields from civil liability, is defined broadly enough to include "any employee" of a "Commonwealth agency" but "only with respect to an act within the scope of his or her office of employment." *Mitchell v. Miller*, 884 F. Supp. 2d 334, 380 (W.D. Pa. 2012) (citing 42 Pa. C.S.A. § 8501). Discriminatory and retaliatory acts committed within the employment context are not among the categories of conduct which the Sovereign Immunity Act has expressly waived the immunity from liability. *Id.* However, Eleventh Amendment sovereign immunity does not apply to officials who are sued in their individual capacities. *Id.* at 381 (citing *Hafer v. Melo*, 502 U.S. 21, 29-31 (1991)).

Sovereign immunity does not apply to Dr. Solano's three PHRA claims because he clearly states that "this claim is being brought against Defendant McCoy in her personal capacity." (ECF No. 11, ¶¶ 268, 285, 303). The merits of these claims must be considered.

Dr. Solano cross-filed each of his complaints with the PHRC, indicating that he exhausted the appliable administrative remedy. In terms of the facts alleged as to McCoy, she has oversight over the internal grievance process, she was or should have been aware of the fact that Dr. Nicholls' complaints were baseless yet still used them as a basis to conduct frivolous investigations into Dr. Solano's conduct, she failed to protect Dr. Solano from further harassment and served to facilitate his continued harassment, and that she knew a hostile work environment existed yet did nothing to curtail it. (ECF No. 11, ¶¶ 16, 96, 127, 128, 137).

As to Count VIII and Count IX, the factual averments do not change the analysis regarding discrimination on the basis of national origin or sex/sexual orientation. Dr. Solano's accusations against McCoy are threadbare and conclusory, at best. He neglects to plead specific facts supporting how she "served to facilitate the continued harassment" – leaving the Court to make that inference in his favor, which the Court is not inclined to do given his deficient pleading. As to Count X, the Court draws the exact same conclusion. Dr. Solano failed to meet the requisite elements proving a retaliation claim under Title VII, and with no change to the analysis for a PHRA retaliation claim, the Court finds that Dr. Solano does not meet his burden. The Court will dismiss Counts VIII, IX, and X.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss. Orders of Court will follow.

Dated: 8/19/25

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

## CERTIFICATION OF SERVICE UPON THE COURT AND COUNSEL

I, James B. Lieber, Esq., an attorney duly admitted to the bar of this Court, hereby certify that on April 16, 2026 I have caused the Principal Brief of Appellant Roger Solano and Appendix Volumes I-II to be electronically filed. I also certify that on April 17, 2026 I have caused to be served with the following number of copies of the Brief of Appellant (with Appendix Volume I) and Appendix Volume II to be sent via overnight mail (Federal Express) as indicated, in a properly addressed wrapper, to the following persons at their last known addresses noted below:

Patricia S. Dodszuweit, Clerk
Office of the Clerk
United States Court of Appeals For The Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

(Seven (7) hard copies of Appellant's Principal Brief and Joint Appendix Volume I and four (4) hard copies of Joint Appendix Volume II)

Opposing Counsel

Jorden P. Colalella, Esq.
Anthony Thomas Kovalchick, Esq.
Office of the Pennsylvania Attorney General
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222

(One (1) hard copy of Appellant's Principal Brief and Joint Appendix Volume I and one (1) hard copy of Joint Appendix Volume II)

s/James B. Lieber
James B. Lieber