IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

**No. 25-2796**

**ROGER SOLANO, PhD,**
**Appellant,**

**v.**

**SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA; HOLLY MCCOY,**
**Appellees.**

# BRIEF FOR APPELLEES

APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ENTERED ON AUGUST 19, 2025

DAVID W. SUNDAY, JR.
*Attorney General*

Office of Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222
Phone: (412) 565-2543

BY: ANTHONY T. KOVALCHICK
*Deputy Attorney General*

DANIEL B. MULLEN
*Chief Deputy Attorney General*
*Chief, Appellate Litigation Section*

DATE: May 14, 2026

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

STATEMENT OF JURISDICTION........ 1

STATEMENT OF ISSUES ........ 2

STATEMENT OF THE CASE........ 3

STATEMENT OF RELATED CASES ........ 10

SUMMARY OF ARGUMENT ........ 11

ARGUMENT ........ 14

I. THE AMENDED COMPLAINT DOES NOT STATE ANY HOSTILE WORK ENVIRONMENT CLAIMS........ 15

II. THE AMENDED COMPLAINT DOES NOT STATE ANY DISCRIMINATION CLAIMS BASED ON DISCRETE ACTS........ 20

III. THE AMENDED COMPLAINT DOES NOT STATE ANY RETALIATION CLAIMS... 27

IV. THE ELEVENTH AMENDMENT BARS DR. SOLANO'S ADA CLAIMS........ 31

V. THE AMENDED COMPLAINT DOES NOT STATE ANY FAILURE TO ACCOMMODATE CLAIMS........ 33

VI. THE AMENDED COMPLAINT DOES NOT STATE ANY PHRA CLAIMS AGAINST MCCOY........ 37

CONCLUSION ........ 42

CERTIFICATE OF COUNSEL ........ 43

CERTIFICATE OF SERVICE ........ 44

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) ....................30

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006) ..............................................15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..........................................................25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-563, 564, 570 (2007) .............24

*Benn v. First Judicial District of Pa.*, 426 F.3d 233, 238-241 (3d Cir. 2005) ........32

*Board of Trustees v. Garrett*, 531 U.S. 356, 360-374 (2001).............................2, 32

*Bostock v. Clayton County*, 590 U.S. 644, 683 (2020)...........................................14

*Bowers v. National Collegiate Athletic Association*, 475 F.3d 524, 551 (3d Cir. 2007) ...........................................................................................................32

*Bradley v. West Chester University*, 880 F.3d 643, 660 (3d Cir. 2018)..................31

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761-762 (1998).....................26

*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 63 (2006)...28

*Capps v. Mondelez Global, LLC*, 847 F.3d 144, 156-157 (3d Cir. 2017)...............37

*Carvalho-Grevious v. Delaware State University*, 851 F.3d 249, 261-262 (3d Cir. 2017) ...........................................................................................................17

*Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017).................................16

*CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452-453 (2008)..........................20

*City of Philadelphia v. Pa. Human Relations Commission*, 684 A.2d 204, 207-208 (Pa. Cmwlth. 1996) ....................38

*Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010) ....................35

*Com. of Pa., Pa. Human Relations Commission v. Transit Casualty Insurance Co.*, 387 A.2d 58, 63 (Pa. 1978) ....................39

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ....................24

*Conneen v. MBNA America Bank, N.A.*, 334 F.3d 318, 329-331 (3d Cir. 2003) ....36

*Connelly v. Lane Construction Corp.*, 809 F.3d 780, 789-790 (3d Cir. 2016) .......19

*Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271, 277-280 (2009) ....................17

*Crosbie v. Highmark Inc.*, 47 F.4th 140, 145-146 (3d Cir. 2022) ....................27

*Curay-Cramer v. Ursuline Academy of Wilmington*, 450 F.3d 130, 137 (3d Cir. 2006) ....................29

*Daniels v. School District of Philadelphia*, 776 F.3d 181, 196-197 (3d Cir. 2015)30

*De Piero v. Pa. State University*, 769 F.Supp.3d 329, 356, n. 9 (E.D. Pa. 2025) ...39

*Dici v. Com. of Pa.*, 91 F.3d 542, 552-553 (3d Cir. 1996) ....................40

*Doe v. Mercy Catholic Medical Center*, 850 F.3d 545, 563-566 (3d Cir. 2017) ....15

*Durham v. Kelley*, 82 F.4th 217, 288 (3d Cir. 2023) ....................32

*Espinoza v. Farah Manufacturing Co., Inc.*, 414 U.S. 86, 88 (1973) ....................14

*Ex parte Young*, 209 U.S. 123, 159-161 (1908) ....................32

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)....................................20

*Fitzpatrick v. Bitzer*, 427 U.S. 445, 447-457 (1976). ............................................33

*Foust v. Pa. Dep't of Human Services*, 305 A.3d 1128, 1133 (Pa. Cmwlth. 2023)38

*Fowler v. AT&T, Inc.*, 19 F.4th 292, 307 (3d Cir. 2021)........................................35

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) .............................25

*Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 76 (1992)....................15

*Gomez-Perez v. Potter*, 553 U.S. 474, 480-482 (2008)..........................................27

*Hafer v. Melo*, 502 U.S. 21, 25-31 (1991)..............................................................38

*Harris v. Forklift Systems, Inc.*, 501 U.S. 17, 21 (1993) .........................................18

*Hassan v. Government of the Virgin Islands*, 861 F.3d 108, 116 (3d Cir. 2017)....41

*Haybarger v. Lawrence County Adult Probation & Parole*, 551 F.3d 193, 198-200 (3d Cir. 2008)..........................................................................................................33

*Huston v. Proctor & Gamble Paper Products Corp.*, 568 F.3d 100, 105-108 (3d Cir. 2009) ................................................................................................................19

*In re: Tribune Media Co.*, 902 F.3d 384, 400 (3d Cir. 2018).................................19

*Jackson v. Birmingham Board of Education*, 544 U.S. 167, 171 (2005) ................17

*Jones v. School District of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999) ..........23

*Kalu v. Spaulding*, 113 F.4th 311, 341 (3d Cir. 2024) ...........................................41

*Karns v. Shanahan*, 879 F.3d 504, 512-513 (3d Cir. 2018) ...................................31

*Koslow v. Com. of Pa.*, 302 F.3d 161, 178-179 (3d Cir. 2002)...............................32

*Kriss v. Fayette County*, 504 Fed. Appx. 182, 189 (3d Cir. 2012) (unpublished) ..31

*Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293-295 (3d Cir. 1999)..................20

*Lavia v. Com. of Pa., Dep't of Corr.*, 224 F.3d 190, 205-206 (3d Cir. 2000).........31

*M.A. ex rel. E.S. v. State-Operated School District of the City of Newark*, 344 F.3d 335, 347 (3d Cir. 2003)..........................................................................................33

*Mansfield State College v. Kovich*, 407 A.2d 1387, 1388 (Pa. Cmwlth. 1979) ......38

*Martinelli v. Penn Millers Insurance Co.*, 269 Fed. Appx. 226, 230 (3d Cir. 2008) (unpublished) ..........................................................................................18

*Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) .....................25

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ............................23

*McKenna v. City of Philadelphia*, 649 F.3d 171, 177-178 (3d Cir. 2011) .............26

*Mengine v. Runyon*, 114 F.3d 415, 420-421 (3d Cir. 1997)...................................36

*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986) .........................15

*Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) ..........................18

*Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 221, n. 21 (3d Cir. 2024) ...........................................................................................................38

*Muldrow v. City of St. Louis*, 601 U.S. 346, 354-355 (2024).................................21

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-115 (2002) ....20

*North Haven Board of Education v. Bell*, 456 U.S. 512, 530 (1982)......................15

*Oncale v. Sundower Offshore Services, Inc.*, 523 U.S. 75, 81 (1998).....................18

*Patterson v. PA Office of Inspector General*, 243 Fed. Appx. 695, 696 (3d Cir. 2007) (unpublished) ........................................................................ 38

*Peifer v. Board of Probation & Parole*, 106 F.4th 270, 277 (3d Cir. 2024) .......... 22

*Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 356 (3d Cir. 1999)................ 23

*Reed v. Goertz*, 598 U.S. 230, 234 (2023) ............................................................ 32

