**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

Case No. 25-2796

---

ROGER SOLANO,

Appellant,

vs.

SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA and HOLLY MCCOY,

Appellees.

---

Appeal from the Order and Judgment of the U.S. District Court for the Western District of Pennsylvania entered on August 19, 2025 Granting Defendants'/Appellees' Motion to Dismiss

---

# APPELLANT'S REPLY BRIEF

---

LIEBER HAMMER HUBER PAUL & HOFFMAN, P.C.

James B. Lieber
Thomas M. Huber
Jacob M. Simon
1722 Murray Avenue, Second Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)
jlieber@lhhb-law.com
thuber@lhhb-law.com
jsimon@lhhb-law.com
Counsel for Appellant

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A. Dr. Nicholls's complaints regarding Dr. Solano were made in bad faith and do not constitute protected conduct . . . . . . . . . . . . . . . . . . . 1

B. The fact that Dr. Solano developed serious physiological and mental health problems as a consequence of the harassment indicates that it was objectively hostile or abusive . . . . . . . . . . . . . . . 4

C. The fact that Dr. Solano has not identified specific comparators does not mean that he cannot prove that he had suffered an adverse employment action. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D. Even if she was not Dr. Solano's supervisor, Dr. Nicholls exerted influence over the SRU Administration. . . . . . . . . . . . . . . . . . . . . . . . 9

E. Appellees' have minimized the impact of the adverse employment actions against Dr. Solano . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1. Appellees have improperly reduced the adverse employment action experienced by Dr. Solano to two adverse actions, ignoring the fact that he was exposed to a hostile work environment as well as the fact that the SRU administration appears to be pressuring him to leave. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

2. The apparent violation of University policy suggests discriminatory intent . . . . . . . . . . . . . . . . . . . . . . . 13

3. The fact that the Amended Complaint did not identify specific comparators is not fatal to Dr. Solano's discrimination claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

F. The SRU administration had constructive knowledge of ongoing

hostile work environment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

G. Appellees err when they argue that Dr. Solano's failure to plead how his disabilities could have been accommodated is fatal to his Rehabilitation Act and ADA claims. . . . . . . . . . . . . . . . . . . . . . . . . . 18

H. Dr. Solano can state a viable claim for retaliation. . . . . . . . . . . . . . . 20

1. Appellees' argument regarding "but for"causation is too narrow . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2. Dr. Nicholls's harassment went far beyond her formal complaints, and Dr. Solano's complaints about this harassment were protected. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

3. The fact that there has been pervasive animus against Dr. Solano suggests that there is a causal link between the cancellation of the department chair election and his complaints regarding Dr. Nicholls. . . . . . . . . . . . . . . . . . . 22

I. Dr. Solano's ADA claims against SRU are not barred by the Eleventh Amendment because he could have been granted prospective injunctive relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

J. Ms. McCoy's failure to take action when presented with evidence of the ongoing harassment constituted a violation of the PHRA . . . 26

II. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

COMBINED CERTIFICATIONS

# TABLE OF CITATIONS

## Cases

*Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265 (3d Cir. 2001) . . . . . . . . . . 13

*Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990) . . . . . . . . . . 13

*Antol v. Perry*, 82 F.3d 1291 (3d Cir. 1996). . . . . . . . . . 13

*Banks v. Gen. Motors*, LLC, 81 F.4th 242 (2d Cir. 2023) . . . . . . . . . . 5

*Bostock v. Clayton County, Ga.,* 590 U.S. 644 (2020). . . . . . . . . . 20, 21

*Burrage v. United States*, 571 U.S. 204 (2014) . . . . . . . . . . 20, 21

*Cardenas v. Massey*, 269 F.3d 251 (3d Cir. 2001). . . . . . . . . . 12

*Castleberry v. STI Group*, 863 F.3d 259 (3d Cir. 2017) . . . . . . . . . . 24

*Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001). . . . . . . . . . 9

*Colgan v. Fisher Sci. Co.*, 935 F.2d 1407 (3d Cir. 1991) . . . . . . . . . . 13

*Crawford v. Met. Gov't of Nashville & Davidson County*, 555 U.S. 271 (2009) . . . . . . . . . . 3

*Daniels v. School Dist. of Phila.*, 776 F.3d 181 (3d Cir. 2015) . . . . . . . . . . 12

*Dici v. Pennsylvania,* 91 F.3d 542 (3d Cir. 1996) . . . . . . . . . . 27

*Doe v. Pennridge School Dist.*, 413 F.Supp.3d 393 (E.D. Pa. 2019). . . . . . . . . . 7

*Doe v. Triangle Doughnuts, LLC*, 472 F.Supp.3d 115 (E.D. Pa. 2020). . . . . . . . . . 19

*Douglas v. Kensington Cmty. Corp. for Individual Dignity*, 775 F.Supp.3d 881 (E.D. Pa. 2025) . . . . . . . . . . 19

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000) . . . . . . . . . . . . . . 22

*Fogelman v. Greater Hazelton Health Alliance*, 122 Fed.Appx. 581 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . 15

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hayberger v. Lawrence County Adult Probation & Parole,* 551 F.3d 193 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hollinghead v. City of York*, 912 F.Supp.2d 209 (M.D. Pa. 2012) . . . . . . . . . . . . 27

*Jensen v. Potter*, 435 F.3d 444 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jones v. Pa. State Police*, 794 Fed.Appx. 177 (3d Cir. 2019) . . . . . . . . . . . . . . . . . 5

*Kachmar v. SunGuard Data Sys., Inc.*, 109 F.3d 173 (3d Cir.1997) . . . . . . . . 22, 23

*Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Kendall v. Postmaster General of U.S.*, 543 Fed.Appx. 141 (3d Cir. 2013) . . . 2, 21