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996)............................... 32

*Shiring v. Runyon*, 90 F.3d 827, 831-832 (3d Cir. 1996) ...................................... 34

*Sports Enterprises, Inc. v. Goldklang*, 165 F.4th 162, 165 (3d Cir. 2026)............. 14

*Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011) ........................................... 26

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508-512 (2002) ............................... 24

*Taylor v. Phoenixville School District*, 184 F.3d 296, 317-320 (3d Cir. 1999) ...... 36

*Thompson v. North American Stainless, LP*, 562 U.S. 170, 173-174 (2011).......... 28

*Twillie v. Erie School District*, 575 Fed. Appx. 28, 32 (3d Cir. 2014) (unpublished) ........................................................................................................ 37

*University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013) ................................................................................................. 28

*Vance v. Ball State University*, 570 U.S. 421, 424 (2013) ...................................... 19

*Wilkerson v. New Media Technology Charter School, Inc.*, 522 F.3d 315, 322-323 (3d Cir. 2008) .................................................................................... 39

*Willis v. UPMC Children's Hospital of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) ....................39

*Young v. United Parcel Service, Inc.*, 575 U.S. 206, 228 (2015) ....................23

**Statutes**

20 U.S.C. § 1681 *et seq.* ....................1, 8

20 U.S.C. § 1681(a) ....................14

24 P.S. § 20-2002-A(a)(13) ....................31

28 U.S.C. § 1291 ....................1

28 U.S.C. § 1331 ....................1

28 U.S.C. § 1367(a) ....................1

29 U.S.C. § 792(a) ....................33

29 U.S.C. § 794 *et seq.* ....................1, 8

29 U.S.C. § 794(d) ....................34

42 U.S.C. § 12101 *et seq.* ....................1, 8

42 U.S.C. § 12112(a) ....................34

42 U.S.C. § 12112(b)(5)(A) ....................35

42 U.S.C. § 12202 ....................32

42 U.S.C. § 2000e *et seq.* ....................1, 8

42 U.S.C. § 2000e-2(a) ....................14

42 U.S.C. § 2000e-3(a) ....................17

42 U.S.C. § 2000e-5(f)(1)…………………………………………………………..6

42 U.S.C. § 2000e-5(f)(3) ........................................................................................1

42 U.S.C. §§ 12111-12117 .....................................................................................31

43 P.S. § 951 *et seq.* ...........................................................................................1, 8

43 P.S. § 955(a).....................................................................................................37

43 P.S. § 955(d).....................................................................................................37

43 P.S. § 955(e).....................................................................................................37

## STATEMENT OF JURISDICTION

This appeal arises out of a civil action brought under Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq.*], Title IX of the Education Amendments of 1972 [20 U.S.C. § 1681 *et seq.*], Section 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794 *et seq.*], the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. § 12101 *et seq.*], and the Pennsylvania Human Relations Act ("PHRA") [43 P.S. § 951 *et seq.*]. The United States District Court for the Western District of Pennsylvania exercised subject-matter jurisdiction over the appellant's claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367(a), and 42 U.S.C. § 2000e-5(f)(3). Because this appeal is from a final order entered on August 19, 2025, this Court's jurisdiction is predicated on 28 U.S.C. § 1291. The notice of appeal was filed on September 15, 2025.

## STATEMENT OF ISSUES

1. Did the District Court correctly dismiss Dr. Roger Solano's hostile work environment claims because the amended complaint does not describe conditions that an objectively reasonable professor would find to be hostile or abusive?

2. Did the District Court correctly dismiss Dr. Solano's claims based on discrete acts because no adverse employment actions were taken against him?

3. Should this Court affirm the District Court's decision dismissing Dr. Solano's retaliation claims because the amended complaint does not even allege that the administrators responsible for the challenged decisions knew about his allegedly protected conduct?

4. Are Dr. Solano's ADA claims barred by the Eleventh Amendment pursuant to the United States Supreme Court's decision in *Board of Trustees v. Garrett*, 531 U.S. 356 (2001)?

5. Should this Court affirm the District Court's decision dismissing Dr. Solano's failure to accommodate claims because the amended complaint does not allege that his disability could have been reasonably accommodated?

6. Did the District Court correctly dismiss Dr. Solano's PHRA claims against Holly McCoy because the amended complaint does not allege that she aided or abetted unlawful discrimination or retaliation?

## STATEMENT OF THE CASE

This case involves a professor who alleges that a state university discriminated and retaliated against him because of his national origin, sexual orientation, and disability. The appellant, who was the plaintiff in the District Court, is Dr. Roger Solano. The appellees, who were defendants in the District Court, are Slippery Rock University ("Slippery Rock") and its Director of Human Resources, Holly McCoy.

Dr. Solano is a Hispanic, homosexual male who was born in Venezuela. APPX.33; ECF No. 11 at ¶¶ 18, 20. Although he is fluent in English, his native language is Spanish. *Id.* at ¶ 19. For this reason, it takes him longer than others to respond to written queries in English. *Ibid.* Dr. Solano holds a Ph.D. in industrial engineering from the New Jersey Institute of Technology. *Id.* at ¶ 17. He started to teach at Slippery Rock in 2009. *Id.* at ¶ 22.

Dr. Jeananne Nicholls is a white, heterosexual female. APPX.35; ECF No. 11 at ¶ 33. In 2011, she was hired to teach in Slippery Rock's Management and Marketing Department. APPX.34; ECF No. 11 at ¶ 28. As a voting member of the Department, she can influence its hiring and staffing decisions. *Id.* at ¶ 31. Dr. Nicholls joined the Executive Committee of the Association of Pennsylvania State College and University Faculties in 2018. APPX.35; ECF No. 11 at ¶ 35.

In May 2019, Dr. Solano became the Management and Marketing Department's chairman. APPX.33; ECF No. 11 at ¶ 22. In that capacity, Dr. Solano

had to direct the Department's activities and administrative organization, represent its academic disciplines, develop its guidelines, and make recommendations related to personnel actions, curriculum changes, course offerings, teaching assignments, and budgetary matters. APPX.33-34; ECF No. 11 at ¶ 23. He was expected to be available and work during the summer months. APPX.34; ECF No. 11 at ¶ 24. Like other department chairpersons, Dr. Solano received a stipend in proportion to the size of the specific Department that he served as chairman. *Id.* at ¶ 25.

During the fifteen weeks immediately following Dr. Solano's election, Dr. Nicholls allegedly filed fourteen complaints against him. APPX.35; ECF No. 11 at ¶ 39. According to Dr. Solano, Dr. Nicholls purported to challenge several of his decisions, including decisions related only to trivial matters. *Id.* at ¶ 36. During a meeting held in November 2019, Dr. Nicholls complained about the wording used in an earlier email sent by Dr. Solano. *Id.* at ¶ 41. This complaint allegedly alluded to Dr. Solano's reduced capacity to communicate in English. *Ibid.*

At some point in 2020, Dr. Solano started to receive treatment for generalized anxiety disorder, attention deficit hyperactivity disorder, and insomnia. APPX.33; ECF No. 11 at ¶ 21. In addition, he allegedly suffered from depression, anhedonia, anxiety, and fatigue. APPX.43; ECF No. 11 at ¶¶ 120-121. Dr. Solano's physician prescribed anti-depressant medications to alleviate his symptoms. *Id.* at ¶ 124. Although Dr. Solano experienced vision problems, he was ultimately able to obtain

treatment for those issues. *Id.* at ¶ 123. Slippery Rock's administrators were made aware of Dr. Solano's mental health problems. *Id.* at ¶ 126.

As the Department's chairman, Dr. Solano was responsible for course scheduling. APPX.37; ECF No. 11 at ¶ 62. After preparing an initial course schedule, Dr. Solano was required to submit it to the Dean of Slippery Rock's School of Business for review and approval. *Id.* at ¶ 63. In order to prioritize the needs of students over preferences expressed by faculty members, Dr. Solano needed to communicate with the Dean. APPX.38; ECF No. 11 at ¶ 65. Slippery Rock's Provost had the ultimate authority to approve a submitted course schedule. *Id.* at ¶ 64.