*Kissell v. Am. Fed. of State, County, & Mun. Employees, Dist. Council 84*, 90 Fed.Appx. 620 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161 (3d Cir. 2002) . . . 24, 26

*Kunin v. Sears Roebuck & Co.*, 175 F.3d 289 (3d Cir. 1999) . . . . . . . . . . . . . . . . 16

*L.L. v. Evesham Township Bd. of Educ.*, 710 Fed.Appx. 545 (3d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lula v. Network Appliance, Inc.*, 245 Fed.Appx. 149 (3d Cir. 2007) . . . . . . . . . . 26

*Martinez v. UPMC Susquehanna*, 986 F.3d 261 (3d Cir. 2021) . . . . . . . . . . . . . 15

*Mattison v. Caterpiller, Inc.*, 359 F.3d 885 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . 2

*Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57 (1986) . . . . . . . . . . . . . . . . . . . . . . 7

*Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206 (3d Cir. 2017) . . . . . . . . . . . . 7, 9, 11

*Moore v. City of Philadelphia*, 461 F.3d 331 (3d Cir. 2006) . . . . . . . . . . . . . . . . . 16

*N.L.R.B. v. Yeshiva Univ.*, 444 U.S. 672 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) . . . . . . . . . . . . . . . . 12

*Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75 (1998). . . . . . . . . . . . . . . . 7

*Peifer v. Bd. of Probation & Parole,* 106 F.4th 270 (3d Cir. 2024) . . . . . . . . . . . . 8

*Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344 (3d Cir. 1999) . . . . . . . . . . . . . . . 14

*Shiring v. Runyon*, 90 F.3d 827 (3d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Slagle v. County of Clarion*, 435 F.3d 262 (3d Cir. 2006) . . . . . . . . . . . . . . . . . 2, 21

*Sofia v. McWilliams*, No. CIV.A. 01–5394, 2003 WL 1818414
(E.D. Pa. Mar. 31, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Turner v. Hershey Chocolate U.S.*, 440 F.3d 604 (3d Cir. 2006) . . . . . . . . . . . . . 19

*Twilie v. Erie School Dist.*, 575 Fed.Appx. 28 (3d Cir. 2014) . . . . . . . . . . . . . 19, 20

*United States v. Maury*, 695 F.3d 227 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Thornton*, 306 F.3d 1355 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . 4

*Vance v. Ball State Univ.,* 570 U.S. 421 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Villa v. CavaMezze Grill, LLC*, 858 F.3d 896 (4th Cir. 2017) . . . . . . . . . . . . . . . . . 4

*Zimmerman v. Cook County Sheriff's Dep't*, 96 F.3d 1017 (7th Cir.1996) . . . . . . 16

**Other Authorities**

FED. R. CIV. PROC. 54(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# I. ARGUMENT

Appellant Roger Solano ("Dr. Solano") respectfully requests that this Court reverse the District Court's Order granting the Motion to Dismiss filed by Appellees Slippery Rock University ("SRU") and Holly McCoy ("Ms. McCoy"). Dr. Solano further requests that this Court remand the case back to the District Court for discovery.[1]

## A. Dr. Nicholls's complaints regarding Dr. Solano were made in bad faith and do not constitute protected conduct.

Appellees argue that the complaints made by Jeannine Nicholls ("Dr. Nicholls") cannot give rise to a viable retaliation claim because they themselves constitute protected action. This presupposes that these complaints were protected activities. The Amended Complaint avers that Dr. Nicholls made her complaints in bad faith. On at least two occasions her accusations against Dr. Solano were founded on false statements. *See* Appx.36, ¶¶44-45 ("[i]n another instance, Dr. Nicholls accused Dr. Solano of blocking a curriculum change. This accusation was spurious and false: Dr. Solano did not even attend the faculty meeting during which the curricular change was discussed."). *See also* Appx.39, ¶75 ("Dr. Nicholls circulated spurious rumors that Dr. Solano made inappropriate comments at work, including inappropriate comments

---

[1] Appellant incorporates the statement of facts contained in his Principle Brief as if set forth at length herein.

about women.”). This Court has consistently held that, to constitute protected conduct, a discrimination complaint must be made in good faith. *See e.g. Slagle v. County of Clarion*, 435 F.3d 262, 268 (3d Cir. 2006) (a facially invalid discrimination complaint does not constitute protected conduct under Title VII); *Kendall v. Postmaster General of U.S.*, 543 Fed.Appx. 141, 144 (3d Cir. 2013) (“[t]he 2007 EEO Charge was facially invalid, and therefore insufficient to constitute protected activity, because at no time did [plaintiff] complain of discrimination or retaliation on the basis of disability or any other status protected by the federal antidiscrimination statutes. We agree. Although the filing of an EEO Charge is normally protected activity under the participation clause, under the circumstances presented here, it is not.”) (internal citations omitted).

The facts as set forth in the Amended Complaint suggest that Dr. Nicholls made her complaints about Dr. Solano in bad faith. Whether a complaint has been made in bad faith requires examination of whether the complainant had an objectively reasonable belief that the complained-of actions violated federal law. *See e.g. Fogelman v. Greater Hazelton Health Alliance*, 122 Fed.Appx. 581, 583 (3d Cir. 2004); *Kissell v. Am. Fed. of State, County, & Mun. Employees, Dist. Council 84*, 90 Fed.Appx. 620, 622 (3d Cir. 2004). This is especially true if the underlying complaint was malicious. *See e.g. Mattison v. Caterpiller, Inc.*, 359 F.3d 885, 891 (7th Cir. 2004)

("...the same threshold standard should apply to both opposition and participation clause cases. That is, the claims must not be utterly baseless. Were we to adopt a different standard, an employee could immunize his unreasonable and malicious internal complaints simply by filing a discrimination complaint with a government agency. Similarly, an employee could assure himself unlimited tenure by filing continuous complaints with the government agency if he fears that his employer will discover his duplicitous behavior at the workplace."). Appellees' argument that Dr. Nicholls's complaints cannot serve as the basis of retaliation can be readily discounted because her complaints are not protected.