In October 2022, Dr. Nicholls filed an administrative complaint against Slippery Rock and Dr. Solano with the Equal Employment Opportunity Commission ("EEOC"). APPX.37; ECF No. 11 at ¶ 60. Dr. Nicholls alleged that Dr. Solano had given preferential treatment to younger, male faculty members with respect to scheduling issues. *Id.* at ¶ 61. She also filed several internal complaints and grievances against him. APPX.38; ECF No. 11 at ¶ 68. Specifically, Dr. Nicholls criticized Dr. Solano for not automatically acquiescing to her request for permission to teach remotely, accused him of making inappropriate comments about women at work, and publicly indicated that she did not trust him. APPX.39; ECF No. 11 at ¶¶ 74-76. Dr. Nicholls is the only faculty member who has filed complaints against Dr. Solano during his tenure. APPX.38-39; ECF No. 11 at ¶ 73.

In response to Dr. Nicholls' complaints, Director of Human Resources Holly McCoy conducted an investigation. APPX.40; ECF No. 11 at ¶ 96. On October 12, 2023, McCoy informed Dr. Solano in writing that the investigation had concluded with a finding that he did not violate Slippery Rock's Harassment and Discrimination Policy. APPX.39; ECF No. 11 at ¶ 79. The EEOC ultimately closed its investigation into Dr. Nicholls' complaint and provided her with written notice of her right to commence her own civil action under 42 U.S.C. § 2000e-5(f)(1). APPX.38; ECF No. 11 at ¶ 67.

Dr. Nicholls, who had previously served as the chairperson of the University-wide Promotion Committee, served as the chairperson of the Departmental Promotion Committee in 2023 and 2024. APPX.35; ECF No. 11 at ¶ 34. Slippery Rock's School of Business reorganized its departments in January 2024. APPX.41; ECF No. 11 at ¶ 99. This reorganization resulted in the formation of the Department of Finance, Accounting, Marketing, and Economics and a new Management Department. *Ibid.*

Dr. Solano was one of two candidates seeking to become the Management Department's chairman. APPX.41; ECF No. 11 at ¶ 100. Voting for the position was scheduled to close at midnight on February 1, 2024. *Id.* at ¶ 101. Four hours before voting was scheduled to close, Slippery Rock canceled the election because of concerns that some of the ballots being cast were not secret. *Ibid.* Dr. Solano alleges

that the election was canceled to prevent him from winning. *Id.* at ¶ 106. And he avers that Dr. Nicholls played a role in the decision to cancel the election. *Id.* at ¶ 103. In any event, Dr. Solano ultimately became the chairman of the new Management Department. APPX.45; ECF No. 11 at ¶ 148.

In February 2024, Dr. Solano filed a charge of discrimination with the EEOC. APPX.32; ECF No. 11 at ¶ 6. He alleged that Slippery Rock had discriminated against him because of his sex, sexual orientation, national origin, and disability. *Id.* at ¶ 7. The charge of discrimination was simultaneously filed with the Pennsylvania Human Relations Commission ("PHRC"). *Id.* at ¶ 8.

In April 2024, the Sport Management Program was transferred out of the Management Department and placed under the authority of a new Communications Media and Sport Management Department. APPX.42; ECF No. 11 at ¶¶ 112-113. As a result of this reorganization, the size of Dr. Solano's Management Department decreased by three faculty members. *Id.* at ¶ 114. Because Slippery Rock's department chairpersons receive proportionate stipends based on the number of faculty members that they oversee, this decrease in departmental personnel allegedly caused an indirect reduction in Dr. Solano's compensation. *Id.* at ¶¶ 115-117.

At some point in May 2024, Dr. Nicholls accused Dr. Solano of treating male students more favorably than female students. APPX.43; ECF No. 11 at ¶ 119. In addition, Dr. Nicholls allegedly voiced several petty complaints about Dr. Solano's

decisions involving mundane and routine matters. APPX.36-37; ECF No. 11 at ¶¶ 50-54. When Dr. Solano attempted to call Dr. Nicholls' conduct to the attention of Provost Michael Zeig, Slippery Rock administrators allegedly cautioned him against voicing similar concerns in the future. APPX.41; ECF No. 11 at ¶ 97.

The EEOC issued a "right to sue" letter to Dr. Solano on August 20, 2024. APPX.32; ECF No. 11 at ¶ 9. On October 18, 2024, Dr. Solano filed a second charge of discrimination with the EEOC. *Id.* at ¶ 11. This second charge of discrimination was also filed with the PHRC. *Id.* at ¶ 13. Three days later, the PHRC closed its investigation into the matters raised in Dr. Solano's first charge of discrimination. *Id.* at ¶ 10.

Dr. Solano commenced this action in the United States District Court for the Western District of Pennsylvania on November 11, 2024. APPX.27; ECF No. 1. He named Slippery Rock and McCoy as defendants. *Ibid.* Dr. Solano asserted claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq.*], Title IX of the Education Amendments of 1972 [20 U.S.C. § 1681 *et seq.*], Section 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794 *et seq.*], the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. § 12101 *et seq.*], and the Pennsylvania Human Relations Act ("PHRA") [43 P.S. § 951 *et seq.*]. ECF No. 1 at ¶¶ 74-183. He also brought common-law claims against McCoy based

on allegations that she had somehow interfered with his contractual relationship with Slippery Rock. *Id.* at ¶¶ 184-191.

Slippery Rock and McCoy moved for the entry of an order dismissing Dr. Solano's complaint. APPX.28; ECF No. 8. Dr. Solano responded by filing an amended complaint. APPX.28; ECF No. 11. He again named Slippery Rock and McCoy as defendants. APPX.31; ECF No. 11 at ¶¶ 2-3. In the amended complaint, Dr. Solano reasserted his discrimination and retaliation claims under Title VII, Title IX, the Rehabilitation Act, the ADA, and the PHRA. APPX.45-61; ECF No. 11 at ¶¶ 141-317. But he abandoned his earlier common-law claims alleging interference with a contractual relationship.

Slippery Rock and McCoy filed a motion to dismiss the amended complaint. APPX.63-67; ECF No. 15. In an order dated August 19, 2025, the District Court fully granted that motion and dismissed Dr. Solano's claims with prejudice. APPX.3; ECF No. 29. In accordance with Federal Rule of Civil Procedure 58, the District Court entered a final judgment in favor of Slippery Rock and McCoy, and against Dr. Solano. APPX.4; ECF No. 30. This appeal followed. APPX.1; ECF No. 31.

## STATEMENT OF RELATED CASES

This case is related to *Solano v. Slippery Rock University*, Case 2:25-cv-01412-WSS, which is presently pending before the District Court. The EEOC issued a second "right to sue" letter to Dr. Solano on June 16, 2025, when it concluded its investigation into the allegations made in his second charge of discrimination. Case 2:25-cv-01412-WSS, ECF No. 10 at 2, ¶ 11. Less than one month after the District Court dismissed this action, Dr. Solano commenced a second action. Case 2:25-cv-014212-WSS, ECF No. 1. He named Slippery Rock, McCoy, and Zeig as defendants. Case 2:25-cv-01412-WSS, ECF No. 10 at 1, ¶¶ 2-4. At the present time, the second action is still pending before the District Court. Case 2:25-cv-014212-WSS.

## SUMMARY OF ARGUMENT

The amended complaint does not state any hostile work environment claims against Slippery Rock. Federal laws prohibiting status-based discrimination do not establish a general civility code for an individual's workplace. An objectively reasonable chairperson in a public university would expect his or her management decisions to be criticized and scrutinized. Dr. Solano cannot establish that his work environment was objectively hostile or abusive simply because Dr. Nicholls accused him of favoring young males in his allocation of faculty assignments. When Dr. Nicholls filed a charge of discrimination with the EEOC and submitted complaints alleging that Dr. Solano favored young males, her communications were arguably protected under Title VII and Title IX. Dr. Solano cannot establish the existence of a hostile work environment by simply alleging that Slippery Rock scrutinized his management decisions after receiving notice of Dr. Nicholls' complaints.