In support of their argument that Dr. Nicholls's complaints were protected and thus could not constitute retaliation Appellees cite to *Crawford v. Met. Gov't of Nashville & Davidson County*, 555 U.S. 271 (2009). In that case, the U.S. Supreme Court held that, in general, statements opposing discriminatory conduct are protected. *Id.* at 276-80. However, the Court left open the possibility that some complaints would not, due to their unusual nature, constitute protected conduct. *Id.* at 276-7 ("[i]t is true that one can imagine exceptions [to the underlying rule], like an employee's description of a supervisor's racist joke as hilarious, but these will be eccentric cases..."). This does not foreclose Dr. Solano's argument that Dr. Nicholls's bad faith complaints were not protected. He was ultimately cleared of any wrongdoing. *See*

Appx.38, ¶71 ("[t]he aforementioned investigation was completed by another SRU administrator who found that Dr. Solano did not commit any malfeasance; nevertheless, this explanation did not satisfy Dr. Nicholls nor end her efforts to persecute Dr. Solano."). False statements do not constitute protected conduct. *See e.g. Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017)[2] ("[t]he opposition clause does not protect the making of a knowingly false allegation."). Hence, Dr. Nicholls's complaints were not protected, and this Court can disregard Appellees' argument that they cannot be retaliatory.

**B. The fact that Dr. Solano developed serious physiological and mental health problems as a consequence of the harassment indicates that it was objectively hostile or abusive.**

Aside from Dr. Nicholls's discrimination complaints, the retaliatory actions against Dr. Solano also consisted of the continual investigations to which he was subjected. *See e.g.* Appx.40, ¶¶93-5 ("[t]he pretextual nature of Dr. Nicholls's complaints–and the administration's continual entertainment of these accusations–masked sexist and homophobic animus towards Dr. Solano. The constant

---

[2] Appellees criticize the fact that Appellant's Principal Brief relies on case law from outside of this Circuit. Even if they are not binding, the decisions of other circuit courts of appeal have persuasive value. *See e.g. United States v. Maury*, 695 F.3d 227, 259 n.27 (3d Cir. 2012). Moreover, this Court itself has cited to decisions from other circuit courts in its own opinions. *See e.g. United States v. Thornton*, 306 F.3d 1355, 1357 (3d Cir. 2002).

harassment has negatively impacted upon Dr. Solano's mental and physical health. The hostile work environment constitutes an adverse employment action/treatment.").

This constant scrutiny had a profound, negative impact on his health. *Id.* In their Brief, Appellees argue that Dr. Solano did not suffer from a hostile work environment because an objectively reasonable person would not view his work environment as hostile. However, this Court–along with trial courts in this Circuit–have held that evidence of physical illness that arose as a consequence of harassment is relevant in a hostile work environment case. *See e.g. Jones v. Pa. State Police*, 794 Fed.Appx. 177, 180 (3d Cir. 2019). Appellate courts in other Circuits have also concluded that physiological symptoms may also serve as an indicator that a work environment is objectively hostile. *See e.g. Banks v. Gen. Motors, LLC*, 81 F.4th 242, 268 (2d Cir. 2023) ("[t]here is ample evidence from which a reasonable jury could conclude that [plaintiff] found the [work environment] to be hostile and abusive. Given that [plaintiff] took multiple medical leaves, sought psychological treatment, and was prescribed anti-anxiety medication to cope with the stress and anxiety she incurred from the discriminatory harassment, it was error for the district court to minimize [plaintiff's] suffering and characterize it merely as 'stress.' Instead, we conclude that a reasonable jury could find that [plaintiff] suffered concrete psychological harm or, at the very least, that she perceived her working environment

to be hostile in a manner that changed her working conditions.”).

The averments set forth in the Amended Complaint indicate that Dr. Solano was experiencing extreme psychological stress as a result of the way he was being treated by his colleagues and by SRU administrators. *See* Appx.43, ¶¶123-4 (“[t]he mounting stress had created vision problems that Dr. Solano was ultimately able to obtain treatment for. To mitigate his depressive symptoms Dr. Solano has been prescribed powerful antidepressant medications by his physician.”). *See also* Appx.53, ¶¶228-30 (“Dr. Solano suffers from, and has been treated for, severe depression and anxiety. Dr. Solano’s mental condition is manifesting itself in the form of anhedonia, insomnia, poor appetite, anxiety, fatigue, and lack of energy. On account of his worsening medical condition Dr. Solano’s physicians have been prescribing him powerful anti-depressant medications.”). The Supreme Court clarified that psychiatric problems may be indicative of a hostile work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) (“Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees’ psychological well-being, can and often will detract from employees’ job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.”).

A court looking to determine whether a hostile work environment exists must

look "...at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 215 (3d Cir. 2017) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Ultimately, whether a hostile work environment exists is a question of fact that should be resolved by the jury. *See e.g. Doe v. Pennridge School Dist.*, 413 F.Supp.3d 393, 405 (E.D. Pa. 2019) (leaving to the jury whether harassment was "severe and pervasive"). This relies on a close consideration of the context in which the harassing conduct was made. *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998) ("[w]e have emphasized...that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' In same-sex (as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target.") (internal citations omitted). Contrary to Appellees' arguments, the Amended Complaint pled sufficient facts to indicate that the harassment of Dr. Solano was severe and pervasive.