Dr. Solano does not properly allege that Slippery Rock took adverse employment actions against him. Although Dr. Solano alleges that Slippery Rock canceled the election to determine the chairperson of the Management Department to prevent him from winning, he ultimately became the chairman anyway. Aside from conclusory allegations that are not entitled to a presumption of truth, nothing in the amended complaint suggests that the Sport Management Program was transferred out of the Management Department because of Dr. Solano's sexual

orientation or national origin. The amended complaint does not identify a single faculty member or chairperson who was treated more favorably than Dr. Solano. For these reasons, the amended complaint does not state any cognizable discrimination claims under Title VII or Title IX.

Although Dr. Solano argues in his brief that Slippery Rock administrators canceled the election to retaliate against him for complaining about Dr. Nicholls, the amended complaint does not identify a single Slippery Rock administrator who was both (1) aware of Dr. Solano's complaints and (2) involved in the cancellation decision. An individual cannot retaliate against an employee for his or her protected conduct without knowing about that protected conduct in the first place. Because the allegations in the amended complaint do not demonstrate that the cancellation decision was made by Slippery Rock administrators who knew about Dr. Solano's complaints, the amended complaint does not state any retaliation claims against Slippery Rock even if it is assumed that Dr. Solano's complaints about Dr. Nicholls were protected.

Congress did not validly abrogate Slippery Rock's Eleventh Amendment immunity when it enacted Title I of the ADA. For this reason, Dr. Solano's ADA claims are barred by the Eleventh Amendment. Although Dr. Solano alleges that Slippery Rock violated the Rehabilitation Act by failing to accommodate his mental disability, he does not explain how that disability could have been reasonably

accommodated. Consequently, the amended complaint does not state any disability-based discrimination claims against Slippery Rock.

Dr. Solano cannot state aiding and abetting claims against McCoy without alleging that Slippery Rock engaged in a form of discrimination or retaliation prohibited under the PHRA. The relevant provisions of the PHRA are typically construed to prohibit the same practices that are prohibited under the corresponding federal statutes. Because the amended complaint does not state any federal discrimination or retaliation claims against Slippery Rock, it does not properly allege that Slippery Rock engaged in conduct that the PHRA prohibits. For that reason alone, Dr. Solano's aiding and abetting claims against McCoy inevitably fail.

Even if the amended complaint is construed to allege that Slippery Rock somehow violated the PHRA, it still fails to state aiding and abetting claims against McCoy. Dr. Solano alleges only that McCoy investigated Dr. Nicholls' complaints against him and cleared him of wrongdoing. As Slippery Rock's Director of Human Resources, McCoy was required to investigate Dr. Nicholls' complaints. Dr. Solano cannot hold McCoy liable for simply doing her job. The amended complaint does not allege that McCoy was involved in the decisions canceling the election and transferring the Sport Management Program out of the Management Department. Under these circumstances, there is no way that McCoy can be held liable.

This Court should affirm the District Court's judgment in all respects.

## ARGUMENT

Standard of Review: Because this case is on appeal from a decision granting a motion to dismiss, the District Court's decision is subject to *de novo* review. *Sports Enterprises, Inc. v. Goldklang*, 165 F.4th 162, 165 (3d Cir. 2026).

Title VII's anti-discrimination provision declares it to be an "unlawful employment practice" for a covered employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a). Dr. Solano asserts that Slippery Rock somehow discriminated against him because of his status as a homosexual male of Venezuelan origin. APPX.45-48, ¶¶ 141-172. For purposes of Title VII, discrimination premised on an individual's sexual orientation constitutes discrimination based on his or her sex. *Bostock v. Clayton County*, 590 U.S. 644, 683 (2020). And Dr. Solano's status as an individual born in Venezuela places him within the category of individuals protected from discrimination on the basis of national origin. *Espinoza v. Farah Manufacturing Co., Inc.*, 414 U.S. 86, 88 (1973).

Title IX protects individuals from sex-based discrimination under educational programs and activities receiving federal financial assistance. 20 U.S.C. § 1681(a). The United States Supreme Court has construed Title IX to prohibit covered

recipients of federal financial assistance from discriminating against their own employees on the basis of sex. *North Haven Board of Education v. Bell*, 456 U.S. 512, 530 (1982).

The provisions of Title VII and Title IX can be enforced through civil actions commenced by private parties. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006); *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 76 (1992). Dr. Solano asserts discrimination claims against Slippery Rock under both statutes. APPX.45-51, ¶¶ 141-172, 188-206. For all relevant purposes, these claims must be analyzed in the same manner.[1] *Doe v. Mercy Catholic Medical Center*, 850 F.3d 545, 563-566 (3d Cir. 2017).

## I. THE AMENDED COMPLAINT DOES NOT STATE ANY HOSTILE WORK ENVIRONMENT CLAIMS

A covered employer unlawfully discriminates against an individual when it creates "a hostile or abusive work environment" by engaging in status-based harassment that is sufficiently severe or pervasive to alter the "terms, conditions, or privileges" of that individual's employment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986). Dr. Solano purports to assert hostile work environment claims against Slippery Rock under Title VII and Title IX. APPX.45-52, ¶¶ 144-145,

[1] Because Dr. Solano's claims under the Rehabilitation Act, the ADA, and the PHRA implicate different issues, they will be discussed separately.

160-164, 177-178, 193-196, 213-214. But the District Court correctly determined that the amended complaint did not state any viable hostile work environment claims. APPX.9-21.

To state a hostile work environment claim, Dr. Solano must allege that: (1) he suffered a form of prohibited discrimination (*e.g.*, harassment) because of a protected trait; (2) the discrimination was severe or pervasive; (3) the discrimination was subjectively detrimental to him; (4) the discrimination would be detrimental to an objectively reasonable employee under similar circumstances; and (5) a basis for *respondeat superior* liability (*i.e.*, a basis for holding Slippery Rock legally responsible for the discrimination) exists. *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017). Dr. Solano's claims falter right out of the gate; his allegations of discriminatory "harassment" appear to be based primarily (if not entirely) on communications that enjoy affirmative *protection* under Title VII and Title IX. For that reason alone, the amended complaint does not "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee "because he [or she] has opposed any practice made an unlawful employment practice" by the anti-discrimination provision, or "because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" involving an allegation of

discrimination. 42 U.S.C. § 2000e-3(a). And the Supreme Court has construed Title IX to prohibit a recipient of federal funding from retaliating against an individual who complains about sex-based discrimination. *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 171 (2005). Dr. Solano acknowledges that retaliation claims may be brought under Title VII and Title IX. Indeed, he asserts such retaliation claims against Slippery Rock in this case. APPX.48-49, 51-52, ¶¶ 173-187, 207-224.

Interestingly, Dr. Solano's hostile work environment claims appear to be premised entirely on his "strained relationship" with Dr. Nicholls, who filed a charge of discrimination with the EEOC and accused him of giving preferential treatment to young males. APPX.35-37, ¶¶ 37-38, 60-61. An employee who files a charge of discrimination ordinarily enjoys statutory protection from retaliation. *Carvalho-Grevious v. Delaware State University*, 851 F.3d 249, 261-262 (3d Cir. 2017). Even if an employee passively "opposes" discrimination without taking formal action, he or she is still protected. *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271, 277-280 (2009). Title VII and Title IX would arguably prevent Slippery Rock from retaliating against an employee for complaining about sex-based discrimination; but Dr. Solano now seeks to hold Slippery Rock liable under those same statutes for declining to silence Dr. Nicholls' complaints. APPX.34-44, ¶¶ 27-134.

Admittedly, an employee is protected from retaliation only if he or she holds "an objectively reasonable belief" that the "discrimination" that he or she opposes is unlawful. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). But even if Dr. Solano's averments are construed to allege that Dr. Nicholls did not reasonably believe that his treatment of Slippery Rock's faculty members was discriminatory—and that her complaints were not protected—the "increased criticism and scrutiny" described in the amended complaint did not result in a hostile work environment. APPX.45-46, 49-50, ¶¶ 144, 160, 193.