### C. The fact that Dr. Solano has not identified specific comparators does not mean that he cannot prove that he had suffered an adverse employment action.

In their Response Brief, Appellees argue that the cancellation of the election for department chair as well as the reorganization of SRU's departmental structure do not constitute adverse employment actions. In so doing Appellees look to a narrow definition of "adverse employment action." This Court recently emphasized that, if a plaintiff can demonstrate at least "some employment related harm" then he has adequately pled the existence of an adverse employment action. *See Peifer v. Bd. of Probation & Parole*, 106 F.4th 270, 277 (3d Cir. 2024). In their Brief, Appellees appear to concede that, since Dr. Solano lost compensation as a consequence of the departmental reorganization, that he might have suffered an adverse employment action. However, they argue that he cannot prove that this adverse action was precipitated by his race and/or national origin.

Appellees argue that SRU administrators were unaware of the ongoing harassment of Dr. Solano and characterize his complaints to Human Resources Officer McCoy as mere petty complaints. This understates the demonstrably strained relationship that developed between Dr. Solano and Dr. Nicholls. Appx.35, ¶37 ("[o]ther faculty and administrators at SRU noticed the strained relationship between Dr. Solano and Dr. Nicholls."). Dr. Solano complained that this tension was

negatively affecting department operations. Appx.35, ¶42 ("Dr. Solano raised complaints with the SRU Human Resources Department that Dr. Nicholls's behavior was adversely affecting both him and the Department as a whole."). As was set forth above, the constant scrutiny and harassment was having a negative impact on Dr. Solano's mental and physical health. Appx.40, ¶94. The negative effects that Dr. Solano was experiencing as a consequence of this treatment point towards the fact that he was subjected to a hostile work environment. *Moody*, 870 F.3d at 215 (quoting *Clark County School Dist. v. Breeden,* 532 U.S. 268, 270-1 (2001) ("[t]he question of 'whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"). Because Dr. Solano complained to the SRU administration that the harassment was negatively affecting both himself and the Department, a fact finder could conclude that the complaints made by Dr. Solano went beyond mere petty complaints but rather constitute complaints to management regarding a hostile work environment.

### D. Even if she was not Dr. Solano's supervisor, Dr. Nicholls exerted influence over the SRU Administration.

Appellees also argue that Dr. Nicholls was not Dr. Solano's immediate

supervisor and, as such, could not have any authority over any discriminatory action against him. This ignores the fact that Dr. Nicholls, as a voting member of the Department, had significant influence over department business.[3] Appx.34; ¶31 ("[a]s a voting member of the Department Dr. Nicholls has input over hiring decisions within the Management and Marketing Department, and as such holds significant influence over departmental personnel and staffing decisions."). She was also a member of the department and University promotions committees. Appx.34, ¶32. Colleges and universities are distinguished by managerial governance that is shared by faculty/employees and administrators. *See e.g. N.L.R.B. v. Yeshiva Univ.*, 444 U.S. 672, 686 (1980) (university faculty "...exercise authority which in any other context unquestionably would be managerial. Their authority in academic matters is absolute. They decide what courses will be offered, when they will be scheduled, and to whom they will be taught. They debate and determine teaching methods, grading policies, and matriculation standards. They effectively decide which students will be admitted, retained, and graduated. On occasion their views have determined the size of the student body, the tuition to be charged, and the location of a school. When one

[3] Importantly, Dr. Nicholls's harassment of Dr. Solano led to others within the Department also engaging in similar harassment. Appx.39, ¶77 ("Dr. Nicholls's continued attacks on Dr. Solano have made him the target of enmity and attack from his colleagues at SRU.").

considers the function of a university, it is difficult to imagine decisions more managerial than these."). As a voting member of the Department Dr. Nicholls had some authority over Dr. Solano's work and work environment and could be one of his supervisors. *See e.g. Moody*, 870 F.3d at 216 n.14 (finding that foreman could have served as plaintiff's supervisor because he had the authority to assign her work and holding that an employee could have multiple supervisors). Ultimately, whether Dr. Nicholls could be classified as a supervisor is a question of fact that should not have been addressed at this preliminary stage. *See e.g. Sofia v. McWilliams*, No. CIV.A. 01–5394, 2003 WL 1818414, at *7 (E.D. Pa. Mar. 31, 2003) ("[d]rawing the line between co-employee and supervisor is a fact-intensive inquiry in which the fact-finder must analyze the defendant employee's power over the plaintiff's work situation."). Therefore, the District Court erred in granting the Motion to Dismiss, and this case should be remanded back to that court for further proceedings.

**E. Appellees' have minimized the impact of the adverse employment actions against Dr. Solano.**

**1. Appellees have improperly reduced the adverse employment action experienced by Dr. Solano to two adverse actions, ignoring the fact that he was exposed to a hostile work environment as well as the fact that the SRU administration appears to be pressuring him to leave.**

In their Response Brief, Appellees reduce the adverse actions against Dr. Solano to two acts: the cancellation of the election for department chair and the

department reorganization. This reduction is flawed for two reasons. First, it ignores the fact that the hostile work environment at issue here remains ongoing. A hostile work environment is the cumulative result of multiple discrete actions. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."). The creation of a hostile work environment constitutes an adverse employment action. *See e.g. Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001) (finding that ongoing harassment could give rise to a discrimination claim). *See also Daniels v. School Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015) (finding the adverse employment action constitutes an adverse employment action). Focusing on only two events appears to ignore the totality of the hostile work environment.