To allege the existence of a hostile work environment, Dr. Solano must aver facts demonstrating that an objectively reasonable person would view his work environment to be hostile or abusive. *Harris v. Forklift Systems, Inc.*, 501 U.S. 17, 21 (1993). That standard is not satisfied here. Title VII and Title IX do not establish "a general civility code" for the American workplace. *Oncale v. Sundower Offshore Services, Inc.*, 523 U.S. 75, 81 (1998). The amended complaint merely describes tensions that typically arise in a university setting when rival faculty members disagree; it does not describe the type of discriminatory harassment that could violate Title VII or Title IX. *Martinelli v. Penn Millers Insurance Co.*, 269 Fed. Appx. 226, 230 (3d Cir. 2008) (unpublished). To the extent that Dr. Solano describes the complaints voiced against him as "harassment" simply to support his case, his

averments constitute merely conclusory allegations that should not be accepted as true. *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 789-790 (3d Cir. 2016).

Even if Dr. Solano's allegations could be read to describe harassment (rather than mere criticism or scrutiny), they would not provide a basis for holding Slippery Rock responsible. Dr. Nicholls was never Dr. Solano's supervisor. To establish liability under these circumstances, Dr. Solano would have to show that Slippery Rock was "negligent in controlling [his] working conditions." *Vance v. Ball State University*, 570 U.S. 421, 424 (2013). An employer is negligent if it fails to take prompt and appropriate remedial action after being placed on actual or constructive notice of unlawful harassment. *In re: Tribune Media Co.*, 902 F.3d 384, 400 (3d Cir. 2018). Such notice exists when a management-level employee knows (or should know) that a complaining employee's work environment is hostile or abusive because of his or her protected status. *Huston v. Proctor & Gamble Paper Products Corp.*, 568 F.3d 100, 105-108 (3d Cir. 2009). Even if Dr. Solano's allegations are taken at face value and accepted as true, they do not establish that Slippery Rock was on actual or constructive notice that his work environment was hostile or abusive.

Dr. Solano allegedly told McCoy that he was being subjected to increased criticism and scrutiny, and that he had been accused of favoring young males in his awarding of faculty assignments. APPX.57-60, ¶¶ 271, 288-289, 305-306. For the

reasons discussed earlier, the increased criticism and scrutiny alleged by Dr. Solano did not violate Title VII or Title IX; and Dr. Nicholls' complaints about Dr. Solano allegedly favoring young males arguably enjoyed affirmative protection under those statutes. Conduct must be "extreme" to constitute an actionable change in the terms or conditions of an individual's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The petty complaints communicated to McCoy could not have placed Slippery Rock on actual or constructive notice that Dr. Solano's work environment was hostile or abusive. Because the information allegedly conveyed to McCoy would not have placed an objectively reasonable employer on notice that Dr. Solano was a victim of status-based harassment, the amended complaint does not state any hostile work environment claims against Slippery Rock. *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293-295 (3d Cir. 1999).

## II. THE AMENDED COMPLAINT DOES NOT STATE ANY DISCRIMINATION CLAIMS BASED ON DISCRETE ACTS

Title VII explicitly prohibits covered employers from subjecting employees to certain "discrete acts" of discrimination. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-115 (2002). And, as discussed earlier, Title IX similarly prohibits recipients of federal financial assistance from discriminating against their employees on the basis of sex. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452-453 (2008). Dr. Solano purports to assert Title VII and Title IX claims based on two discrete acts. First, he alleges that Slippery Rock discriminated against him when it

canceled and nullified the election for the chairperson of the Management Department. APPX.45-52, ¶¶ 147, 164, 179, 197, 215. Second, Dr. Solano alleges that Slippery Rock discriminated against him when it transferred the Sport Management Program out of the Management Department and placed it under the authority of the new Communications Media and Sport Management Department. APPX.45-52, ¶¶ 148-151, 165-167, 180-182, 198-200, 216-218. But those allegations do not state any actionable claims under Title VII or Title IX.

To establish a violation of Title VII or Title IX, an employee must show that he or she suffered "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-355 (2024). Dr. Solano's allegations concerning the cancellation and nullification of the election do not satisfy that standard. The election was allegedly canceled on February 1, 2024—four hours before voting was scheduled to conclude. APPX.41-42, ¶¶ 100-108. Dr. Solano alleges that Slippery Rock administrators canceled the election (and nullified the impending result) after it had become clear that he would win. APPX.41, ¶ 106. But he ultimately won the election and became the department chairman anyway. APPX.45-52, ¶¶ 148, 180, 198, 216. Because the procedural irregularity alleged by Dr. Solano did not result in a disadvantageous change in the terms or conditions of his employment, the District Court correctly determined that it did not give rise to a claim under Title VII or Title IX. APPX.13.

The Sport Management Program was allegedly transferred out of the Management Department in April 2024. APPX.42, ¶ 112. The transfer allegedly removed three faculty members from Dr. Solano's purview.[2] APPX.42, ¶ 114. When Dr. Solano filed the amended complaint, he averred that he was overseeing eighteen members of Slippery Rock's faculty. APPX.42, ¶ 116. He further averred that his compensation would be increased if he were to oversee more than twenty faculty members. *Ibid.* Even if it is assumed that Dr. Solano's loss of three subordinates was sufficiently adverse to implicate Title VII and Title IX—despite the fact that this occurrence was merely an incidental byproduct of a standard departmental reorganization—his claims would still fail because the allegations contained in the amended complaint do not give rise to an inference that the Sport Management Program was transferred out of the Management Department because of Dr. Solano's sexual orientation or national origin.

The relevant question in any employment discrimination case is whether an employee has suffered an employment-related injury "because of a protected characteristic." *Peifer v. Board of Probation & Parole*, 106 F.4th 270, 277 (3d Cir. 2024). A plaintiff bringing a discrimination claim must normally establish a *prima*

[2] A department chairperson does not supervise the other faculty members within his or her department. Instead, he or she simply coordinates activities so that the relevant department can function properly.

*facie* case of discrimination under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The elements of a plaintiff's *prima facie* case "depend on the facts of the particular case" and cannot be determined "on a one-size-fits-all basis." *Jones v. School District of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999). But any *prima facie* case must give rise to an inference that the plaintiff suffered an adverse employment action on the basis of an illegal discriminatory criterion. *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 356 (3d Cir. 1999). And that discriminatory criterion's significance in a particular employment decision can normally become apparent only when "those whom the employer favored and those whom the employer disfavored" are compared in some way. *Young v. United Parcel Service, Inc.*, 575 U.S. 206, 228 (2015). In the amended complaint, Dr. Solano did not identify any Slippery Rock employees who were treated more favorably than him. For this reason, the District Court correctly held that the amended complaint did not state any claims under Title VII or Title IX with respect to Slippery Rock's decision to transfer the Sport Management Program out of the Management Department. APPX.12-17.

Relying solely on decisions rendered in *other circuits*, Dr. Solano argues that the District Court erred in holding that he was required to identify specific comparators. Appellate ECF No. 20 at 37-39. He contends that "generalized references to comparators or employees outside of the plaintiff's protected class"

can be used to satisfy the relevant pleading requirements. Appellate ECF No. 20 at 39. But *this Court's* prior decisions squarely foreclose that argument.

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508-512 (2002), the Supreme Court held that a plaintiff bringing discrimination claims could defeat a motion to dismiss without stating a *prima facie* case under *McDonnell Douglas*. But *Swierkiewicz* was decided under the more lenient standard applied in *Conley v. Gibson*, 355 U.S. 41 (1957). *Swierkiewicz*, 534 U.S. at 512. Under *Conley*, a complaint could not be dismissed unless it appeared beyond doubt that the plaintiff could "prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-563 (2007), the Supreme Court clarified that the "no set of facts" language appearing in *Conley* spoke only to how a plaintiff could support an adequately-stated claim, and that it did not describe the "minimum standard" that a complaint must satisfy to survive a motion to dismiss. Applying Federal Rule of Civil Procedure 8(a)(2)'s language requiring a complaint to contain averments "showing that the pleader is entitled to relief," the Supreme Court explained that a complaint could survive a motion to dismiss only if it alleged "enough facts to state a claim to relief that [wa]s plausible on its face." *Twombly*, 550 U.S. at 564, 570. Shortly after *Twombly* was decided, this Court explicitly declared that the *Conley*-based rule applied in *Swierkiewicz* no longer governed the

"pleading requirements" in employment discrimination cases commenced in the Third Circuit. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