Moreover, the Appellees' Response Brief takes these events outs of context. The Amended Complaint avers that the SRU administration was in a campaign to isolate Dr. Solano with the apparent goal of forcing him out of the faculty. *See* Appx.44, ¶130. Furthermore, actions against Dr. Solano have isolated him within the Department. Appx.44, ¶¶133-4. This Court has emphasized that context is paramount

in discrimination cases. *See e.g. Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990)) ("[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario."). A fact-finder could conclude that a desired result of both the election nullification and the department reorganization would be the departure of Dr. Solano and conclude that it was part of a larger campaign of discrimination.

**2. The apparent violation of University policy suggests discriminatory intent.**

One of the critical aspect that the Appellees' Response Brief is the irregular nature of the cancellation of the election for department chair. The Amended Complaint avers that the cancellation of the election for department chair is a "rare development." Appx.41,¶102. The non-normative nature of the cancellation suggests that University policies have been violated with respect to the cancellation. A violation of internal policies or procedures suggests pretext for discrimination. *See e.g. Colgan v. Fisher Sci. Co.*, 935 F.2d 1407, 1422-3 (3d Cir. 1991) (fact that employer breached its own internal procedures with respect to the evaluation of plaintiff supported claim that the employer engaged in discrimination). *See also Antol v. Perry*, 82 F.3d 1291, 1301 (3d Cir. 1996) ("[t]he Agency's failure to adhere to its

own rules is evidence of discriminatory intent.”). The fact that the administration intervened in a department election is not dispositive. Rather, it is the fact that it went out of its way–in apparent violation of its own internal procedures–to intervene in the election that suggests discriminatory intent. Additional discovery could have led to additional instances in which the administration violated its own procedures to the apparent detriment of Dr. Solano. Therefore, the case should not have been dismissed but should have been allowed to proceed to discovery.

**3. The fact that the Amended Complaint did not identify specific comparators is not fatal to Dr. Solano’s discrimination claims.**

In their Response Brief, Appellees appear to argue that the Amended Complaint’s failure to identify specific comparators is fatal to Dr. Solano’s discrimination claims. However, contrary to Appellees’ arguments, a supposed failure to identify comparators is not fatal to those claims. *See e.g. Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 354 (3d Cir. 1999) (“[t]he fact that a female plaintiff claiming gender discrimination was replaced by another woman might have some evidentiary force, and it would be prudent for a plaintiff in this situation to counter (or explain) such evidence. But this fact does not, as a matter of law or logic, foreclose the plaintiff from proving that the employer was motivated by her gender (or other protected characteristic) when it discharged her.”). This Court has held that a discrimination complaint need only plead “how, when, and where” an employer

discriminated against an employee. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009). A complaint need not provide specific details regarding comparators in order to survive a motion to dismiss. *See e.g. Martinez v. UPMC Susquehanna*, 986 F.3d 261, 267 (3d Cir. 2021) ("[t]he factual allegations in [plaintiff's] complaint state the heart of a prima facie case. The complaint says he is over forty, he is qualified for the job, and he was fired and not rehired. It also alleges that his replacements were not only 'significantly younger,' but also less qualified and experienced."). *See also L.L. v. Evesham Township Bd. of Educ.*, 710 Fed.Appx. 545, 548 (3d Cir. 2017) ("...the District Court concluded that plaintiffs could not establish a prima facie claim because they failed to identify any comparators—similarly situated non-African-American students—who were treated differently from plaintiffs. This was error."). In this case Dr. Solano's Amended Complaint avers that similarly situated faculty outside of his protected classifications were treated more favorably. *See* Appx.46, ¶154; Appx.47, ¶170. The Amended Complaint thus avers the existence of potential comparators. Details regarding these comparators can be uncovered during the discovery process. *See Martinez,* 986 F.3d at 267 ("[t]he court at summary judgment—and ultimately, perhaps, the jury at trial—can decide whether the age differences give rise to an inference of discrimination and whether the alleged replacements are relevant comparators."). Appellees' arguments regarding

comparators may be discounted by this Court.

**F. The SRU administration had constructive knowledge of ongoing hostile work environment.**

The Appellees argue that they cannot be liable for Dr. Nicholls's harassment of Dr. Solano because they did not have proper notice of the harassment and because Dr. Nicholls was not a supervisor. With respect to the former argument, this Court has held that there is "...a basis for liability where supervisors 'knew or should have known about the [co-worker] harassment, but failed to take prompt and adequate remedial action' to stop the abuse." *Moore v. City of Philadelphia*, 461 F.3d 331, 349 (3d Cir. 2006) (quoting *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)). Constructive notice of harassment can be imputed to an employer in instances where "...an employee provides management level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer, or where the harassment is so pervasive and open that a reasonable employer would have had to be aware of it." *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 294 (3d Cir. 1999) (citing *Zimmerman v. Cook County Sheriff's Dep't*, 96 F.3d 1017, 1018–19 (7th Cir.1996)).

Appellant submits that the SRU administration should have had constructive knowledge about the harassment. The Amended Complaint avers that the harassment was so pervasive that it was impacting upon department operations. Appx.35, ¶42

("Dr. Solano raised complaints with the SRU Human Resources Department that Dr. Nicholls's behavior was adversely affecting both him and the Department as a whole."). The Amended Complaint further avers that, even though Dr. Solano raised concerns to the SRU administration regarding the ongoing adverse treatment, the administration took no concrete steps in order to prevent further harassment. Appx.40, ¶¶87-8 ("Dr. Solano had complained about Dr. Nicholls's behavior to SRU administrators, but the University administration took no steps to end the barrage of hostility. To the contrary, SRU administrators condoned Dr. Nicholls's campaign of harassment against Dr. Solano."). In fact, he was dissuaded by senior administrators from pursuing further action on this matter. Appx.41, ¶97 ("Dr. Solano attempted to raise concerns regarding the ongoing harassment that he has been experiencing with the SRU Provost, Michael Zeig, but was cautioned against doing so by SRU administrators."). The Amended Complaint thus avers that SRU was negligent in failing to remedy the hostile work environment engendered by Dr. Nicholls and her allies. SRU may be liable for this negligence. *See e.g. Vance v. Ball State Univ.*, 570 U.S. 421, 448-9 (2013) ("[a]ssuming that a harasser is not a supervisor, a plaintiff could still prevail by showing that his or her employer was negligent in failing to prevent harassment from taking place. Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering

complaints, or effectively discouraged complaints from being filed would be relevant.”).