To survive a motion to dismiss under *Twombly*, a plaintiff alleging unlawful discrimination need not always allege enough facts to formally establish a *prima facie* case; but he or she must still allege enough facts to raise a reasonable expectation that discovery will yield evidence to support the necessary elements. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). The amended complaint does not surmount that hurdle. Without discussing the circumstances involving other chairpersons, Dr. Solano simply speculates that Slippery Rock administrators transferred the Sport Management Program out of the Management Department because of his sexual orientation and national origin. APPX.45-52, ¶¶ 148-155, 165-171, 198-204. The District Court correctly viewed this transfer as a typical "transitional decision made in Slippery Rock's regular course of business." APPX.14. At most, the allegations concerning the transfer give rise to "a sheer possibility" that Slippery Rock acted unlawfully; they do not permit the District Court (or this Court) "to draw the reasonable inference that [Slippery Rock] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the precise circumstances of this case, Dr. Solano's claims are deficient for the additional reason that Dr. Nicholls—the faculty member alleged to have acted on the basis of a discriminatory animus—did not make the decision to transfer the

Sport Management Program out of the Management Department. An employer can sometimes be held liable for an adverse employment action that is proximately caused by a *supervisor's* discriminatory animus (even if the relevant employment decision is ultimately made by someone else). *Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011). But Dr. Nicholls was never Dr. Solano's supervisor.[3] Furthermore, a plaintiff challenging an employment decision made by someone other than the individual exhibiting a discriminatory animus must show that the relevant individual's discriminatory intent *caused* the adverse employment action at issue. *McKenna v. City of Philadelphia*, 649 F.3d 171, 177-178 (3d Cir. 2011). The amended complaint does not allege facts demonstrating that Dr. Nicholls caused the transfer of the Sport Management Program to occur. APPX.42-43, ¶¶ 112-118.

To establish that Slippery Rock unlawfully discriminated against Dr. Solano because of Dr. Nicholls' illicit motives, Dr. Solano must show that: (1) Dr. Nicholls was motivated by a desire to discriminate against him because of his sexual orientation or national origin; (2) Dr. Nicholls directly communicated with the relevant decisionmakers at Slippery Rock; and (3) the decisionmakers relied on Dr. Nicholls' communication to make the challenged employment decision. *Crosbie v.*

---

[3] As a general rule, only someone "acting with the authority of" the relevant employer can take a tangible employment action against an employee. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761-762 (1998).

*Highmark Inc.*, 47 F.4th 140, 146 (3d Cir. 2022). The amended complaint does not allege that Dr. Nicholls communicated with the Slippery Rock administrators who decided to transfer the Sport Management Program. APPX.42-43, ¶¶ 112-118. Indeed, Dr. Solano does not even identify the individuals who made that decision. He cannot rely solely on a bald assertion that the transfer occurred because of Dr. Nicholls' discriminatory animus. *Crosbie*, 47 F.4th at 145-146.

For all of these reasons, the amended complaint does not state any discrimination claims under Title VII or Title IX. This Court should affirm the District Court's decision dismissing those claims. APPX.9-17.

## III. The Amended Complaint Does Not State Any Retaliation Claims

Title VII explicitly prohibits employers from retaliating against employees who oppose unlawful discrimination or participate in related administrative or judicial proceedings. 42 U.S.C. § 2000e-3(a). And the Supreme Court has construed Title IX's prohibition against sex-based discrimination to prohibit retaliation against those who complain about such discrimination. *Gomez-Perez v. Potter*, 553 U.S. 474, 480-482 (2008). Dr. Solano asserts retaliation claims against Slippery Rock under Title VII and Title IX. APPX.48-49, 51-52, ¶¶ 173-187, 207-224. But the District Court correctly dismissed those claims because the amended complaint does not properly allege that Slippery Rock retaliated against Dr. Solano for engaging in protected conduct.

Unlike a discrimination claim based on an employee's protected status, trait, or characteristic—which must be premised on a discriminatory action affecting his or her compensation, terms, conditions, or privileges of employment—a retaliation claim can be premised on any retaliatory action that might dissuade an objectively reasonable employee from submitting or supporting a charge of discrimination. *Thompson v. North American Stainless, LP*, 562 U.S. 170, 173-174 (2011). But a plaintiff bringing a retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013). To state a retaliation claim, Dr. Solano must allege that Slippery Rock harmed him because of his *conduct*; he cannot simply allege that Slippery Rock discriminated against him because of his *status* as a homosexual male from Venezuela. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 63 (2006).

In the amended complaint, Dr. Solano alleges that he engaged in protected conduct when he complained to "the [Slippery Rock] administration" about "homophobic harassment" allegedly perpetrated by Dr. Nicholls. APPX.48, 51, ¶¶ 174, 210. But the alleged "harassment" that Dr. Solano describes as "homophobic" consisted only of Dr. Nicholls' complaints alleging that he gave young males favorable assignments. APPX.48, 51, ¶¶ 176, 210. As discussed earlier, Dr. Nicholls arguably engaged in protected conduct when she voiced those complaints. An

objectively reasonable administrator at Slippery Rock would have understood Dr. Solano's communications disputing Dr. Nicholls' complaints as attempts to defend his own actions against her allegations of discrimination rather than as affirmative complaints *about* discrimination. Because the communications attributed to Dr. Solano in the amended complaint did not objectively oppose an unlawful form of discrimination, the amended complaint does not properly allege that Dr. Solano engaged in protected conduct when he complained to Slippery Rock administrators about Dr. Nicholls' accusations. *Curay-Cramer v. Ursuline Academy of Wilmington*, 450 F.3d 130, 137 (3d Cir. 2006) (explaining that a communication's protected status turns on "the objective message conveyed" rather than on "the subjective intent of the person sending the message").

But even if Dr. Solano engaged in protected conduct when he complained to unidentified Slippery Rock administrators about Dr. Nicholls' alleged harassment, his retaliation claims still fail because the amended complaint does not link his complaints to actions taken against him. In his brief to this Court, Dr. Solano argues that the cancellation of the election on February 1, 2024, constituted an act of retaliation for his complaints against Dr. Nicholls. Appellate ECF No. 20 at 43-46. But the amended complaint does not identify the relevant Slippery Rock administrators or explain whether the individuals who knew about Dr. Solano's complaints were the same individuals who decided to cancel the election. Of course,

Dr. Solano cannot establish a causal connection between his protected conduct (*i.e.*, his complaints about Dr. Nicholls' allegations against him) and the alleged adverse action (*i.e.*, the decision to cancel the election) without demonstrating that the specific individuals responsible for the adverse action knew about his protected conduct when they acted. *Daniels v. School District of Philadelphia*, 776 F.3d 181, 196-197 (3d Cir. 2015).

The amended complaint alleges that Dr. Nicholls influenced Slippery Rock's decision to cancel the election. APPX.41, ¶ 103. And it alleges that the cancellation decision was ultimately made by Slippery Rock administrators. APPX.41, ¶ 104. But the amended complaint does not allege that the specific individuals involved in the cancellation decision (*i.e.*, Dr. Nicholls and unspecified Slippery Rock administrators) subjectively knew that Dr. Solano had complained about Dr. Nicholls' alleged harassment. The unnamed Slippery Rock administrators who received Dr. Solano's complaints were not necessarily the same Slippery Rock administrators who decided to cancel the election. APPX.41, 48, 51, ¶¶ 104, 174, 210. If the individuals who canceled the election did not know about Dr. Solano's complaints, there is no possible way that they could have acted on the basis of a retaliatory motive. *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002). Because the amended complaint does not identify a single individual who was both (1) aware of Dr. Solano's complaints about Dr. Nicholls and (2) involved

in the cancellation decision, it does not state any actionable retaliation claims. *Kriss v. Fayette County*, 504 Fed. Appx. 182, 189 (3d Cir. 2012) (unpublished).

## IV. THE ELEVENTH AMENDMENT BARS DR. SOLANO'S ADA CLAIMS

In the amended complaint, Dr. Solano purported to sue Slippery Rock under the ADA. APPX.55-56; ECF No. 11 at ¶¶ 247-266. He seeks various forms of monetary relief for alleged instances of discrimination based on a statutory disability. APPX.56 at ¶ 266. To the extent that Dr. Solano is seeking to proceed under the ADA, however, his claims are clearly barred by the Eleventh Amendment to the United States Constitution. *Lavia v. Com. of Pa., Dep't of Corr.*, 224 F.3d 190, 205-206 (3d Cir. 2000).