## G. Appellees err when they argue that Dr. Solano’s failure to plead how his disabilities could have been accommodated is fatal to his Rehabilitation Act and ADA claims.

In his Amended Complaint Dr. Solano raised disability discrimination claims under the Rehabilitation Act and the Americans with Disabilities Act (“ADA”). Appx.53-6, ¶¶225-266. These were related to SRU’s failure to accommodate the mental and physical health problems resulting from the constant harassment. Appx.53, ¶¶228-9; Appx.55, ¶¶248-9. Appellees argue that the supposed failure on the part of Dr. Solano to explain how his disabilities could have been accommodated is fatal to his disability claims. This argument is flawed. First, the Amended Complaint suggests that one way the SRU administration could have accommodated Dr. Solano is by taking active steps to stop the ongoing harassment. Appx.53, ¶235 (“SRU administrators were fully aware of the ongoing harassment of Dr. Solano yet did nothing to stop it.”); Appx.55, ¶255. Secondly, and more importantly, an ADA plaintiff need not explain how his/her disabilities could have been accommodated at the pleading stage. At this stage Dr. Solano only needed to plead that “reasonable accommodation is possible.” *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996). Lower federal courts in this Circuit have stressed that, to survive a motion to dismiss,

an ADA/Rehabilitation Act plaintiff "...need not [affirmatively] plead each prima facie element, but rather must simply state facts sufficient to indicate that discovery can reasonably be expected to lead to evidence satisfying the claim's elements." *Doe v. Triangle Doughnuts, LLC*, 472 F.Supp.3d 115, 137 (E.D. Pa. 2020). Whether a particular accommodation is reasonable is a question of fact. *See Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 614 (3d Cir. 2006) ("...the issue of 'reasonable accommodation' presents a fact question."). *See also Douglas v. Kensington Cmty. Corp. for Individual Dignity*, 775 F.Supp.3d 881, 894 (E.D. Pa. 2025) ("[d]etermining whether a particular accommodation is reasonable and whether a defendant could provide it without undue hardship 'are factual inquiries that are not properly decided in the context of a motion to dismiss....'"). At this stage, Dr. Solano only had to set forth that accommodation was possible. By averring that an end to the harassment would have served to ease his condition, Dr. Solano suggested that accommodation was possible, and the lower court should not have dismissed the Amended Complaint. *Doe*, 472 F.Supp.3d at 137.

In support of their argument Appellees cite to *Twilie v. Erie School Dist.*, 575 Fed.Appx. 28 (3d Cir. 2014). That case is not on point. In *Twilie*, plaintiff's complaint merely indicated that the employer violated the ADA, but failed to give any specifics. *Id.* at 32 ("[e]ven assuming that [plaintiff] is disabled within the meaning

of the ADA...she did not allege any specific acts or conduct in the second amended complaint which suggest that the Defendants failed to reasonably accommodate her disability.”). In contrast to the complaint in *Twilie*, the Amended Complaint does suggest that, by stopping the ongoing harassment and hostility, Dr. Solano’s mental and physical health problems could have been accommodated. Appx.53, ¶235; Appx.55, ¶255. Therefore, the District Court erred in dismissing the ADA and Rehabilitation Act claims.

**H. Dr. Solano can state a viable claim for retaliation.**

**1. Appellees’ argument regarding “but for”causation is too narrow.**

In their Response Brief Appellees argue that Dr. Solano failed to plead that his complaints about the harassment was a “but for” cause of the subsequent adverse actions. In so doing they appear to argue that “but for” causation means that Dr. Solano’s protected actions had to be the sole motivating factor for the adverse action. This is an overly narrow reading of “but for” causation. The Supreme Court has held that an adverse employment action may have multiple “but for” causes. *Bostock v. Clayton County, Ga.*, 590 U.S. 644, 656 (2020) (citing *Burrage v. United States*, 571 U.S. 204, 211–212 (2014)) (“[o]ften, events have multiple but-for causes. So, for example, if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a

but-for cause of the collision."). Here, the Amended Complaint sets forth that the harassment by Dr. Nicholls had a ripple effect that influenced the totality of the Department. Appx.35, ¶42; Appx.39, ¶77. A fact finder could conclude that any decision negatively impacting upon Dr. Solano was influenced, at least in part, by the harassment from Dr. Nicholls. Therefore, her harassment could have been one of multiple "but for" causes of the retaliatory action. *Bostock*, 590 U.S. at 656 (citing *Burrage*, 571 U.S. at 211–212)

**2. Dr. Nicholls's harassment went far beyond her formal complaints, and Dr. Solano's complaints about this harassment were protected.**

In their Response Brief, Appellees argue that the complained-of homophobic harassment on the part of Dr. Nicholls consisted only of her formal complaints that Dr. Solano favored younger male faculty. This grossly understates the scope of the harassing behavior. Dr. Nicholls complained about Dr. Solano's oversight of the Department, falsely accusing him of malfeasance. Appx.35-6, ¶¶36-8, 43-7. This criticism was restricted to Dr. Solano, and Dr. Nicholls did not make similar complaints regarding heterosexual faculty. Appx.36, ¶49. Contrary to Appellees' arguments, not all of these complaints were incorporated into any formal complaint made by Dr. Nicholls. Even if they were, to the extent to which they were brought in bad faith they were not themselves protected. *Slagle*, 435 F.3d at 268; *Kendall*, 543 Fed.Appx. at 144. Therefore, this Court should reject the argument that Dr. Nicholls's

complaints were narrowly tailored and protected.