Slippery Rock is a state university existing as a component of the Pennsylvania State System of Higher Education ("PASSHE"). 24 P.S. § 20-2002-A(a)(13). As a PASSHE university, Slippery Rock shares in the Commonwealth's Eleventh Amendment immunity. *Bradley v. West Chester University*, 880 F.3d 643, 660 (3d Cir. 2018). Because Slippery Rock is an arm of the Commonwealth, it cannot be subjected to private suits in federal court without its consent. *Karns v. Shanahan*, 879 F.3d 504, 512-513 (3d Cir. 2018).

The provisions of the ADA prohibiting disability-based discrimination in employment are found in Title I. 42 U.S.C. §§ 12111-12117. When Congress enacted the ADA, it purported to abrogate the States' Eleventh Amendment

immunity. 42 U.S.C. § 12202. In *Board of Trustees v. Garrett*, 531 U.S. 356, 360-374 (2001), the Supreme Court declared the ADA's abrogation provision to be unconstitutional as applied to claims arising under Title I. For this reason, the Eleventh Amendment bars private parties from bringing Title I claims against state defendants. *Durham v. Kelley*, 82 F.4th 217, 288 (3d Cir. 2023). Because ADA claims alleging employment discrimination arise under Title I, the Eleventh Amendment shields Slippery Rock from Dr. Solano's ADA claims seeking money damages. *Bowers v. National Collegiate Athletic Association*, 475 F.3d 524, 551 (3d Cir. 2007).

A state employee can sometimes seek prospective relief under Title I pursuant to the theory established in *Ex parte Young*, 209 U.S. 123, 159-161 (1908). *Koslow v. Com. of Pa.*, 302 F.3d 161, 178-179 (3d Cir. 2002). But prospective relief under *Young* can only be sought against a particular state official (in his or her official capacity). *Reed v. Goertz*, 598 U.S. 230, 234 (2023). Dr. Solano's ADA claims are asserted only against Slippery Rock. APPX.55-56, ¶¶ 247-266. When a private plaintiff purports to directly sue a State in federal court, the nature of the requested relief is irrelevant; the Eleventh Amendment bars the suit. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996). Under these circumstances, Dr. Solano's ADA claims are obviously barred by the Eleventh Amendment. *Benn v. First Judicial District of Pa.*, 426 F.3d 233, 238-241 (3d Cir. 2005).

## V. THE AMENDED COMPLAINT DOES NOT STATE ANY FAILURE TO ACCOMMODATE CLAIMS

Dr. Solano also asserts discrimination claims against Slippery Rock under the Rehabilitation Act. APPX.53-54, ¶¶ 225-246. Section 504 of the Rehabilitation Act prohibits recipients of federal financial assistance from discriminating against disabled individuals in connection with covered programs and activities. 29 U.S.C. § 792(a). This Court has held that a state entity waives its Eleventh Amendment immunity from Rehabilitation Act claims if it accepts federal financial assistance.[4] *Haybarger v. Lawrence County Adult Probation & Parole*, 551 F.3d 193, 198-200 (3d Cir. 2008). In the amended complaint, Dr. Solano avers that Slippery Rock receives the type of assistance that would render it amenable to suit under the Rehabilitation Act. APPX.53, ¶ 227.

For the reasons discussed earlier, the amended complaint does not state any hostile work environment claims or claims based on discrete acts of discrimination. To the extent that Dr. Solano's Rehabilitation Act claims are based on those theories, they inevitably fail for the same reasons that his Title VII and Title IX claims fail.

---

[4] This same waiver analysis applies to claims asserted under Title IX. *M.A. ex rel. E.S. v. State-Operated School District of the City of Newark*, 344 F.3d 335, 347 (3d Cir. 2003). And because Congress has validly abrogated the States' Eleventh Amendment immunity from Title VII claims, the Eleventh Amendment does not bar Dr. Solano's Title VII claims against Slippery Rock. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 447-457 (1976).

APPX.53-54, ¶¶ 233-239. But Dr. Solano appears to also assert Rehabilitation Act claims based on allegations that Slippery Rock failed to accommodate his disability. APPX.54, ¶ 243. In any event, the District Court correctly determined that the amended complaint did not state any viable failure to accommodate claims. APPX.21-24.

Rehabilitation Act claims based on allegations of discrimination in the employment context are governed by the standards used to determine whether a covered employer has violated Title I of the ADA. 29 U.S.C. § 794(d). Therefore, the substantive requirements of Title I control the determination as to whether a recipient of federal financial assistance has violated the Rehabilitation Act through its treatment of an employee. *Shiring v. Runyon*, 90 F.3d 827, 831-832 (3d Cir. 1996).

Title I of the ADA prohibits a covered entity from "discriminat[ing] against a qualified individual with a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The "discrimination" prohibited under Title I includes a covered entity's refusal to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation

would impose an undue hardship on the operation of [its] business[.]" 42 U.S.C. § 12112(b)(5)(A). To establish a violation of the Rehabilitation Act based on an employer's alleged failure to accommodate a statutory disability, a disabled employee must show that: (1) the employer knew about his or her disability; (2) he or she requested accommodations or assistance to address the disability; (3) the employer did not make a good faith effort to assist him or her in ascertaining the appropriate accommodations; and (4) he or she could have been reasonably accommodated if the employer had acted in good faith. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010).

In the amended complaint, Dr. Solano alleges that he suffers from mental disabilities, that Slippery Rock administrators were aware of his mental problems during the relevant time period, and that Slippery Rock did not take steps to accommodate his disability. APPX.43-44, ¶¶ 120-129. But he does not explain how his alleged disability could have been accommodated. That omission is fatal to his case. To establish liability based on Slippery Rock's failure to accommodate his disability, Dr. Solano must show that he could have been reasonably accommodated if Slippery Rock had acted in good faith. *Fowler v. AT&T, Inc.*, 19 F.4th 292, 307 (3d Cir. 2021). The amended complaint completely fails to address that critical issue.

In his brief to this Court, Dr. Solano argues only that Slippery Rock's alleged awareness of his disability triggered its duty to engage in an interactive process for

the purpose of determining whether a reasonable accommodation was available. Appellate ECF No. 20 at 43-46. Even if that argument allows Dr. Solano to begin the race, it does not get him to the finish line. As a practical matter, an interactive process is sometimes necessary to facilitate a discussion as to whether an accommodation is desired, necessary, appropriate, or feasible. *Conneen v. MBNA America Bank, N.A.*, 334 F.3d 318, 329-331 (3d Cir. 2003). If an employer neglects to engage in the interactive process and fails to discover a way in which an employee's disability can be reasonably accommodated, it risks violating the Rehabilitation Act. *Mengine v. Runyon*, 114 F.3d 415, 420-421 (3d Cir. 1997). But that hypothetical risk does not change or diminish the showing that Dr. Solano must ultimately make to establish a violation of the Rehabilitation Act; he must still establish that he could have been reasonably accommodated but for Slippery Rock's alleged lack of good faith. *Taylor v. Phoenixville School District*, 184 F.3d 296, 317-320 (3d Cir. 1999). And no averment in the amended complaint purports to address or satisfy that element.

Without discussing specific accommodations, the amended complaint baldly asserts that Slippery Rock "has not taken any steps to accommodate Dr. Solano's disability" even though Slippery Rock administrators "are aware of" his mental problems. APPX.43-44, ¶¶ 126, 129. Those vague averments do not satisfy the requirements for pleading failure to accommodate claims under the Rehabilitation

Act. *Twillie v. Erie School District*, 575 Fed. Appx. 28, 32 (3d Cir. 2014) (unpublished). Because Dr. Solano does not explain how his alleged disability could have been accommodated, this Court should affirm the District Court's decision dismissing his Rehabilitation Act claims. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 156-157 (3d Cir. 2017).