**3. The fact that there has been pervasive animus against Dr. Solano suggests that there is a causal link between the cancellation of the department chair election and his complaints regarding Dr. Nicholls.**

The Amended Complaint sets forth that the hostility towards Dr. Solano extended far beyond Dr. Nicholls and reached the University administration. This is best exemplified by the fact that Dr. Solano was counseled against further pressing his complaints against Dr. Nicholls. Appx.41, ¶¶97-8 ("Dr. Solano attempted to raise concerns regarding the ongoing harassment that he has been experiencing with the SRU Provost, Michael Zeig, but was cautioned against doing so by SRU administrators. The ongoing harassment of Dr. Solano has mushroomed into a larger campaign against him."). The Amended Complaint thus paints a picture of ongoing antagonism towards Dr. Solano. This Court has held that, with respect to retaliation claims, questions of causation are primarily factual and may be illustrated by a pattern of ongoing antagonism. *See e.g. Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGuard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir.1997)) ("[w]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference [of causation]" but "[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.").

As was stated above, Dr. Nicholls made vague accusations of misconduct and malfeasance against Dr. Solano. Appx.35, ¶¶41-5. These accusations were seemingly echoed by the SRU administration when it decided to cancel the election for department chair. Appx.41, ¶¶99-101 ("[i]n January 2024, a reorganization of separate departments in the SRU College of Business led to the formation of the Department of Finance, Accounting, Marketing, and Economics ('FAME') and the Management Department. On February 1, 2024, Dr. Solano was one of two candidates for the chair of the newly merged Management Department. The voting was scheduled to close at midnight on February 1, 2024; four hours before the vote was scheduled to close, **SRU cancelled the election based on unfounded and false claims that the ballots were not secret**.") (emphasis added). The administration took this action when it became clear that Dr. Solano was winning. Appx.41, ¶106 ("SRU administrators nullified the aforementioned election when it became clear that Dr. Solano was winning."). Thus, a factual question arises as to whether Dr. Nicholls's accusations regarding Dr. Solano's trustworthiness led to the election nullification and the department reorganization. Causation is a factual issue that is dependent upon context. *Kachmar*, 109 F.3d at 178 ("[t]he element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific."). A fact finder could conclude that the animus generated by Dr. Nicholls and her allies

within SRU tarred Dr. Solano and led to his increasing marginalization within the University. Therefore, the District Court erred in dismissing the case. Surely, given the longstanding pattern of tolerated harassment of this double minority employee culminating in a bizarre cancelled election should have led to discovery and a proper resolution on summary judgment or beyond. *See e.g. Castleberry v. STI Group*, 863 F.3d 259, 266 (3d Cir. 2017) (remanding case where plaintiff pled a hostile work environment).

## I. Dr. Solano's ADA claims against SRU are not barred by the Eleventh Amendment because he could have been granted prospective injunctive relief.

Appellees raise the argument that Dr. Solano's ADA claims are barred by Eleventh Amendment sovereign immunity.[4] However, they do concede that Dr. Solano could have been awarded prospective injunctive relief for violations of the ADA. This court has acknowledged that "...federal ADA claims for prospective injunctive relief against state officials are authorized by the *Ex parte Young* doctrine." *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 179 (3d Cir. 2002). Dr. Solano submits that, since the District Court should have compelled prospective injunctive relief, his ADA claims are not barred by the Eleventh Amendment. In the

---

[4] SRU's receipt of federal funds constitutes a waiver of Eleventh Amendment immunity for purposes of the Rehabilitation Act. *Hayberger v. Lawrence County Adult Probation & Parole*, 551 F.3d 193, 200 (3d Cir. 2008).

*ad damnum* clause for his ADA claim Dr. Solano sought "all remedies and damages permitted under the ADA." Appx.56, ¶266. The fact that the clause did not specifically mention prospective injunctive relief does not necessarily mean that it cannot be awarded.

Under the Federal Rules of Civil Procedure, a court may "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." FED. R. CIV. PROC. 54(c). Accordingly, this Court has held that a plaintiff may be granted injunctive relief even if it is not directly requested in the underlying complaint. In *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir. 1970), plaintiff's complaint did not specifically request equitable relief, only making a general request for "further relief as may be just." *Id.* at 174. Even though the complaint did not specifically request injunctive relief, this Court nevertheless found that such relief may be awarded. *Id.* ("[n]onetheless, under Rule 54(c) of the Federal Rules of Civil Procedure, a court may have awarded any relief appropriate under the circumstances. Plaintiff's 10(b) suit would not have been dismissed even though the complaint did not request injunctive relief, if a cause of action for injunctive relief were in fact inherent in the complaint.") (internal citations omitted). Even if monetary damages are unavailable to Dr. Solano, the Appellees cannot dispute that an award of prospective injunctive relief is not proscribed by the Eleventh Amendment. *Koslow*,

302 F.3d at 179. In light of the fact that the District Court could have awarded Dr. Solano prospective injunctive relief–possibly in the form of barring further harassment–the Amended Complaint should not have been dismissed. *Kahan*, 424 F.3d at 174.