## VI. The Amended Complaint Does Not State Any PHRA Claims Against McCoy

In addition to his discrimination and retaliation claims against Slippery Rock, Dr. Solano asserts PHRA claims against McCoy. Specifically, Dr. Solano avers that McCoy unlawfully discriminated against him because of his sexual orientation and national origin and retaliated against him for engaging in protected conduct. APPX.56-61, ¶¶ 267-317. In any event, the District Court correctly dismissed Dr. Solano's claims against McCoy because the amended complaint does not contain allegations demonstrating that she violated his statutory rights. APPX.24-26.

The PHRA prohibits covered employers from discriminating against employees because of their sex or national origin. 43 P.S. § 955(a). And it prohibits covered employers from retaliating against employees who oppose unlawful discrimination or participate in related administrative or judicial proceedings. 43 P.S. § 955(d). An individual who aids or abets an "unlawful discriminatory practice" can be held personally liable under the PHRA. 43 P.S. § 955(e). Dr. Solano purports to assert discrimination and retaliation claims against McCoy on the ostensible

ground that she aided and abetted certain discriminatory practices.[5] APPX.56-61, ¶¶ 267-317. But those claims inevitably fail for several reasons.

Pennsylvania courts typically construe the provisions of the PHRA to be consistent with similar provisions found in federal statutes that address the same concerns. *Foust v. Pa. Dep't of Human Services*, 305 A.3d 1128, 1133 (Pa. Cmwlth. 2023). In determining whether a plaintiff can establish a violation of the PHRA, this Court typically performs the same analysis that is used to determine whether he or she can establish a violation of the corresponding federal statute. *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 221, n. 21 (3d Cir. 2024). For the reasons discussed earlier, the amended complaint does not state any discrimination or retaliation claims under Title VII, Title IX, the ADA, or the Rehabilitation Act. Given that no violation of federal law is alleged, it necessarily follows that the

[5] Because the General Assembly included the Commonwealth within the PHRA's definition of the term "employer," the Commonwealth Court has construed the PHRA to waive the sovereign immunity that otherwise shields Commonwealth parties from liability under Pennsylvania law. *City of Philadelphia v. Pa. Human Relations Commission*, 684 A.2d 204, 207-208 (Pa. Cmwlth. 1996); *Mansfield State College v. Kovich*, 407 A.2d 1387, 1388 (Pa. Cmwlth. 1979). Of course, the Eleventh Amendment would bar any PHRA claims asserted against Slippery Rock in federal court. *Patterson v. PA Office of Inspector General*, 243 Fed. Appx. 695, 696 (3d Cir. 2007) (unpublished). But Dr. Solano's PHRA claims are asserted only against McCoy. APPX.00056-61, ¶¶ 267-317. And, as the District Court recognized, the Eleventh Amendment does not bar claims brought against state officials in their personal capacities. APPX.000025; *Hafer v. Melo*, 502 U.S. 21, 25-31 (1991).

amended complaint does not allege that Slippery Rock violated the PHRA. *Willis v. UPMC Children's Hospital of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015).

A plaintiff cannot state an aiding and abetting claim against an individual under the PHRA if the relevant employer did not violate the PHRA in the first place. *Wilkerson v. New Media Technology Charter School, Inc.*, 522 F.3d 315, 322-323 (3d Cir. 2008) (dismissing an "aiding and abetting claim" asserted against an individual because the relevant complaint did not state an underlying claim against an employer for failing to accommodate an employee's religious beliefs). Instead, a supervisory employee can only be held liable for aiding and abetting an unlawful form of discrimination or retaliation. *Com. of Pa., Pa. Human Relations Commission v. Transit Casualty Insurance Co.*, 387 A.2d 58, 63 (Pa. 1978) (explaining that a "non-employer" may be held "responsible" for certain losses caused by an "unlawful discriminatory practice"). Because no predicate PHRA violation is alleged in the amended complaint, this Court should summarily affirm the District Court's order dismissing Dr. Solano's claims against McCoy. *De Piero v. Pa. State University*, 769 F.Supp.3d 329, 356, n. 9 (E.D. Pa. 2025).

Even if the amended complaint had stated viable discrimination or retaliation claims against Slippery Rock, Dr. Solano's PHRA claims against McCoy would have still failed because the factual allegations against her do not suggest or imply that she did anything improper. After Dr. Nicholls filed a charge of discrimination

with the EEOC and submitted several internal complaints against Dr. Solano, McCoy allegedly conducted an investigation and determined that Dr. Solano had not violated Slippery Rock's Harassment and Discrimination Policy. APPX.37-39, ¶¶ 60-79. Describing Dr. Nicholls' complaints as "baseless," Dr. Solano accuses McCoy of conducting "frivolous investigations" into his conduct. APPX.40, ¶ 96. But McCoy obviously had an obligation to investigate Dr. Nicholls' allegations. If Dr. Nicholls' allegations of discrimination had been credible, McCoy could have potentially been sued under the PHRA for failing to investigate or prevent any discriminatory practices perpetrated by Dr. Solano. *Dici v. Com. of Pa.*, 91 F.3d 542, 552-553 (3d Cir. 1996). McCoy cannot be subjected to liability for simply doing her job. That is especially true in this case. After all, McCoy is the one who allegedly determined that Dr. Solano had done nothing wrong. APPX.39, ¶ 79.

In the portion of the amended complaint concerning the PHRA claims asserted against McCoy, Dr. Solano attempts to hold her responsible for canceling the election and transferring the Sport Management Program out of the Management Department. APPX.57-60, ¶¶ 274-277, 292-295, 308-311. But the amended complaint does not allege that McCoy played a role in either decision. The specific allegations against McCoy relate solely to her alleged investigatory conduct. APPX.39-40, ¶¶ 79, 96. To state a claim against McCoy, the amended complaint must plead factual content permitting a reasonable inference that she is liable for the

misconduct alleged. *Kalu v. Spaulding*, 113 F.4th 311, 341 (3d Cir. 2024). The amended complaint does not satisfy that standard. Because Dr. Solano does not properly allege that McCoy was involved in the specific decisions underpinning his discrimination and retaliation claims, the District Court's decision dismissing the PHRA claims asserted against McCoy should be affirmed without further inquiry. *Hassan v. Government of the Virgin Islands*, 861 F.3d 108, 116 (3d Cir. 2017) (rejecting "legal conclusions" contained in a complaint that "present[ed] no facts upon which such conclusions could be reached").

## CONCLUSION

For these reasons, this Court should affirm the District Court's judgment.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By: */s/ Anthony T. Kovalchick*

ANTHONY T. KOVALCHICK
Deputy Attorney General
Bar No. 89056 (Pa.)

DANIEL B. MULLEN
Chief Deputy Attorney General
Chief, Appellate Litigation Section

Office of Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222
Phone: (412) 565-2543
akovalchick@attorneygeneral.gov

DATE: May 14, 2026

## CERTIFICATE OF COUNSEL

I, Anthony T. Kovalchick, Deputy Attorney General, hereby certify as follows:

1. That I am a member of the bar of this Court.

2. That the text of the electronic version of this brief is identical to the text of the paper copies.

3. That a virus detection program was run on the file, and that no virus was detected.

4. That this brief contains 9,749 words within the meaning of Federal Rule of Appellate Procedure 32(a)(7)(B). In making this certificate, I have relied on the "word count" feature of the word-processing system used to prepare the brief.

*/s/ Anthony T. Kovalchick*

ANTHONY T. KOVALCHICK
Deputy Attorney General

## CERTIFICATE OF SERVICE

I, Anthony T. Kovalchick, Deputy Attorney General, hereby certify that I have electronically served the foregoing Brief for Appellees on the following counsel of record by means of the CM/ECF System:

Thomas M. Huber, Esquire
Lieber Hammer Huber & Paul, P.C.
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231
thuber@lhhb-law.com

James B. Lieber, Esquire
Lieber Hammer Huber & Paul, P.C.
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231
jlieber@lhhb-law.com

Jacob M. Simon, Esquire
Lieber Hammer Huber & Paul, P.C.
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231
jsimon@lhhb-law.com

Seven copies were also sent by first-class mail to the Clerk of the United States Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.

*/s/ Anthony T. Kovalchick*

ANTHONY T. KOVALCHICK
Deputy Attorney General

DATE: May 14, 2026