**J. Ms. McCoy's failure to take action when presented with evidence of the ongoing harassment constituted a violation of the PHRA.**[5]

Finally, Appellees argue that the PHRA claims against Ms. McCoy fail because the Amended Complaint fails to set forth what specific actions she took against Dr. Solano. They note that, by investigating Dr. Nicholls's complaints, Ms. McCoy was merely doing her job as Human Resources Director. This ignores the fact that she did little, if anything, with respect to the complaints made by Dr. Solano. He complained about–or attempted to complain about–the ongoing hostility that he was experiencing. Appx.41, ¶97. However, no corrective action was taken by Ms. McCoy. Appx.43, ¶¶127-128 ("[e]ven though she was aware of the continual harassment of Dr. Solano, Ms. McCoy failed to protect him from further harassment. To the contrary, Ms.

[5] Appellees argue that Dr. Solano's PHRA claims must fail because, per their argument, his underlying Title VII and ADEA claims also fail. Appellant concedes that employment discrimination claims under the PHRA are subject to the same analytic framework as Title VII and ADEA claims. *See e.g. Lula v. Network Appliance, Inc.*, 245 Fed.Appx. 149, 151 n.2 (3d Cir. 2007). Therefore, to the extent to which his federal discrimination claims are viable, Dr. Solano's claims under the PHRA should be viable as well.

McCoy served to facilitate the continued harassment of Dr. Solano."); Appx.44, ¶137 ("SRU and Ms. McCoy know that a hostile work environment exists against Dr. Solano, have fostered it, and have done nothing to curtail it."). The Amended Complaint thus pleads that Ms. McCoy failed to act. A failure to take remedial action may constitute aiding and abetting under the PHRA. *See Dici v. Pennsylvania*, 91 F.3d 542, 553 (3d Cir. 1996) ("'[a]lthough [defendant] knew or should have known that the Plaintiff was being subject to...harassment..., he repeatedly refused to take prompt action to end the harassment directed at Plaintiff....' Such conduct, if proven, would constitute aiding and abetting."). *See also Hollinghead v. City of York*, 912 F.Supp.2d 209, 224 (M.D. Pa. 2012) ("...a defendant may be liable under [the PHRA]...for 'refusing to take prompt and remedial action against any discrimination suffered by' an employee."). The Amended Complaint sets forth that Ms. McCoy, when presented with evidence regarding the mounting hostile work environment, failed to take any action to protect Dr. Solano from further abuse. Appx.43, ¶¶127-128;Appx.44, ¶137. This inaction constitutes a violation of the PHRA. *Dici*, 91 F.3d at 533; *Hollinghead*, 912 F.Supp.3d at 224.

## **II. CONCLUSION**

Dr. Solano submits that the District Court erred when it granted Appellees' Motion to Dismiss. For the reasons set forth above, as well as for those reasons set

forth in Appellant's Principle Brief, this Court should reverse the District Court's Order and remand this case back to discovery and further proceedings.

LIEBER HAMMER HUBER PAUL & HOFFMAN, P.C.

s/James B. Lieber
James B. Lieber
PA I.D. No. 21748
Jacob M. Simon
PA I.D. No. 202610
Thomas M. Huber
PA I.D. No. 83053
1722 Murray Ave., 2nd Fl.
Pittsburgh, PA 15217
(412) 687-2231 (tel.)
jlieber@lhhb-law.com
jsimon@lhhb-law.com
thuber@lhhb-law.com

Counsel for Appellant

## COMBINED CERTIFICATIONS

## CERTIFICATE OF ADMISSION-BAR MEMBERSHIP

The undersigned hereby certifies pursuant to Third Circuit Local Appellate Rule 46.1 that the attorneys, whose names appear on the foregoing Appellant's Brief, Jacob M. Simon, Thomas M. Huber, and I (James B. Lieber), are members in good standing of the bar of this Court.

## PRINTING SPECIFICATIONS AND WORD COUNT CERTIFICATION IN COMPLIANCE WITH F.R.A.P. 32(A)

The foregoing Brief submitted by Appellant Roger Solano was prepared on a computer using a Corel WordPerfect X9 word processing program and complies with the typeface-style-volume limitation because a proportionally spaced typeface was used, as follows:

| | |
|---|---|
| Name of typeface: | Times New Roman |
| Point size: | 14 |
| Line spacing: | Double |

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, certification of bar membership, certification of service, certificate of compliance and virus check, or any authorized addendum containing statutes, rules, regulations, etc., is 6,455 words.

## CERTIFICATION OF SERVICE UPON THE COURT AND COUNSEL

I, James B. Lieber, Esq., an attorney duly admitted to the bar of this Court, hereby certify that on June 11, 2026 I have caused the Reply Brief of Appellant Roger Solano to be electronically filed. I also certify that on June 12, 2026 I have caused to be served with the following number of copies of the Reply Brief of Appellant to be sent via overnight mail (Federal Express) as indicated, in a properly addressed wrapper, to the following persons at their last known addresses noted below:

Patricia S. Dodszuweit, Clerk
Office of the Clerk
United States Court of Appeals For The Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

(Seven (7) hard copies of Appellant's Reply Brief)

Opposing Counsel

Jorden P. Colalella, Esq.
Anthony Thomas Kovalchick, Esq.
Office of the Pennsylvania Attorney General
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222

(One (1) hard copy of Appellant's Reply Brief)

## CERTIFICATION OF IDENTICAL COMPLIANCE PURSUANT TO L.A.R. 31.1

I, James B. Lieber, Esq., an attorney duly admitted to the bar of this Court, hereby certify that the text of the E-Brief filed on June 11, 2026, and the text of the

hard copy of the Reply Brief sent by overnight mail via Federal Express on June 12, 2026, are identical.

**CERTIFICATION OF VIRUS CHECK PURSUANT TO L.A.R. 31.1**

A virus check using Sentinel One was performed on the E-Brief and no viruses have been detected.

s/James B. Lieber
James B. Lieber, Esq.